UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

AARON HICKS,

                                    Defendant.

**DECISION AND ORDER**

15-CR-33S

## I.  INTRODUCTION

The Hon. William M. Skretny has referred this case to this Court under 28 U.S.C. § 636(b).  (Dkt. No. 2.)  Pending before the Court is a motion (Dkt. No. 58) for bail by defendant Aaron Hicks ("Hicks").  In this first application for bail,[1] Hicks emphasizes his family background and his ties to Western New York.  Hicks challenges the strength of the evidence against him, highlighting a lack of audio and video evidence that might confirm his participation in any conspiracy or criminal transactions.  Finally, Hicks has included with his motion papers a number of character letters from friends and family.  Hicks proposes living with his fiancée and his two children under various conditions of release.  The Government opposes release, highlighting Hicks's involvement in a conspiracy that includes two murders and his role as a liaison between his street gang and major narcotics and weapons suppliers out of state.

---

[1] At his detention hearing on February 26, 2015, Hicks chose not to contest the Government's motion for detention given a then-pending warrant from Erie County Court.  The Court ordered Hicks detained on the basis of danger but without prejudice, to preserve Hicks's right to challenge detention at a later time.

The Court held a bail review hearing on December 14, 2015.  For the reasons below, the Court denies Hicks's motion.

## II.  BACKGROUND

This case concerns allegations that Hicks and four others were members of the Schuele Boys, a neighborhood street gang that operated primarily in the East Side of the City of Buffalo.  The Government filed an indictment against Hicks on February 20, 2015 (Dkt. No. 1) but then filed a superseding indictment on June 19, 2015 (Dkt. No. 17).  The superseding indictment contains three counts against Hicks.  In Count One, the Government accuses Hicks of racketeering conspiracy in violation of 18 U.S.C. § 1962(d).  The Government attributes the following overt acts to Hicks:

- On or about December 9, 2004, AARON HICKS distributed a quantity of marijuana in Edinboro, Pennsylvania.  (Dkt. No. 17 at 7.)

- On or about January 19, 2005, AARON HICKS distributed a quantity of marijuana in Edinboro, Pennsylvania.  (*Id.*)

- On or about May 25, 2005, AARON HICKS possessed a defaced firearm, in the vicinity of 97 Schuele Avenue, Buffalo, New York, in the neighborhood controlled by the Schuele Boys.  (*Id.*)

- On or about July 22, 2008, AARON HICKS and an associate possessed a quantity of cocaine base for sale in the vicinity of East Delavan Avenue and William Gaiter Parkway, Buffalo, New York, in the neighborhood controlled by the Schuele Boys.  (*Id.* at 8.)

- On or about October 26, 2010, AARON HICKS traveled from Buffalo, New York, to McAllen, Texas, met with JULIO CONTRERAS, and then returned to Buffalo on or about October 29, 2010.  (*Id.* at 9.)

- On or about December 18, 2010, AARON HICKS and JULIO CONTRERAS were in a vehicle, transporting 669.5 grams of marijuana, when they stopped at a house belonging to LETORRANCE TRAVIS, at 118 Courtland Avenue, Buffalo, New York, in the neighborhood controlled by the Schuele Boys.  (*Id.*)

- On or about July 18, 2011, AARON HICKS, LETORRANCE TRAVIS, and two Schuele Boys associates incorporated G.O.N.E. ENT a/k/a Gone Entertainment, a domestic corporation, in Nevada.  (*Id.* at 10.)

- Sometime in or about August 2011, AARON HICKS, LETORRANCE TRAVIS, MARCEL WORTHY, and RODERICK ARRINGTON, and others, at various locations in Buffalo, New York, including 272 Schuele Avenue, the vicinity of Courtland Avenue and East Delavan Avenue, and the vicinity of Schuele Avenue and Northland Avenue, all in the neighborhood controlled by the Schuele Boys, and at a local restaurant, staged and created multiple music videos, produced by G.O.N.E. ENT a/k/ a Gone Entertainment, for songs entitled "Front Door" and "Dinner Table."  In the videos, HICKS, TRAVIS, WORTHY, ARRINGTON, and associates displayed U.S. currency, suspected cocaine, and manpower, demonstrated the manufacturing of cocaine base, and paid tribute to deceased associates.  (*Id.* at 10.)

