UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,


                                                              **Hon. Hugh B. Scott**

                              v.                              **15CR33A**

                                                              **Order**

AARON HICKS,
MARCEL WORTHY,
RODERICK ARRINGTON
LETORRANCE TRAVIS
JULIO CONTRERAS,

                              Defendants.
_____

        This matter is referred to the undersigned to hear and determine pretrial matters pursuant to

28 U.S.C. § 636 (b)(1)(A) and, pursuant to 28 U.S.C. § 636(b)(1)(B), to submit proposed findings

of fact and recommendations for the disposition of any motion excepted by 28 U.S.C.

§ 636(b)(1)(A) (Docket No. 2).

        The instant matters before the Court are the defendants' omnibus motions (Docket

Nos. 111 (Roderick Arrington), 112 (Marcel Worthy), 113 (Aaron Hicks), 120 (Letorrance

Travis)).   Defendants seek the following forms of relief:   disclosure of statements; exclusion of

testimony of non-testifying co-conspirators; identity of informants; production of discovery;

production of Jencks Act material; production of Brady or Giglio material; production of Fed. R.

Evid. 404(b), 608, 609, 807 materials; preservation of agents' rough notes; production or

inspection of Grand Jury minutes; production of a Bill of Particulars; disclosure of the "informant

file".   Some defendants (Arrington, Hicks, and Travis) joined in the motions of codefendants,

while defendants all seek common forms of relief; to avoid repetition, one defendant who moved for that relief will be cited but the result applies to all joining defendants (unless clearly stated otherwise).   Defendants also moved for dispositive relief (such as suppression of Title III materials, suppression of evidence, or suppression of statements), those motions will be addressed in a separate Report & Recommendation.

The Government has filed responding papers Docket Nos. 119 (to Arrington's motion), 118 (to Worthy's motion), 117 (to Hicks' motion), 124 (to Travis' motion)), and oral argument was heard initially on October 11, 2016 (Docket No. 121), and the Government was given leave to respond to Travis' motion by October 25, 2016 (id.).   The Government has sought reciprocal discovery from defendants (e.g., Docket No. 119, Gov't Response to Arrington at 18-19), even from Travis (if the response to his 2011 prosecution, United States v. Travis, Case No. 11CR385 ("Travis")[1], Docket No. 43; Docket No. 120, Ex. C, is to be credited).

Also pending when filed before Judge Richard Arcara was codefendant Julio Contreras' motion for severance and speedy trial (Docket No. 86).   Judge Arcara denied this motion (Docket No. 126, Nov. 1, 2016, Order), noting there that Contreras had not filed other motions before this Court (id. at 4; but cf. Docket No. 115, Contreras' discovery request letter to the Government). To the extent that codefendants join this motion, the decision of **Judge Arcara is binding upon them as well**.   Some of the defendants also moved for voir dire of Government expert outside the presence of the jury and conduct of an audibility hearing; these motions are **deferred to Judge Arcara for his determination** as the trial Judge.

---

[1]To distinguish, the present action also is occasionally referred to as "Hicks" with the docket number of the document cited.

As just alluded to, Travis filed his motion (Docket No. 120) late (cf. Fed. R. Cr. P. 12(c)(3) (consequence of not making a timely motion, court "may consider the defense, objection, or request if the party shows good cause")) and, in addition to joining codefendants' pending motions, sought transference of motions he previously filed in Travis, Case No. 11CR385 (Docket Nos. 41, 46 (motion to modify conditions of release)), to this case including in the present papers portions of the Government's response in the Travis prosecution (Travis, supra, Docket No. 43). The omnibus motion in Travis sought the following relief (Travis, supra, Docket No. 41; see Hicks, Docket No. 120, Ex. A):   filing of a Bill of Particulars; discovery; production of Giglio material; production of Jencks Act material; identification of informants; suppression of statements; suppression of physical evidence.   Portions of that motion were withdrawn (Travis, supra, Docket Nos. 47, 64), later that motion was deemed to be withdrawn in its entirety (id., Docket No. 64).   On December 21, 2015, the Government moved to dismiss the Travis Indictment in favor of the superseding Indictment in the present Hicks prosecution, since the latter pleading incorporated the allegations in the Travis case (Travis, supra, Docket No. 160); that motion was granted (Travis, supra, Docket No. 161)[2].

