**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

UNITED STATES OF AMERICA,

              v.                                      15-CR-33-A
                                                    **DECISION AND ORDER**

AARON HICKS and
RODERICK ARRINGTON,

                Defendants.

_____

On September 6, 2017, the Court severed the trial of Defendants Aaron Hicks and Roderick Arrington.[1] This Decision and Order states the Court's reasons for doing so.

## BACKGROUND[2]

Six days before trial was to begin against the then-three remaining Defendants, the parties realized that Andrew LoTempio, counsel for Defendant Arrington, had previously represented Defendant Hicks in a 2014 state-court drug case, the facts of which underlie one of the overt acts charged in Count 1 of the indictment.[3] This, of course, created a potential conflict between Mr. LoTempio and Defendant Arrington: Without Defendant Hicks's consent, Mr. LoTempio could not use confidential information he obtained as a result of his prior representation of Defendant Hicks during his current representation of Defendant Arrington.

---

[1] At the time the Court severed Defendant Hicks's trial from Defendant Arrington's trial, a third Defendant, Marcel Worthy, remained in the case. The Court ordered Defendant Worthy to stand trial with Defendant Arrington. Defendant Worthy, however, pled guilty on the morning of jury selection.

[2] The Court assumes familiarity with this case's factual background and procedural history.

[3] Count 1 charges both Defendants with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).

1

After learning of this potential conflict, the Court held a *Curcio* hearing.[4] The Court also appointed *Curcio* counsel to speak with Defendant Arrington. The next morning, Defendant Arrington waived Mr. LoTempio's potential conflict, and the Court accepted Defendant Arrington's waiver.[5]

Two issues, however, prevented the Court from proceeding with a joint trial. First, despite Defendant Arrington's waiver of Mr. LoTempio's potential conflict, Mr. LoTempio stated that, if Defendant Hicks testified—as his counsel stated he would—"it would be hard" for Mr. LoTempio "to separate what [he] kn[e]w . . . or remember[ed] as the trial goes on [from] what Mr. Hicks may or may not have told me when I represented him."[6]

---

[4] *See generally United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982).

[5] The Court's conversations with Defendant Arrington and *Curcio* counsel made clear that Defendant Arrington's waiver was knowing and intelligent. Moreover, given the often-overlapping interests of Defendants Hicks and Arrington, and particularly after the Court severed the Defendants, this was not a case in which Mr. LoTempio's potential conflict "jeopardize[d] the integrity of judicial proceedings." *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003). *See United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (noting that "[t]he disqualification issue . . . implicates not only the accused's right to counsel, but also the interests of the judiciary in preserving the integrity of its processes, and the government's interest in ensuring a fair trial and a just verdict").

[6] New York Rule of Professional Conduct 1.9(a), which governs an attorney's duties to his former clients, does not appear to preclude Mr. LoTempio from representing Defendant Arrington in this case. Rule 1.9(a) prohibits an attorney from representing "another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client," absent the former client's consent. The Court assumes that this case and the prior case are "substantially related." *But see* N.Y. Rule Prof. Conduct 1.9, cmt. 3 ("Matters are 'substantially related' . . . if they involve the same transaction or legal dispute or if, under the circumstances, a reasonable lawyer would conclude that there is otherwise a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.") Even with that assumption, however, Rule 1.9(a) does not appear to prohibit Mr. LoTempio from representing Defendant Hicks. This is because Defendant Hicks and Defendant Arrington are charged with being members of the same conspiracies. Thus, their interests in this case do not appear to be "materially adverse." Nonetheless, Mr. LoTempio candidly acknowledged that, if Defendant Hicks testified, Mr. LoTempio would be put in an "awful position" because he would "almost [need] to choose" between his current and former clients. The Court gave significant weight to this representation when it severed the Defendants. "[T]he disciplinary rules represent the minimum ethical obligations of an attorney and . . . an attorney does not act unreasonably by maintaining a higher standard." *United States v. Oberoi*, 331 F.3d 44, 51 (2d Cir. 2003). To the contrary, such an attorney "acts in the highest tradition of the profession." *Id.*

2

And second, Defendant Hicks asserted that an actual conflict existed between him and Mr. LoTempio. Docket No. 197.

