**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

UNITED STATES OF AMERICA,

        v.

AARON HICKS,

        Defendant.

15-CR-33-A

**DECISION AND ORDER**

_____

      This case is before the Court on Defendant Aaron Hicks's renewed motion for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29. *See* Docket No. 255. The Defendant has also moved, under the issue-preclusion component of the Double Jeopardy Clause, to preclude certain evidence in any retrial of Count 1. For the reasons stated below, both motions are denied.

## BACKGROUND

      After a two-and-a-half week jury trial, the Defendant was convicted, in Count 2, of conspiring to possess with intent to distribute, or to distribute, marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(D). The Defendant was acquitted, also in Count 2, of conspiring to possess with intent to distribute, or to distribute, cocaine and cocaine base, and he was acquitted, in Count 3, of a firearm charge under 18 U.S.C. § 924(c)(1)(A)(i). Finally, the jury hung on Count 1, which charged the Defendant with being a member of a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).

      The Court assumes familiarity with the extensive evidence introduced at trial. In brief, the evidence—viewed in the light most favorable to the Government—showed that

1

the Defendant was a member of the Schuele Boys,[1] a drug-trafficking organization that operated on and around the area of Schuele Avenue, in Buffalo, New York. Specifically, the evidence showed that the Defendant, together with co-Defendants Marcel Worthy and Letorrance Travis, operated a large cocaine trafficking organization that purchased hundreds of kilograms of cocaine, as well as marijuana, from co-defendant Julio Contreras.[2] The evidence also showed that the Schuele Boys planned and committed a retaliatory murder against Quincy Balance, whom they believed had murdered a Schuele Boys associate.

The Defendant testified at trial on his own behalf. As relevant here, the Defendant denied ever buying or selling cocaine from Contreras or anyone else; he testified that Contreras sold cocaine to co-Defendant Travis; and he testified that he purchased marijuana from a person named "Coach," whom he met while he was on spring break during college.

After two lengthy days of deliberation, the jury returned a mixed verdict. The jury stated that it was "[u]nable to reach a unanimous verdict" on Count 1 (racketeering conspiracy). As to Count 2 (narcotics conspiracy), the jury found the Defendant guilty, but only with regard to marijuana. Based on the Court's instruction to the jury, together with the way in which the jury returned its verdict on Count 2, neither party disputes that the jury acquitted the Defendant of cocaine and cocaine base conspiracies.[3] Finally, the

---

[1] There was no evidence that any member of the organization referred to the organization as the "Schuele Boys." The superseding indictment, however, referred to the organization as the "Schuele Boys," and for the sake of convenience, the Court does so as well.

[2] Defendants Worthy, Travis and Contreras pleaded guilty before trial. A fifth Defendant, Roderick Arrington, proceeded to trial, but his trial was severed from the Defendant's. See Docket No. 247.

[3] The verdict form read, in relevant part, as follows:

jury acquitted the Defendant of Count 3 (use or possession of a firearm in furtherance of a crime of violence or a drug-trafficking crime). The Court declared a mistrial on Count 1.

## DISCUSSION

The Defendant seeks a judgment of acquittal as to Count 1 (racketeering conspiracy) and Count 2 (marijuana conspiracy). The Defendant also seeks to preclude, in any retrial on Count 1, evidence related to the Counts of which he was acquitted. The Court addresses each argument in turn.

### A. Standard for judgment of acquittal

Rule 29 imposes a heavy burden on a defendant challenging his conviction following a jury trial. A court may enter a judgment of acquittal "only if the evidence that

---

If you find the Defendant, Aaron Hicks, guilty of Count 2, you must also find the type of controlled substance(s) that he conspired to possess with intent to distribute or to distribute (check all that apply):
    ____ cocaine
    ____ cocaine base
    ____ marijuana

When the jury informed the Court that it wished to render a partial verdict, the Court instructed the jury as follows:

> If you make a unanimous finding of guilty on Count 1 and/or Count 2, and you are able to make a unanimous decision on the special factor or factors you are required to answer for those counts, please so indicate on the verdict form. If, on the other hand, you make a unanimous finding of guilty on Count 1 and/or Count 2, and you are unable to reach a unanimous decision on any of the special factors for those counts, please indicate on the verdict form which special factor or factors you are unable to reach unanimous decision on. . . When disclosing your verdict in open court, your foreperson should orally indicate which counts or questions you were unable to reach a unanimous verdict on by stating 'unable to reach a verdict,' or words to that effect.