- On or before September 28, 2011, AARON HICKS, in Buffalo, New York, sent a mutual associate to take approximately $48,000 in U.S. currency, a quantity of cocaine, and a white Chevrolet Camara to JULIO CONTRERAS in Texas.  (*Id.*)

- Between on or about August 26, 2012, and on or about August 30, 2012, AARON HICKS, MARCEL WORTHY, RODERICK ARRINGTON, and others investigated the murder of Schuele Boys associate Walter Davison, identified Quincy Balance a/k/a Shooter and D.H., a person known to the Grand Jury, as the potential killers, and planned to seek revenge.  (Id. at 12.)

- On or about February 18, 2014, AARON HICKS and a Schuele Boys associate retrieved a UPS box addressed from Texas that contained approximately 33 pounds of marijuana, which had just been delivered to 204 Stevens Avenue, Buffalo, New York, in the neighborhood controlled by the Schuele Boys.  On this same date, AARON HICKS also possessed on his person approximately 16 grams of cocaine base.  (*Id.*)

3

- On or about August 28, 2014, AARON HICKS returned to Buffalo, New York, from Harlingen, Texas. (*Id.* at 13.)

In Count Two, the Government accuses Hicks and others of a drug conspiracy in violation of 21 U.S.C. § 846.  In Count Three, the Government accuses Hicks and others of possessing and using firearms in furtherance of drug trafficking and crimes of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.  Omnibus pretrial motions currently are due by January 5, 2016.  (Dkt. No. 56.)

Hicks filed the pending motion on November 13, 2015.  To the extent that the Government considers him a flight risk, Hicks counters that he has lived in Western New York nearly his entire life and that his fiancée and children live in Buffalo.  Hicks highlights his education and employment history to demonstrate that he would be able to maintain employment if released.  With respect to Government arguments about danger to the community, Hicks challenges the strength of the Government's evidence.  Hicks notes that no audio or video evidence connects him to any of the alleged overt acts.  Hicks emphasizes that he possessed no contraband at the time of his arrest and made no post-arrest statements that the Government can use as evidence.  Hicks has attached to his motion papers character letters from his father, a long-time family friend who works in the state Department of Corrections and Community Supervision, and church ministers.  Hicks proposes that he live with his fiancée and children at his

fiancée's residence.  Hicks proposes conditions including a bond co-signed by two sureties, the posting of property, drug testing, and travel restrictions.

The Government opposes Hicks's motion.  The Government points to the alleged overt acts in the superseding indictment and proffers evidence that Hicks facilitated drug, firearm, and cash transactions across state lines, for the sake of the gang's operations.  The Government proffers that Hicks was in direct possession of contraband on multiple occasions for the sake of the gang. Finally, the Government proffers that Hicks had direct involvement in the plotting of murders of rival gang members to avenge associates who themselves had been murdered.  The Government concludes that Hicks would pose a danger to the community that no combination of release conditions could address.

## III. DISCUSSION

"The Eighth Amendment to the Constitution states that '[e]xcessive bail shall not be required.'  U.S. Const. amend. VIII.  Consistent with this prohibition, 18 U.S.C. § 3142(b) requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'"  *U.S. v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007).  Statutory factors to be considered when assessing non-appearance or danger include the nature and circumstances of the offense charged, the weight of the evidence against the

person, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

With respect to non-appearance, "the government carries a dual burden in seeking pre-trial detention. First, it must establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight. Assuming it satisfies this burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court." *Sabhnani*, 493 F.3d at 75 (citations omitted). "To order detention [based on danger], the district court must find, after a hearing, that the government has established the defendant's dangerousness by clear and convincing evidence. The rules of evidence do not apply in a detention hearing. Further, the government may proceed by proffer." *U.S. v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (citations omitted). So long as courts take some measure to assess the reliability and accuracy of prosecutors' information, "a detention hearing is not to serve as a mini-trial . . . or as a discovery tool for the defendant." *U.S. v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986) (citation omitted); *see also U.S. v. LaFontaine*, 210 F.3d 125, 130–31 (2d Cir. 2000) ("It is well established in this circuit that proffers are permissible both in the bail determination and bail revocation contexts.") (citations omitted).