## BACKGROUND

The original Indictment alleged that defendants Worthy and Hicks conspired to distribute and that they distributed cocaine from before January 2010 to July 23, 2014 (Docket No. 1,

---

[2]The Government similarly indicted Roderick Arrington in 2014, United States v. Arrington, Case No. 14CR204, Docket No. 9, and then moved to dismiss that Indictment in favor of the Hicks Superseding Indictment, United States v. Arrington, Case No. 14CR204, Docket No. 40.

Marcel Worthy also was previously indicted in a separate prosecution, United States v. Worthy, Case No. 14CR134, Docket No. 53, Indict., but later was dismissed as a defendant in that case, id., Docket No. 168, in favor of indictment in the pending case.

Indict.).   That Indictment was superseded (and later unredacted) to allege a broader conspiracy (Docket Nos. 17, 24).   Count 1 of the Superseding Indictment charges a racketeering conspiracy with defendants Hicks, Worthy, Arrington, Travis and Contreras[3].   Count 2 alleges a narcotics distribution conspiracy among these defendants.   Count 3 alleges that defendants (except for Contreras) possessed a firearm as overt acts for the racketeering or drug conspiracies, while Count 4 charges Contreras with possession of a firearm in furtherance of drug trafficking crime. Count 5 alleges that Worthy murdered Kevin Gray in 2006 in aid of racketeering activity.   Count 6 alleges that Worthy discharged a firearm causing death in furtherance of a crime of violence, the killing of Gray.   Counts 7-15 are alleged against Arrington, charging him with murder, three counts of discharge of a firearm, attempted murder, possession of heroin, maintenance of a drug-involved premises, possession of a firearm in furtherance of drug trafficking crimes, and possession of a firearm by a convicted felon.   (Docket No. 24, Superseding Indictment.)

## DISCUSSION

I.      Disclosure of Statements

        Pursuant to Rule 16(a)(1)(A), defendant Worthy (joined by the other moving codefendants) seeks any written or oral statements made by the defendants which are within the possession custody or control of the Government, or which through the exercise of due diligence, may become known to the Government (Docket No. 112, Worthy Atty. Aff. ¶¶ 4-11; see also Docket No. 119, Gov't Response to Arrington at 3 (construing Arrington's motion to suppress as one seeking production of statements from his arrest, presumably on October 31, 2014, which were already produced)).

_____

        [3]Initially, the name of this defendant was redacted, Docket No. 17, but was unredacted after he appeared for his arraignment, Docket Nos. 24, 39.

Rule 16(a)(1)(A) provides that, upon request, the Government must disclose any written or recorded statements made by a defendant, before or after arrest, in response to interrogation by any person known to the defendant to be a Government agent; and recorded testimony of the defendant before the grand jury which relates to the offense charged.[4]   Failure of the Government to disclose a defendant's statements to a Government agent may rise to the level of constitutional due process violation. Clewis v. Texas, 386 U.S. 707 (1967).

In this case, the Government has represented that it believes that it has already disclosed all statements made by the defendants (Docket No. 118, Gov't Response to Worthy's Motion at 3). To the extent that the Government has not yet done so, pursuant to Rule 16 (a)(1)(A) the Government is hereby directed to produce all such statements made by the defendants.

II.     Identifying Informants

Defendants Arrington, Worthy, and Travis each wants the pre-trial disclosure of the identity of any informants in this case.   The Government is not required to furnish the identities of informants unless it is essential to the defense.   Roviaro v. United States, 353 U.S. 52, 60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.), cert. denied, 489 U.S. 1089 (1988). Nor does Rule 16 require the Government to disclose the names of witnesses prior to trial.   United States v. Bejasa, 904 F.2d 137, 139 (2d Cir.), cert. denied, 498 U.S. 921 (1990).   Moreover, the Government has stated that it believes that disclosure of the informant's identification would subject the informant to personal danger from retribution by the defendants and others.