Defendant Hicks therefore sought to remove Mr. LoTempio from representing Defendant Arrington, while Defendant Arrington sought a severance. After further argument, the Court decided to sever the remaining Defendants into two trials.

## DISCUSSION

Federal courts have a "preference . . . for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Federal Rule of Criminal Procedure 14(a) therefore permits severance only where a joint trial "appears to prejudice a defendant." This is a difficult standard to meet: "The Supreme Court has instructed that a district court should grant a Rule 14 severance motion only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (quoting *Zafiro*, 506 U.S. at 539).

The parties' representations on September 6 established that a joint trial would have put certain of Defendant Hicks's and Defendant Arrington's trial rights into possibly irreconcilable conflict. Defendant Hicks's apparent desire to testify would present Defendant Arrington with the risk of being represented by an attorney who could not cross-examine Defendant Hicks and who might, therefore, provide ineffective assistance. At the same time, the possibility that Mr. LoTempio would need to cross-examine Defendant Hicks—even concerning matters not related to his prior representation—could, possibly, chill Defendant Hicks's stated desire to testify, given the practical difficulty Mr. LoTempio might have in separating information he could use from information he could

3

not use.  In short, based on Defendant Hicks's representation that he wishes to testify, a joint trial risked burdening Defendant Hicks's right to testify and, at the same time, Defendant Arrington's right to effective assistance of counsel.

A joint trial, in other words, would have presented "a serious risk" that "a specific trial right of one" or both Defendants "would [be] compromise[d]."  *Zafiro*, 506 U.S. at 539.  Defendant Arrington, of course, has the right to be represented by counsel who is ethically able to provide effective assistance.  *See, e.g.*, *Wood v. Georgia*, 450 U.S. 261, 271 (1981) ("Where a constitutional right to counsel exists . . . there is a correlative right to representation that is free from conflicts of interest.")  And Defendant Hicks has a right to testify in his own defense—a right that might, at least potentially, be "compromise[d]," *Zafiro*, 506 U.S. at 537, by the knowledge that his former counsel could cross-examine him with what Defendant Hicks understood to be confidential information.

The only apparent way to protect both Defendants' rights was to sever their trials.  The other possible solution, and the one Defendant Hicks sought—disqualification of Mr. LoTempio—would violate Defendant Arrington's Sixth Amendment right to be represented by the counsel of his choice.  In other words, Defendant Hicks's proposal for protecting his right to testify would result in Defendant Arrington being denied his right to be represented by the counsel of his choice.[7]  Severance was, therefore, the only way to protect both Defendants' rights.

In response to the suggestion of a severance, Defendant Hicks argued that severance would be inconsistent with this Court's earlier decision denying his former co-defendant's severance motion.  *See United States v. Contreras*, 216 F. Supp.3d 299

---

[7] Defendant Arrington retained Mr. LoTempio.

(W.D.N.Y. 2016). This argument is without merit. As an initial matter, *Contreras* involved a different Defendant, and it was based on the facts known to the Court at the time—facts that did not include Mr. LoTempio's potential conflict. More fundamentally, however, the Court's decision in *Contreras* was based on the conclusion that a joint trial would not "'prevent the jury from making a reliable judgment' about Contreras' own 'guilt or innocence.'" *Contreras*, 216 F. Supp. 3d at 304 (quoting *Zafiro*, 506 U.S. at 539). The Court also noted that Defendant Contreras had not identified a "'specific trial right' that might be impaired by joint trial." *Id.* at 304. Here, by contrast, a joint trial could have impaired at least one Defendant's trial rights. This possibility easily outweighed the many benefits of a joint trial. *See Richardson v. Marsh*, 481 U.S. 200, 210 (1987).

## CONCLUSION

For the reasons stated above, as well as those stated on the record on September 6, 2017, the Court severed Defendant Arrington's trial from Defendant Hicks's trial.

**SO ORDERED.**

Dated: October 10, 2017          __s/Richard J. Arcara_____
    Buffalo, New York             HONORABLE RICHARD J. ARCARA
                                       UNITED STATES DISTRICT JUDGE