On the verdict form, the jury only checked "marijuana" and wrote nothing next to "cocaine" or "cocaine base." Likewise, when the jury returned its verdict in open court, the foreperson said "no" when the clerk asked whether the jury had found cocaine or cocaine base conspiracies, but he answered "yes" when asked whether the jury had found a marijuana conspiracy.

the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt. In applying these principles, [the Court] review[s] all of the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016) (quotation marks and citations omitted). In other words, Rule 29 requires that the Court give great deference to a jury's findings as to "the weight of the evidence and the reasonable inferences to be drawn" from that evidence. *Id.* (quotation marks omitted). This means not only that the Court "must credit every inference that could have been drawn in the government's favor," but that, in assessing the sufficiency of the evidence, the Court "must view the evidence as a whole." *United States v. Applins*, 637 F.3d 59, 76 (2d Cir. 2011). Thus, "where either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." *Facen*, 812 F.3d at 286 (quotation marks and brackets omitted).

**B. Rule 29 motion as to Count 1**

The Defendant's sole argument for acquittal on Count 1 is that, "[a]t the conclusion of the trial, the jury pronounced that . . . they were unable to render, as they must, a unanimous verdict." Docket No. 255 at 5. Thus, the Defendant argues, "judgment of acquittal should be entered on Count 1 because the jury failed to return a verdict." *Id.*

The fact that a jury was unable to reach a unanimous decision on a particular count does not entitle a defendant to a judgment of acquittal on that count. As noted, a court must grant a motion for judgment of acquittal only if, after viewing the evidence in the light most favorable to the Government, the court concludes that "the evidence that the

4

defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Facen*, 812 F.3d at 286.

The Defendant's failure to address this standard as to Count 1 is sufficient to deny his Rule 29 motion. It is well settled that the defendant—not the Government—"shoulders [the] 'heavy burden' in challenging the sufficiency of evidence supporting a conviction." *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000) (quoting *United States v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994)). By relying only on the jury's failure to come to agreement, and not on whether the evidence was sufficient for a reasonable jury to convict the Defendant of Count 1, the Defendant has failed to meet his burden. The Defendant's motion for judgment of acquittal as to Count 1 is therefore denied.

**C. Rule 29 motion as to Count 2**

The Defendant next argues that the Court should enter a judgment of acquittal on Count 2. As noted, in Count 2 the jury convicted the Defendant of conspiring to possess with intent to distribute, or to distribute, marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(D).

To allow the jury to decide Count 2, the Government was required to introduce enough evidence that, when viewed in the light most favorable to the Government, would allow a reasonable jury to find "[t]he elements of a conspiracy to distribute or possess with intent to distribute narcotics in violation of 21 U.S.C. § 846"—that is, "'[1] the existence of such a conspiracy and the defendant's willful joining it.'" *United States v. Medrano*, 511 F. App'x 40, 41 (2d Cir. 2013) (quoting *United States v. Story*, 891 F.2d 988, 992 (2d Cir. 1982) (brackets omitted). "To sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that

5

the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Anderson*, 747 F.3d 51, 60 (2d Cir. 2014) (quotation marks omitted). Moreover, it is well settled that "the conspiratorial agreement itself may be established by proof of a tacit understanding among the participants, rather than by proof of an explicit agreement." *United States v. Desimone*, 119 F.3d 217, 223 (2d Cir. 1997). Finally, "deference to the jury's findings is especially important" as to Count 2 "because a conspiracy by its very nature is a secretive operation, and it is the rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008) (quotation marks and ellipsis omitted).