Here, the Court is not concerned about the risk of non-appearance but is concerned about danger.  Without infringing on the presumption of innocence, Hicks faces serious charges of gang-based racketeering buttressed by proffers of transactions involving drugs, firearms, and large amounts of cash.  *Cf. U.S. v. $37,780 In U.S. Currency*, 920 F.2d 159, 163 (2d Cir. 1990) ("[Defendant] was carrying an extremely large sum of cash in small denominations, demonstrating that he was either inordinately carefree with his money or was involved in illegal activity.").  The Government has proffered information indicating that Hicks arranged at least some of these transactions with large-scale suppliers across state lines.  *Cf. U.S. v. English*, 629 F.3d 311, 322 (2d Cir. 2011) (affirming a detention order where "the proposal for electronic monitoring did not eliminate the danger that [defendant] would 'engage in further sale of narcotics' by telephone with a willing collaborator").  The proffer concerning the plotting of retaliatory murders is particularly disturbing.  *Cf. U.S. v. Torres*, No. 11-CR-151, 2014 WL 6885915, at *4 (W.D.N.Y. Dec. 8, 2014) (Schroeder, *M.J.*) (upholding detention where, *inter alia*, "[i]t is alleged that gang members, including defendant, engaged in acts of violence and retaliation against rival drug dealers and rival gang members, as well as non-compliant members of their own gang.").  With respect to his criminal history, Hicks has at least three prior convictions involving drugs or weapons.  Two prior offenses, in 2009 and 2014, appear to have occurred while Hicks was on probation supervision.  *Cf. U.S. v. Barnett*, No.

7

5:03-CR-243, 2003 WL 22143710, at *12 (N.D.N.Y. Sept. 17, 2003) ("Every

sentence of probation or parole requires a defendant to meet judicially imposed

conditions, and violations of either are further evidence of a defendant's inability

to comply with judicial mandates and supervision.  Evidence of new criminal

behavior while other charges are pending inevitably leads to the conclusion that

a defendant places his own self-interests above that of the community.  In turn,

the community has a right to expect courts to protect it.").  Defense counsel has

done a notable job presenting Hicks's overall criminal and case record in the best

possible light, but that record contains too much information for the Court to

overlook.  Clear and convincing evidence does show that the community would

face a significant danger if the Court released Hicks under any conditions at this

time.

## IV. CONCLUSION

For all of the foregoing reasons, the Court denies Hicks's motion for bail

(Dkt. No. 58).

Defendant will remain committed to the custody of the Attorney General for

confinement in a corrections facility separate, to the extent practicable, from

persons awaiting or serving sentences or being held in custody pending appeal.

Despite the Court's order of detention, and pursuant to 18 U.S.C.

§ 3142(i)(3), the Attorney General must afford defendant reasonable opportunity

for private consultation with counsel.  *See also U.S. v. Rodriguez*  ("Rodriguez I"),

No. 12-CR-83S, 2014 WL 4094561 (W.D.N.Y. Aug. 18, 2014) (Scott, *M.J.*). Additionally, on order of the Court or on request of an attorney for the Government, the person in charge of the corrections facility in which defendant is confined must deliver him to a United States Marshal for the purpose of an appearance in connection with a court proceeding in this case.  *See also U.S. v. Rodriguez* ("Rodriguez II"), No. 12-CR-83S, 2015 WL 1120157, at *7 (W.D.N.Y. Mar. 12, 2015) (Scott, *M.J.*) (interpreting 18 U.S.C. § 3142(i)(4) to allow transports to prepare for an oral argument or hearing).

In accordance with 18 U.S.C. § 3142(j), nothing in this Decision and Order will be construed as modifying or limiting the presumption of innocence.


SO ORDERED.

_/s Hugh B. Scott_____
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: December 17, 2015