The defendants each have not established that the pre-trial disclosure of the identities of any informants is essential to his respective defense.   These requests are **denied**.

---

[4]Rule 16(a)(2) expressly provides that subdivision (a)(1) does not authorize disclosure of statements made by Government witnesses or prospective Government witnesses except as provided in the Jencks Act, 18 U.S.C. § 3500.

III.     Discovery

     The defendants next seek various items of pretrial discovery.   Although there is no general constitutional right to pretrial discovery in a federal criminal case, a defendant does have a pretrial discovery right with respect to certain matters.   For example, under the Fifth Amendment's due process clause, a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment.   In addition, the Government has certain disclosure obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act, 18 U.S.C. § 3500.

     A.     Statements of Co-Conspirators

     The defendants have also requested production of all statements of any co-conspirator, whether charged or uncharged (e.g., Docket No. 112, Worthy Atty. Aff. ¶ 5a.).   This request is **denied**.   It is well established that the statements of co-conspirators are not discoverable under Rule 16(a).   In re United States, 834 F.2d 283, 286 (2d Cir. 1987); United States v. Percevault, 490 F.2d. 126 (2d Cir. 1974);   United States v. Green, 144 F.R.D. 631, 638 (W.D.N.Y. 1992) (Heckman, Mag. J.).   The Jencks Act provides the exclusive procedure for discovering statements that Government witnesses have given to law enforcement agencies.   United States v. Covello, 410 F.2d 536, 543 (2d Cir.), cert. denied, 396 U.S. 879 (1969).

     B.     Documents and Tangible Objects

     Pursuant to Rule 16(a)(1)(C), defendants also seek production of various documents, books, records, photographs, and other tangible objects in the possession, custody or control of the Government.   Defendants identify several specific categories of items which they seek to be produced.

The Government contends that it complied with Rule 16(a)(1)(E) and produced or allowed for inspection documents and objects it anticipates using in its case in chief (e.g., Docket No. 118, Gov't Response to Worthy's Motion at 4).

C.      Examinations and Test Reports

Pursuant to Rule 16(a)(1)(D), the defendants have requested the production of the results of any physical or mental examinations or scientific tests, including but not limited to any such tests regarding the cocaine or firearms referenced in the indictment. The Government has responded that it has either disclosed or intends to disclose all discoverable material under Rule 16(a)(1)(F), as well as laboratory reports, and CV of its experts (Docket No. 118, Gov't Response to Worthy's Motion at 4-5).   The Court assumes that the Government's production **has satisfied** the defendants' respective requests in this regard.

D.      Hearsay Evidence

The defendants seek disclosure of any hearsay evidence intended to be introduced by the Government at trial.   There is no legal or factual basis requiring disclosure of such material in this case.   See Green, supra,144 F.R.D. at 638.   Thus, this request is **denied**.

E.      Rule 12(d)(2) Requests

Pursuant to Rule 12(d)(2), defendants request that the Government give notice of its intention to use at trial any evidence which is discoverable under Rule 16 (e.g., Docket No. 111, Arrington Atty. Affirm. ¶ 41 j.).   Such notice, under the rules, avoids the necessity of a defendant having to move to suppress evidence which the Government does not intend to use.

The Government generally responds that it provided extensive voluntary discovery (e.g., Docket No. 118, Gov't Response to Worthy's Motion at 3).   The Government announced in

response to Arrington's motion that it intended to use all items of evidence that defense has been (and will be) provided in accordance with Rule 12(b)(4)(A) (Docket No. 119, Gov't Response to Arrington's Motion at 18; <u>see also</u> Docket No. 117, Gov't Response to Hicks' Motion at 13; Docket No. 118, Gov't Response to Worthy's Motion at 21).   This response, as applied to all moving defendants **is sufficient**.

F.      Identification Procedures

Defendant Arrington (Docket No. 111, Arrington Atty. Affirm. ¶¶ 53-55) seeks disclosure of any visual or audio identification procedures utilized in this case; specifying the procedure, the participants and the circumstances; any visual or audible representation of a person or voice used for identification purposes.

The Government has not directly responded to this specific request.