The evidence introduced at trial—viewed, as it must be, in the light most favorable to the Government—showed that Contreras first sold cocaine to the Defendant, Travis, and Worthy in November 2010. The Defendant, Travis, and Worthy then sold the first shipment of cocaine, but $100,000 of their proceeds, which they had planned to give to Contreras, was stolen. Contreras testified that, because of the theft, he continued doing business with the Defendant in order to "pay for the loss and keep working as associates."[4]

To that end, in December 2010, the Defendant and a person named "Hottie" purchased 100 pounds of marijuana from Contreras's relative in Detroit. Contreras testified that he called the Defendant when Contreras was in Detroit, and he "told [the

---

[4] At the time this Decision and Order is being filed, neither party has ordered a transcript of Julio Contreras's testimony. Thus, this Decision and Order has been prepared based largely on the Court's trial notes. Where the Court quotes Contreras's testimony, the Court Reporter has provided the Court with relevant excerpts of the trial transcript.

6

Defendant] we could do something . . . to start paying the debt off. [The Defendant] said yes. And they arrived later that night or the next day." The Defendant negotiated a price of approximately $1,200 per pound of marijuana, and he—together with Contreras and Hottie—loaded the marijuana "in a vehicle and . . . transported [it] to Buffalo." Once in Buffalo, the Defendant, together with Worthy and Travis, "were responsible" for selling the marijuana.

In addition to this evidence, the Defendant was arrested twice in connection with marijuana distribution.[5] On December 18, 2010, Contreras and the Defendant were both arrested in the midst of a marijuana delivery in Buffalo. And on February 18, 2014, the Defendant was arrested while retrieving a 30-pound package of marijuana that had been shipped from Texas. The circumstances of the second arrest were corroborated by Contreras, who testified that he shipped packages of marijuana to addresses in Buffalo, which the Defendant had provided. Contreras testified that he shipped packages of marijuana as often as five times a week, but that the shipments were not "continuous." Rather, Contreras testified that his marijuana shipments would sometimes "pause" when he had cocaine to ship, but that he "ke[pt] doing the marijuana because the cocaine wasn't always flowing."

This evidence is more than sufficient for a reasonable jury to find that the Defendant was a member of a conspiracy to distribute marijuana. Contreras testified that he, together with the Defendant and others, shipped large quantities of marijuana from Texas and Detroit for resale in Buffalo. They therefore acted together "in furtherance of the conspiracy," and they were together at "critical stages of the conspiracy that cannot

---

[5] After both of his marijuana-related arrests, the Defendant pleaded guilty to state narcotics offenses. *See* Gov't Exs. 18V & 36L.

7

be explained by happenstance." *Anderson*, 747 F.3d at 60 (quotation marks and citations omitted). The Government's evidence easily surpasses the low threshold necessary to survive a Rule 29 motion.

To argue that the evidence was insufficient, the Defendant relies on his own testimony about a man named "Coach," from whom he claimed to have purchased marijuana. The Defendant argues that his testimony regarding "Coach" was insufficient to convict him of Count 2 because "the Government had not adduced sufficient evidence that 'Coach' was more than a mere seller of marijuana, but rather a participant in a conspiracy to distribute marihuana with intent to distribute it." Docket No. 255 at 6.

The Court need not address this argument, however, because the Government's evidence, viewed *in the light most favorable to the Government*, is sufficient to deny the Defendant's Rule 29 motion. The Government's proof and the Defendant's proof regarding marijuana distribution were irreconcilable. Thus, if the Court views the evidence in the light most favorable to the Government—as it must—the Court must assume (only for purposes of this motion), that Contreras's testimony was truthful and the Defendant's was not. With that assumption, the evidence introduced by the Government was more than sufficient for "*any* rational trier of fact [to] have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

**D. The issue-preclusion component of the Double-Jeopardy Clause**[6]

In his reply brief, the Defendant argued that the jury's partial acquittal on Count 2 limits the proof the Government may introduce in any retrial on Count 1.[7] Docket No. 272 at 5. Because this argument could substantially affect the scope of any retrial on Count 1, the Court requested that the Government file a sur-reply. The Government did so (Docket No. 299), and the Defendant responded. Docket No. 316.[8]

In its response, the Government concedes that the issue preclusion doctrine "bar[s] the submission of the Special Factor relating to Count 1 (possession with intent to distribute 5 kilograms or more of cocaine) at the retrial of Count 1."[9] Docket No. 299 at

---

[6] Consistent with the Supreme Court's practice, the Court uses the term "issue preclusion," rather than "collateral estoppel." *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 356 n.1 (2016).