The record in this case does not reflect whether or not any such procedures were used. The Government's complete lack of response on this issue does not provide the Court with any assistance in this regard.   In any event, inasmuch as pretrial identification issues may raise questions of due process under the Fifth and Fourteenth Amendments, with the exception of the identity of any informant or witness, the Government **is directed** to provide the defendants with information regarding any visual or audio identification procedures used in this case. <u>See</u> <u>Green</u>, <u>supra</u>, 144 F.R.D. at 639.

G.      Disclosure of Expert Materials

Pursuant to Rule 16(a)(1)(E), defendants seek a written summary of any expert testimony that the Government intends to use in its direct case, along with the expert's qualifications, and the basis for the expert's opinion, whether or not the expert files a report.   The Government responds

that it intends to provide CVs and expert reports for its experts (e.g., Docket No. 118, Gov't

Response to Worthy's Motion at 4).

> H.       Disclosure of "Informant File"

Hicks also seeks disclosure of a so-called "informant file" (Docket No. 113, Hicks Motion

at 7-13).   The Government claims that there were no individuals known to it as "informants" for

the charged conduct (Docket No. 117, Gov't Response to Hicks' Motion at 5).   As for any former

co-conspirators who later cooperated with the Government, the Government argues that their

identities, Jencks Act, and Giglio material generally are not produced, or are done so under seal

and pursuant to the trial Court's pretrial Order (id. at 5-6), concluding that this motion is

premature.

So much of any "informant file" material that falls under witness disclosure under the

Jencks Act is governed by the timing of disclosure of that relief, discussed below.

IV.    Jencks Act

Hicks (and Travis, Docket No. 120, and Arrington, Docket No. 111) also seeks immediate

disclosure of material subject to the Jencks Act, 18 U.S.C. § 3500.   The Jencks Act governs the

disclosure of information and statements relating to the Government's witnesses.   Generally,

according to the Jencks Act, the Government need not disclose such information regarding its

witnesses until after the witness has testified at trial.   In this case, the Government has agreed to

disclose this information at the pretrial conference.   Each defendant **has not established** that

prior disclosure of Jencks material is essential to the preparation of a defense in this case.

V.      <u>Brady</u>, <u>Giglio</u>

The defendants have requested that the Government disclose all materials potentially favorable to the defendant, including information to be used for the impeachment of the Government's witnesses, as required under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny.   <u>Brady</u> material, as those cases have come to define it, includes all evidence which may be favorable to each defendant and material to the issue of guilt or punishment.   Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching . . . [and] [a]ny and all records and information revealing prior misconduct . . . attributed to the [Government's] witness."   <u>United States v. Kiszewski</u>, 877 F.2d 210 (2d Cir. 1989).

The defendants' motions identify numerous specific categories of documents encompassing both exculpatory and impeachment <u>Brady</u> materials which they seek to obtain. The Government's written response is that it intends to produce <u>Giglio</u> material (that is, promises of leniency or immunity agreements with Government witnesses, plea agreements, arrest records of Government witnesses), that it is in compliance with its <u>Brady</u> and <u>Giglio</u> obligations, and notes its continuing obligation to produce such material as it becomes aware of it (<u>e.g.</u>, Docket No. 118, Gov't Response to Worthy's Motion, at 7, 5-7).

This Court believes that fundamental fairness and the constitutional due process requirements which underlie <u>Brady</u> mandate that the Court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined <u>Brady</u>/Jencks material.   Indeed, even with respect to purely Jencks Act materials, the Second Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and the

court, . . . sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial . . . so that those abhorrent lengthy pauses at trial to examine documents can be avoided."   United States v. Perceault, 490 F.2d 126 (2d Cir. 1974); United States v. Green, 144 F.R.D. 631 (W.D.N.Y. 1992) (Heckman, Mag. J.).

The instant case does not appear to be unusually complex.   Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendants to have a fair opportunity to utilize the information at trial) **is sufficient** in this case.

VI.     Federal Rules of Evidence 404(b), 608, 609, 807 Materials

 The defendants request disclosure of all evidence of prior bad acts that the Government intends to use in its case-in-chief, pursuant to Federal Rule of Evidence 404(b).   They also request disclosure of all evidence of prior bad acts that the Government intends to use for impeachment of the defendants should he testify at trial, pursuant to Rules 608(b) and 609(a).