[7] The Defendant's reply brief suggested that the jury's partial acquittal on Count 2 precluded *any* retrial on Count 1. At oral argument, however, the Defendant "concede[d] [that] a RICO conspiracy"—that is, Count 1—"can be retried."

[8] The Defendant's sur-sur reply argues—for the first time—that the Court improperly declared a mistrial on Count 1, and that the Court also erred by allowing the jury to return a partial verdict. Both of these arguments go well beyond the narrow purpose of the Defendant's sur-sur reply. Although the Court has discretion to consider arguments raised for the first time in a reply brief (or, as here, a sur-sur reply brief), the Court declines to do so in this case given that (1) the Defendant has already had two opportunities (his original motion and his reply brief) to raise these arguments; and (2) the Defendant's sur-sur reply was supposed to have been limited to issues concerning double jeopardy. *See In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017) ("The law in the Second Circuit is clear that arguments or requests for relief raised for the first time in reply briefs need not be considered.") Although the Court is considering the Defendant's issue-preclusion argument—despite it being raised for the first time in a reply brief—the circumstances surrounding that argument are different. If the Court did not address the Defendant's issue-preclusion argument now, the Defendant would almost certainly (and properly) have raised the issue in a pre-trial motion before retrial on Count 1. Thus, the Court would need to address the issue at some point. To the extent this rationale also applies to the Defendant's argument about a mistrial, the argument is without merit. The Court declared a mistrial on Count 1 after two lengthy days of jury deliberation that included several reports of deadlock, an *Allen* charge, and reports from the Court Security Officer (CSO) of "very loud" and "confrontational" "foul language" from the jury deliberation room that was "[t]o the point where [the CSO] was prepared to go in . . . if something did happen." By the time the Court declared a mistrial on Count 1, there was little question in the Court's mind that the jury was "genuinely deadlocked" and that a manifest necessity existed to declare a mistrial on Count 1. *See, e.g.*, *United States v. Razmilovic*, 507 F.3d 130, 136-39 (2d Cir. 2007) (summarizing manifest necessity standard).

[9] The special factor for Count 1 was the same as the cocaine conspiracy charge of which the Defendant was acquitted in Count 2.

9

1. The Government argues, however, that issue preclusion does not "apply in any other respect to the retrial." *Id.* The question, therefore, is whether the issue preclusion component of the Double Jeopardy Clause precludes the Government from introducing, at a retrial on Count 1, evidence concerning cocaine or cocaine base conspiracies—that is, the conduct of which the Defendant was acquitted in Count 2.

"In criminal prosecutions, as in civil litigation, the issue-preclusion principle means that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 356 (2016) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). In other words, "the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager v. United States*, 557 U.S. 110, 119 (2009). "To decipher what a jury has necessarily decided, . . . courts should 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" *Id.* at 119-20 (quoting *Ashe*, 397 U.S. at 444). A court must "approach that task with 'realism and rationality,'" and it must "examine the trial record 'with an eye to all the circumstances of the proceedings.'" *Bravo-Fernandez*, 137 S. Ct. at 364 (quoting *Ashe*, 397 U.S. at 444). This means that a court should not "strain[] to postulate 'hypertechnical and unrealistic' grounds on which the jury could conceivably have rested its conclusions." *United States v. Mespoulede*, 597 F.2d 329, 333 (2d Cir. 1979). Finally, in determining

what the jury "necessarily decided," a court may not consider the fact that the jury hung on any count. *Yeager*, 557 U.S. at 122.

It is the Defendant's burden to "prov[e] that the fact-finder acquitted him because it resolved in his favor the very issue that he seeks to foreclose from consideration in the second trial." *Mespoulede*, 597 F.2d at 333. This is a "heavy burden" that "is particularly onerous where"—as here—"the acquittal in the first trial involves the crime of conspiracy." *United States v. Clark*, 613 F.2d 391, 400 (2d Cir. 1979) (quotation marks omitted).