Rule 404 requires that each defendant be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial."   The Government has represented that it will provide all such material to the defendant at the time ordered in the pretrial Order (e.g., Docket No. 119, Gov't Response to Arrington's Motion at 12).   This **is sufficient** in this case.

VII.    Preservation of Rough Notes

The defendants have also requested preservation of rough notes and other evidence taken by law enforcement agents involved.   The Government has no objection to that request (e.g., Docket No. 119, Gov't Response to Arrington's Motion at 14).

VIII.    Production of Grand Jury Minutes

Hicks (also joined by the moving codefendants) next moves for production of the transcripts from the Grand Jury (Docket No. 113, Hicks Motion at 20).   He argues that he faces a bare bones Indictment that does not specify his role in the alleged conspiracy nor are witnesses against him named (id.).

The Government asserts that Federal Rule of Criminal Procedure 6(e)(3)(C)(i) (cited by defendant) does not authorize production of Grand Jury transcripts to the defense (Docket No. 117, Gov't Response to Hicks' Motion at 12).   The Government also claims that Hicks has not shown particularized need for disclosure of these transcripts (id.).   Finally, the Government denies that Hicks faces a bare bones Indictment, pointing out the 41 overt acts asserted in the Superseding Indictment (id. at 13).

Under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), this Court may authorize the disclosure of a Grand Jury matter at the request of the defense who shows that a ground may exist to dismiss the Indictment because of a matter that occurred before the Grand Jury.   The Court may authorize this disclosure "at a time, in a manner, and subject to any other conditions that it directs," id.   Defendants had to show that they have a particularized need for disclosure that outweighs the Government's interest in maintaining Grand Jury secrecy, United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988); see United States v. Twersky, No. S2 92 Cr. 1082, 1994 U.S. Dist. LEXIS 8744, at *14-16 (S.D.N.Y. June 29, 1994) (granting in camera review of Grand Jury minutes and reserving decision on motion to dismiss Indictment).   A defendant must state a particularized need for these transcripts "in order to present a vigorous defense" which outweighs the principle of Grand Jury secrecy, Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400 (1959).   There

are occasions "when the trial judge may in the exercise of his discretion order the minutes of a grand jury witness produced for use on his cross-examination at trial.   Certainly 'disclosure is wholly proper where the ends of justice require it,'" Pittsburgh Plate Glass, supra, 360 U.S. at 400 (quoting United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234 (1940)).   The burden is upon the defendant to show a particularized need exists that outweighs the policy of Grand Jury secrecy, id.   Particularized need includes impeachment of witness at trial, refresh recollection, and testing witness credibility, United States v. Proctor & Gamble Co., 356 U.S. 677, 683 (1958). "A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct," Torres, supra, 901 F.2d at 233, and (even if disclosed) "as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants," Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988); Torres, supra, 901 F.2d at 233.   No Government misconduct has been alleged here.

As was held in the Pittsburgh Plate Glass case, supra, 360 U.S. at 400, defendants have not made a showing of particularized need, but cf. Dennis v. United States, 384 U.S. 855, 872-73 (1966) (Court found that defense did not fail to make out a particularized need, listing the circumstances of particularized need).   Merely stating the desire to make a vigorous defense in general or the lack of particularization in the Indictment does not show a particular need for a given portion of the Grand Jury testimony (such as specifying which witness's testimony is necessary for that vigorous defense) or show whether that Grand Jury testimony is needed for impeachment, refreshing recollection or testing credibility.

The motion on this ground is **denied**.

IX.     Bills of Particulars

Hicks and Worthy (again as joined by moving codefendants) seek the filing of Bills of Particulars specifying their respective roles in these offenses (Docket No. 113, Hicks Motion at 18-19; Docket No. 112, Worthy Atty. Affid. ¶ 32).   Worthy seeks the specifics of the conspiracy, whether anyone present during an overt act was also acting for the Government, persons present during overt acts, and the quantities of narcotics at issue (Docket No. 112, Worthy Atty. Aff. ¶ 32).