The Defendant identifies a broad factual issue that he seeks to preclude in a retrial on Count 1: He argues that, "[a]t a minimum, [he] should not be subjected to a second trial on Count 1 . . . involving cocaine and cocaine base narcotics conspiracies." Docket No. 316 ¶ 30. At oral argument, the Defendant confirmed that he seeks to preclude evidence of "the notion that there was a cocaine conspiracy" or "the fact that there was cocaine."[10]

The Defendant has not met his "particularly onerous" burden. To obtain the relief he seeks, the Defendant must show that, when the jury acquitted him of cocaine and cocaine base conspiracies, the jury necessarily found that no cocaine or cocaine base conspiracies existed. The record from the first trial, however, does not support this broad position. An "[un]strain[ed]" reading, *Mespoulede*, 597 F.2d at 333, of the evidence and arguments at the first trial shows that a "rational jury could have grounded its verdict[s]"

---

[10] *See also id.* ("There should be no testimony with regard to whether or not [the Defendant] was or may have been involved in a cocaine conspiracy—cocaine base conspiracy."); Docket No. 316 ¶ 34 ("Here, the narcotics conspiracies were critical issues of ultimate fact in the Count 1 and 2 charges . . . upon which the Jury's verdict necessarily decided the cocaine and cocaine base narcotics conspiracy issues in [the Defendant's] favor.")

11

in Count 2 "upon an issue other than" whether cocaine or cocaine base conspiracies existed. *Ashe*, 397 U.S. at 444.

As noted, the Government and the Defendant offered differing theories of this case that were, in many respects, irreconcilable. The Government's theory of Count 2 was that the Defendant arranged large shipments of cocaine and marijuana from Contreras. The Defendant's testimony was far different: He flatly denied purchasing "large amounts of kilos of cocaine" from Contreras or anyone else. Docket No. 273 at 14:5-9.[11]

But the Defendant's testimony did *not* foreclose the existence of a conspiracy to distribute cocaine or cocaine base. To the contrary, the Defendant's testimony acknowledged that such a conspiracy existed:

> Q: Okay. Now, you mentioned Mr. Travis, Letorrance Travis?
>
> A: Yes.
>
> Q: And he's a friend of yours that you've known since when?
>
> A: From teenage years.
>
> Q: Were you aware that Mr. Travis was dealing cocaine?
>
> A: Yes.
>
> Q: And for how long?
>
> A: Not quite sure about how long.
>
> Q: When did you first come to know?
>
> A: When I came home from school in 2007.
>
> Q: And how did you come to know?

---

[11] *See also id.* at 41:6-10: (Q: In 2010, were you conspiring with Julio Contreras, Letorrance Travis, Marcel Worthy, or anyone else in the trafficking of cocaine? A: No, sir. Q: But in 2010, you were dealing your own marijuana; is that correct? A: Yes, sir.)

A: Well, he would always have expensive cars and jewelry and he was just flamboyant and he wanted everybody to know that he had money and he had cocaine for sale.

Q: Did you ever involve yourself with him in the trafficking of cocaine?

A: Not at all.

Q: Why not?

A: Because I don't sell cocaine. It wasn't my thing. It's not what I do.

Q: Did you know where Mr. Travis was getting his cocaine from?

A: He had a cousin from Texas.

Q: What is his cousin's name?

A: Will Johnson.

Q: And where was Will Johnson in Texas; do you know?

A: Not positive. I believe it's Houston.

Q: And what about Will Johnson, his cousin?

A: Well, he would always be with Will Johnson. I know Will. He's in jail now, I believe, but that was his source of cocaine.

Q: Do you know where Will Johnson got his cocaine from?

A: Yes. Julio Contreras.

Q: So, Julio would supply Will Johnson and Will Johnson would supply Mr. Travis, correct?

A: Yes.

Q: Now, how is it that you came to know this about Mr. Travis? Did he tell you this? Did you witness it?

A: It kind of just, I guess, everybody knew. It was—he never hid it. He didn't hide it. He was almost happy and proud about what he was doing, so.