The Government counters that defense has not provided a basis for requiring a Bill of Particulars (e.g., Docket No. 117, Gov't Response to Hicks' Motion at 10-11).   The Government explains that the Superseding Indictment outlines "the Schuele Boys racketeering enterprise, its background, and the means and methods," with Count I reciting 41 overt acts (id. at 11).   As for Worthy's request for the names of persons' present, the Government counters that it is a mere request for a witness list and not properly obtained from a Bill of Particulars (Docket No. 118, Gov't Response to Worthy's Motion at 12).

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a Bill of Particulars.   Bills of Particulars are to be used only to protect a defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial. United States v. Torres, 901 F.2d 205 (2d Cir. 1990).   The Government is not obligated to "preview its case or expose its legal theory" United States v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); United States v. Leonelli, 428 F. Supp. 880 (S.D.N.Y. 1977); nor must it disclose the precise "manner in which the crime charged is alleged to have been committed," United States v. Andrews, 381 F.2d 377 (2d Cir. 1967).   Notwithstanding the above, there is a special concern for particularization in conspiracy cases. United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988).

14

But, as the Government notes (Docket No. 118, Gov't Response to Worthy's Motion at 11), a Bill

of Particulars is not required to specify defendant's activities in a drug conspiracy where the

Indictment otherwise is sufficient and names co-conspirators, <u>United States v. Cephas</u>, 937 F.2d

816, 823 (2d Cir. 1991).

Upon review of the Indictment, the Court finds that defendants **are not entitled** to a Bill of

Particulars inasmuch as each defendant is sufficiently advised of the charges against him to allow

for the proper preparation of a defense, to avoid surprise at trial, and to protect the defendant from

double jeopardy.

X.      Travis' Motion for Transference of Prior Case's Motion

In addition to joining codefendants in their present motions, Travis asks that this Court

transfer the omnibus motion he filed in <u>Travis</u>, Case No. 11CR385, for consideration in this case

(Docket No. 120).   The Government adopts its responses in <u>Travis</u> to the non-dispositive relief

sought, but noting that additional discovery had been furnished to Travis in the present <u>Hicks</u>

prosecution (Docket No. 124, Gov't Response at 2-3).   Neither party addresses the authority or

propriety of transferring motions between criminal cases.

A brief procedural history of the motions in <u>Travis</u> is in order.   The <u>Travis</u> prosecution

was before Magistrate Judge McCarthy.   As noted above, Travis in the former action moved for

many of the relief now sought by codefendants (a Bill of Particulars, discovery, production of

<u>Brady</u> and Jencks Act material, identification of informants, as well as suppression of evidence

and statements).   The Government responded (<u>Travis</u>, Docket No. 43).   On August 14, 2012,

Magistrate Judge McCarthy ordered Travis to file an affidavit in support of his suppression motion

within in one week (Docket No. 47), and, as agreed by the parties, deemed the rest of the motion

withdrawn (id.).   After further proceedings on his suppression motions (Travis, Docket Nos. 50,

51, discussed in detail in this Court's separate Report and Recommendation), on March 14, 2013,

Travis moved to withdraw his suppression motions (Travis, Docket No. 63), and the next day

Magistrate Judge McCarthy acknowledged that withdrawal (Travis, Docket No. 64) but noted that

the other forms of relief that were sought by Travis were already withdrawn (id.).   Travis' motion

then was deemed withdrawn in its entirety (id.).   As previously noted, on December 21, 2015, the

Government moved to dismiss the Travis Indictment in favor of prosecution in the Hicks case

(Travis, Docket No. 160), which was granted the next day (Travis, Docket No. 161).   There was

no indication that Travis withdrew his motion without prejudice to renew at a later date.   Given

the timing of that dismissal in 2013 and the subsequent indictment in Hicks in 2015, there also was

no indication that Travis intended to renew or reverse the withdrawal of his motion until he filed in

Hicks the present motion for transference.