> Q: Did Mr. Travis ever coordinate or assemble an association or group of individuals to help him traffic this cocaine?
>
> A: Not that I know of. I know his brothers, yes. His cousins, really. Just his family that I know of, his family, his brothers, Shawntorrian Travis, Demario James, Marcel Worthy would always be with him, but he never sold cocaine, doesn't sell cocaine.

Tr. 15:10 – 17:7. *See also* Tr. 19:4 – 9 ("Q: So, as the government states, who had the connect, is what—the term that they used. Who had the Mexican connect? A: Will Johnson. Q: And then after Will Johnson, who had the Mexican connect? A: Travis, Letorrance Travis.") Other evidence supported the theory that Travis, among others, was a member of a conspiracy to distribute cocaine.[12] As noted, however, the Defendant denied being a member of the conspiracy involving Travis and Contreras. Indeed, he testified that he "didn't sell cocaine" because "[i]t wasn't [his] thing," and "[i]t's not what [he] d[oes]." Tr. 16:3-4.

As the Court instructed the jury, to convict the Defendant of a narcotics conspiracy under 21 U.S.C. § 846, the jury must have found two elements beyond a reasonable doubt: "[1] the existence of a [narcotics] conspiracy and [2] the defendant's willful joining it." *United States v. Story*, 891 F.2d 988, 992 (2d Cir. 1982). Thus, to acquit the Defendant of cocaine and cocaine base conspiracies, the jury would have to have found that the Government failed to prove at least one of these elements beyond a reasonable doubt. The testimony and arguments at trial show that a rational jury could have concluded, based on the Defendant's testimony, that the Defendant was not a member

---

[12] For example, Drug Enforcement Administration (DEA) Special Agent Brian Chella testified that, when Travis was arrested, he was carrying approximately four kilograms of cocaine in a bookbag, while DEA Special Agent Greg Yensan testified that he found approximately 1.5 kilograms of cocaine in the bedroom closet of a home that was either associated with, or owned by, Travis.

14

of a cocaine or cocaine base conspiracy and, for that reason, acquitted him of cocaine and cocaine base conspiracies in Count 2.

But that does not mean that the jury found that no cocaine or cocaine base conspiracies existed. If a rational jury concluded that the Defendant was not a member of a cocaine or cocaine base conspiracy, it would have to have done so based on the Defendant's testimony. And if a rational jury believed the Defendant's testimony on that issue, it would make no sense for the jury to have also found that no cocaine conspiracy existed, because the Defendant's *own testimony* confirmed that a cocaine conspiracy existed.[13]

A rational jury could therefore "have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration," *Ashe*, 397 U.S. at 444, by concluding that cocaine and cocaine base conspiracies existed but that the Defendant was not a member of the conspiracies. As a result, the Defendant has failed to meet his high burden of showing that the facts he seeks to preclude at retrial were necessarily decided in his favor.

## CONCLUSION

For the reasons stated above, the Defendant's motion for judgment of acquittal on Counts 1 and 2 (Docket No. 255) is denied. The Defendant's motion to preclude evidence on issue-preclusion grounds is also denied. The Speedy Trial Act clock as to Count 1 is now running. The status conference scheduled for February 22, 2018 is therefore

---

[13] The Defendant did not acknowledge the existence of a conspiracy to distribute cocaine base. He did, however, deny being a member of such a conspiracy. *See* Tr. 100:10-12. Even if the jury relied on the Defendant's testimony to acquit him of being a member of a conspiracy to distribute cocaine base, that does not mean that the jury necessarily decided that no conspiracy existed to distribute cocaine base. Thus, it is irrelevant to the Court's issue-preclusion analysis whether the Defendant acknowledged the existence of a conspiracy to distribute cocaine base.

advanced to February 15, 2019 at 9:30 a.m. At that conference, the parties should be prepared to schedule a date for retrial on Count 1.

**SO ORDERED.**

Dated: February 12, 2018                  *s/Richard J. Arcara*
    Buffalo, New York                HONORABLE RICHARD J. ARCARA
                                         UNITED STATES DISTRICT JUDGE