    Travis cites no authority that allows a defendant in one prosecution to transfer (no longer

pending) motion to another prosecution.   This is an unprecedented request.   Rules 12 and 47 of

the Federal Rules of Criminal Proceeding govern motions and their timing; these rules are silent

about a defendant's ability to transfer motions filed in one prosecution into another one.   The

closest analogous rule is Rule 21, which allows transfer of the entire prosecution to a different

district, cf. Fed. R. Cr. P. 21, as a change of venue provision.   Another analogy might be what

occurs when an Indictment in a case with pending motions is superseded.   Often times, this Court

will deem pending motions mooted by the filing of that Superseding Indictment, granting the

parties time to file new motions.   Defendants in that scenario have the choice of renewing the

initial Indictment motions or filing fresh motions for the Superseding allegations.

16

Here, the proposed transfer arises because the case against Travis really began in 2011 in the standalone initial prosecution that, effectively, was superseded by his indictment in the <u>Hicks</u> case.   But the allegations in <u>Hicks</u> are more involved than those in the earlier <u>Travis</u> case.   In such circumstances, a defendant might revisit his or her motions to deal with the new allegations.

Opposing the transfer of the <u>Travis</u> motion to the <u>Hicks</u> case is the fact that the Superseding Indictment in <u>Hicks</u> subsumed the allegations in the former case.   If that is the case, then the proceedings leading to the dismissal of the first action also should be incorporated; included with such incorporation would be the withdrawal of the motions Travis now seeks transferred and ruled upon.   As for the non-dispositive relief Travis sought in the 2011 prosecution, Travis voluntarily withdrew that motion in <u>Travis</u>; as a result, there is nothing to transfer to this action (if such transfers were allowed).   Travis has not argued reasons for now vacating his withdrawal and reversing (in effect) Magistrate Judge McCarthy's dismissal of that motion.   Travis motion to transfer the earlier case's dismissed motion is **denied**.

With Travis alternatively joining his codefendants' motions, the practice effect in this case of his waiver of his own non-dispositive motions in <u>Travis</u> and denial of transfer of that motion is that the non-transfer of that motion has no effect on him obtaining relief in this action.   As noted in each substantive area above, Travis obtains the same relief that codefendants are entitled to receive.

XI.    Government's Requests for Reciprocal Discovery

Finally, the Government cross-moves for reciprocal discovery from defendants (<u>e.g.</u>, Docket No. 117, Gov't Response to Hicks at 14; <u>see also</u> <u>Travis</u>, Docket No. 43, Gov't Response at 14; <u>Hicks</u>, Docket No. 120, Ex. C (copy of Government's Response in <u>Travis</u>)), without any

apparent objection by any defendant.   Under Rule 16, the Government is entitled to production of documents in a defendant's possession that the defendant intends to use in his case-in-chief. Defendant is reminded of his or her obligations under Rule 16 to produce pursuant to the Government's notice for discovery, therefore, the Government's motions are **granted**.

One twist is Travis and his motion to transfer his prior motion in <u>Travis</u> to this case.   Since he withdrew that motion after the Government responded seeking reciprocal discovery, that action alone should preclude the Government from obtaining reciprocal discovery.   But with Travis now joining codefendants' motions for similar discovery relief, the Government is entitled under Rule 16 to such reciprocal discovery that Travis obtains as codefendants obtain, even though the Government in <u>Hicks</u> did not make (or in effect renew) that request in this action.   Nevertheless, the Government is presumed to also have sought reciprocal discovery from Travis in the <u>Hicks</u> case and that request is also **granted**.

## CONCLUSION

For the reasons stated above, so much of defendants' omnibus motions (Docket No. 111, 112, 113, 120) not seeking suppression or not otherwise to be addressed by the District Court is **granted in part, denied in part**, as specified above.   The Government's motions for reciprocal discovery from each defendant (<u>see</u> Docket Nos. 117 (from Hicks), 118 (from Worthy), 119 (from Arrington); <u>Travis</u>, Docket No. 43, Gov't Response at 14; <u>Hicks</u>, Docket No. 120, Ex. C (copy of Government's Response in <u>Travis</u>)) is **granted**.

So Ordered.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Dated:   Buffalo, New York
         November 9, 2016