IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

AARON HICKS,

Petitioner,

v.                                              Case No. 1:15-CR-00033(RJA)(RBS)

Civil Action No._____

UNITED STATES OF AMERICA,

Respondent

_____/

Assigned to: Hon. Richard J. Arcara

Referred to: Hon. Hugh B. Scott

## MEMORANDUM OF LAW IN SUPPORT OF SECTION 2255 MOTION

NOW COMES the Petitioner, Aaron Hicks, (hereinafter "Hicks" or "Petitioner"), proceeding in this matter, pro-se and submits the instant Memorandum of law in support of his section 2255 motion.

In support hereof, Petitioner Hicks shows the following:

This matter comes before the Court for consideration of the pro se motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 filed by Hicks. For the reasons stated below, this Honorable Court should grant the petition.

### I. 28 U.S.C. § 2255

United States Code, Title 28, Section 2255 provides that a prisoner in custody under sentence of a federal court may file a petition in the court that imposed the sentence to vacate, set aside, or correct the sentence. The statute states four grounds upon which such relief may be claimed: (1) that the sentence was imposed

1

in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Generally, "28 U.S.C. § 2255 requires [a] petitioner to prove by a preponderance of the evidence that 'the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law.'" Leano v. United States, 334 F. Supp. 2d 885, 890 (D.S.C. 2004) (quoting 28 U.S.C. § 2255(a)). In Leano, the District Court noted that this is "the proof needed to allege a constitutional error," and that "[t]he scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" Leano, 334 F. Supp. 2d at 890 (quoting United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999)). In deciding a 28 U.S.C. § 2255 motion, the court need not hold a hearing if "the motion and the files and record of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. After reviewing the motion, files, and records in this case, liberally construing Hicks' pro se motion, this Court should find that a hearing is necessary.

It is within the discretion of the district judge to deny without a hearing Section 2255 motions which state only "legal conclusions with no supporting factual allegations." Sanders v. United States, 373 U.S. 1, 19, 83 S. Ct. 1068, 1079, 10 L.Ed.2d 148 (1962); Eaton v. United States, 384 F.2d 235 (9th Cir. 1967). Allegations of "a vague, conclusory or palpably incredible nature" do not raise factual issues which require a full hearing. Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 7 L.Ed.2d 473 (1962).

## II. Standard of Review

Hicks brings this petition pro se. Courts are required to construe liberally pleadings filed by pro se litigants to allow for the development of potentially meritorious claims. See Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam). These pleadings are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (2nd Cir. 1978). However, "[t]he 'special judicial solicitude' with which a district court should view such pro se complaints

does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." Id.

## III. Discussion

A. Timeliness Under the Anti-Terrorism and Effective Death Penalty Act

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year period of limitation within which a petitioner must bring any federal habeas corpus petition. 28 U.S.C. § 2255. According to the statute, the limitation period shall run to the last of:

(1) The date on which the judgment of conviction becomes final;

(2) The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) The date on which the right was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) The date on which facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). This Court should find, under the facts of this case that Hicks's petition is timely filed.

When an appellate court affirms on direct appeal, the clock on a Section 2255 petition starts to run when the time expires for filing a petition for a writ of certiorari contesting the affirmation of the conviction. Clay v. United States, 537 U.S. 522, 524-25 (2003).

## IV. Relevant Facts and Background:

Aaron Hicks was convicted after trial of marijuana conspiracy but acquitted of cocaine and cocaine base conspiracy and a related firearms charge. The jury was unable to reach a verdict as to the charge of conspiracy under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d).

3

Following a second jury trial, Hicks was convicted of the RICO conspiracy count and sentenced by the United States District Court for the Western District of New York.

## The Trial:

Hicks was retried on one count of conspiracy under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d), after having been convicted in an earlier trial of participating in a marijuana trafficking conspiracy but acquitted of participating in a cocaine and cocaine base conspiracy and a related firearms charge. Before his first trial, Hicks moved to disqualify the attorney for one of his co-defendants because the attorney had previously represented Hicks in a related state court matter. The United States District Court for the Western District of New York (Arcara, J.) denied the motion. It elected instead to sever Hicks's trial from that of the co-defendant and proceeded to try Hicks alone. Hicks claims that this was an abuse of discretion. During the retrial, moreover, the District Court admitted evidence suggesting that Hicks had participated in the cocaine conspiracy notwithstanding his earlier acquittal.

## The Government's Case:

In 2015 Hicks, along with other defendants, was charged principally with conspiracy to distribute marijuana, cocaine, and cocaine base in violation of 21 U.S.C. § 846, possession of a firearm in furtherance of a crime of violence and a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), and RICO conspiracy in violation of 18 U.S.C. § 1962(d). Before trial, Hicks moved to disqualify co-defendant Roderick Arrington's counsel, Andrew LoTempio, on the ground that LoTempio had previously represented Hicks in a state court matter that, it turned out, the Government alleged was an overt act in furtherance of the RICO conspiracy charged in this case.

The District Court held a Curcio hearing to probe the nature of LoTempio's potential conflict and to determine whether Arrington would waive the conflict. After the hearing, Arrington waived the potential conflict, and the District Court accepted Arrington's waiver. This Court later held that Arrington's waiver was not knowing and intelligent because he was not fully informed of the consequences of the waiver. See United States v. Arrington, 941 F.3d 24, 42–44 (2d Cir. 2019).

4

The District Court nevertheless recognized that Arrington's waiver did not fully resolve the potential conflicts that might arise in a joint trial. If Hicks testified, the court observed, LoTempio could exploit his prior representation of Hicks to cross-examine him. To avoid this problem, LoTempio proposed severing Hicks's trial from Arrington's, while Hicks sought LoTempio's disqualification altogether. The District Court decided that severing the trials was the better option. Disqualifying LoTempio as Hicks proposed, it explained, would violate Arrington's Sixth Amendment right to be represented by the counsel of his choice.

Hicks was tried alone. At trial the Government sought to prove that Hicks was a member of a violent Buffalo-based drug-trafficking organization it called the "Schuele Boys." The Government introduced evidence that Hicks and other Schuele Boys members trafficked in marijuana, cocaine, and cocaine base. In addition to evidence of various drug deals, the Government introduced two music videos produced by a record label associated with the Schuele Boys that featured lyrics about the drug business and depicted Hicks (and others) with cash and prop drugs.

For example, one cooperating government witness, Julio Contreras, testified that he started selling cocaine to Hicks, his main contact within the Schuele Boys, in late 2010, with an initial shipment of sixteen kilograms of cocaine from Texas to Buffalo. Contreras continued to transport cocaine routinely from Texas directly to Hicks until Contreras was arrested a year later, in November 2011. There was also evidence that Hicks, Arrington, and others plotted to murder Quincy Balance in retaliation for the murder of a Schuele Boys member. One witness testified that Hicks and others discussed murdering Balance, while another placed Hicks at the scene of Balance's murder. The jury reached a mixed verdict. It found Hicks guilty of engaging in the marijuana conspiracy, but it acquitted him of conspiring to traffic in cocaine or cocaine base. On the special verdict form finding Hicks guilty of a narcotics conspiracy only with respect to marijuana, the jury checked "marijuana" but wrote nothing next to "cocaine" or "cocaine base." The District Court understood that this alone would not be enough to conclude that Hicks was acquitted of trafficking in cocaine or cocaine base. See United States v. Gotti, 451 F.3d 133, 136 (2d Cir. 2006) ("[A] jury verdict must be unanimous.") (citing Fed. R. Crim. P. 31(a)). The District Court nevertheless concluded that an acquittal could be inferred "[b]ased on the Court's instruction to the jury, together with the way in which the jury returned its verdict on Count 2"; when the clerk asked whether the jury had found that Hicks had trafficked in cocaine or cocaine base,

5

the foreperson said "no" rather than "unable to reach a verdict," which is how the District Court had instructed the foreperson to respond when the jury was unable to reach a unanimous verdict. Sp. App'x 22-23 & n.3. Neither party disputes that the jury acquitted Hicks of cocaine or cocaine base trafficking.

Hicks was also acquitted of the firearm possession charge. The jury was unable to reach a verdict on the RICO conspiracy count, as to which the District Court declared a mistrial. Hicks moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. Because it was likely that he would be retried on the RICO conspiracy count, he also moved to exclude evidence of any cocaine or cocaine base trafficking in the retrial. Admitting the evidence, he claimed, would violate his double jeopardy rights.

The District Court denied both motions. On the motion to exclude evidence at the retrial, it explained that the jury could have concluded that cocaine and cocaine base conspiracies existed but that [Hicks] was not a member of the conspiracies. Because double jeopardy attached only if the jury had necessarily decided both of those elements in Hicks's favor and because the retrial involved the very different charge of RICO conspiracy, the court reasoned, there was no basis to preclude evidence of the cocaine or cocaine base trafficking in Hicks's retrial.

Hicks was retried in 2018. At the retrial, the Government relied on substantially the same evidence that it had presented during the first trial. The only new evidence of Hicks's participation in a cocaine conspiracy that was admitted at the retrial consisted of the testimony of an individual who said he sold marijuana and cocaine that he had obtained from Hicks. In particular, it reintroduced evidence that Contreras regularly shipped cocaine from Texas to Hicks in Buffalo—the same evidence that it had used unsuccessfully in the first trial to convict Hicks of engaging in a cocaine conspiracy. The Government also emphasized the relationship between Contreras and Hicks in its summation, as follows: Contreras told you that they became members, right; that he came up in November of 2010 with 16 kilograms of cocaine and they established what the prices were going to be and how they were going to be sold [T]hey established their agreement then. [Hicks] knew that he was a member, knew what he was getting into.

The second jury convicted Hicks of the RICO conspiracy count. The District Court then sentenced Hicks principally to 360 months' imprisonment.

6

Issues on Appeal Hick (Two Claims):

(i)   Did the District Court's decision to admit evidence of Hicks's involvement in cocaine or cocaine base trafficking during his retrial on the RICO conspiracy charge violate the prohibition against double jeopardy?

(ii)  Did the District Court err when it denied Hicks's motion to disqualify his co-defendant's counsel and instead severed Hicks's trial?

Hicks' request for rehearing en banc and petition for certiorari to the Supreme Court was denied on February 22nd, 2022. Thus, Hicks' section 2255 motion is timely filed under section 2255(f)(1). See, U.S. SUPREME COURT NOTICE, dated 02/22/2022, U.S. Supreme Court docket # 21-6691, stating the petition for writ of certiorari is denied, RECEIVED. [3265529] [19-590] [Entered: 02/22/2022 05:11 PM].

**Issues Presented for Section 2255 Review:**

I.   Whether Hicks was denied due process of law and effective assistant of counsel when trial counsel refused to investigate issues relating to jurors' bias?

II.  Whether Hicks was denied due process of law and effective assistant of counsel when trial counsel refused to request for dismissal of RICO count due to decriminalization of marijuana in his State prior felony convictions?

III. Whether Hicks' was due process of law and effective assistant of counsel when he was given a $10.6 million-dollar forfeiture for a cocaine conspiracy that he was acquitted of?

IV.  Whether Hicks' was due process of law where LoTempio's representation of Arrington created a conflict of interest with Hicks that Hicks was unwilling to waive.

I.  Hicks was denied due process of law and effective assistant of counsel when trial counsel refused to investigate issues relating to jurors' bias.

Hicks was denied the right to a trial by a fair and impartial jury;" Ruggiero v. U.S., 97 Civ. 2925 (HB), at *1 (S.D.N.Y. Mar. 22, 2001). Hicks alleges that there were a number of irregularities that prevented the jury from being fair and impartial. These claims are based on the post-trial statements of two (2) jurors.

Whom Hicks contacted after the trial, by way of private investigator. These two jurors failed to disclose on voir dire that while deliberating there were other jurors using racial slurs. These jurors came forward both during and after trial, but counsel refused to investigate the matter.

These jurors who witnessed these accounts are willing to give affidavits and testify if necessary.

The Supreme Court has established a two-part test for determining whether a new trial is warranted when a defendant alleges juror bias based on juror misrepresentation during voir dire. "A party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." McDonough Power Equip. v. Greenwood, 464 U.S. 548, 556 (1984). The goal of this inquiry is to determine whether the juror was in fact biased against the defendants.

Each juror must be able to make that decision based solely on the evidence, uninfluenced by personal experiences that he or she may have had." United States v. Sampson, 820 F. Supp. 2d 151, 157 (D. Mass. 2011) ("Sampson I"). "'When possible, juror misconduct is brought to the trial judge's attention, he has a duty to investigate and to determine whether there may have been a violation of the [S]ixth [A]mendment.'" United States v. Lloyd, 462 F.3d 510, 518 (6th Cir. 2006) (quoting United States v. Shackleford, 777 F.2d 1141, 1145 (6th Cir. 1985))." Morgan v. Illinois, 504 U.S. 719, 729 (1992).

Hicks moves for a judgment vacating his conviction or, in the alternative, have an evidentiary hearing in regard to the juror bias claim. (This petition will be amended with two affidavits, after it is timely filed under section 2255(f)(1)).

8

II. Hicks was denied due process of law and effective assistant of counsel when trial counsel refused to request for dismissal of RICO count due to decriminalization of marijuana in his State prior felony convictions

(i) Decriminalization of Marijuana:

Hicks moves to dismiss the charges of manufacture and possession of marijuana in this case based on what he claims are violations of his due process and equal protection rights under the Fifth Amendment. His contentions focus on the hackneyed arguments that the government is not justified in placing marijuana in Schedule I of the Controlled Substances Act, 21 U.S.C. §801, et seq.; that marijuana has accepted medical uses; that the legalization or decriminalization of marijuana has occurred in a number of countries and some states; and the other frequently raised arguments in support of the legalization or decriminalization of marijuana.

(ii) Under the current law, an 851 enhancement is inapplicable to Hicks because he does not have a "serious drug felony".

A defendant has the right to attack enhancement under 21 USC §851(c)(1) and (2) on the ground that the prior conviction(s) relied upon was obtained in violation of the United States Constitution or otherwise invalid. Thus, this provision contemplates that, prior to a hearing, a defendant's written response to a prior felony information will notify the Government of what facts are disputed, and afford the Government an opportunity to prepare a response. United States v Espinal, 634 F3d 655 (2d Cir 2011).

The Sentencing and Corrections Reform Act 2017 (the First Step Act) replaces the concept of enhancement for a prior "felony drug offense" with a "serious drug felony," the release from which is within 15 years of the commencement of the instant case. A "serious drug felony" means an offense described in section 924(e)(2) of Title 18, United States Code, for which "(A) the offender served a term of imprisonment of more than 12 months," not that more than 12 months was possible.

In the case at bar, Hicks did not serve more than 12 months imprisonment for either of his prior felony convictions. Consequently, increased punishment is not applicable to the instant case due to the passing of the First Step Act in late December 2018. The First Step Act changed the maximum possible penalties for Count 2 under the redacted indictment, as Hicks is no longer eligible for the 851

9

enhancement under the current law because he does not have a serious drug felony. As to Count 2, the maximum possible imprisonment is now not more than 5 years. United States of America v. Tyshon L. Powell, Case No.: 1:18-cr-00052-TLS-SLC (N.D.I.N. Dkt #45, fn 1, Report and Recommendation, 1/15/19).

**Relevant Facts:**

On February 25, 2015, the Government filed an Information providing notice "that, upon the defendant's conviction of a violation of Title 21 of the United States Code providing for increased punishment in the event of one or more prior final convictions for a felony drug offense, the United States intends to rely upon the defendant's following prior felony convictions as the basis for the imposition of such increased punishment: (1) on or about June 5, 2013, in the County Court, Erie County, New York, Docket Number 313-2011, for a violation of New York Penal Law § 221.25, Criminal Possession of Marijuana in the Second Degree (Class D felony); and (2) on or about July 14, 2014, in the County Court, Erie County, New York, Docket Number 451-2014, for a violation of New York Penal Law § 221.25, Criminal Possession of Marijuana in the Second Degree (Class D felony). (Dkt #6).

On September 25, 2017, the Government filed with the Court and served upon the defense a redacted three count superseding indictment charging the following: Count 1, Racketeering Conspiracy through a pattern of racketeering activity, 18 USC §§1961(1), 1961(4), 1961(5), 1962(c) and 1962(d); Count 2, Narcotics Conspiracy to possess with the intent to distribute, and to distribute, 5 kilograms or more of a mixture and substance containing cocaine, a quantity of a mixture of substance containing cocaine base, and marijuana, 21 USC §§846, 841(a)(1), 841(b)(1)(c) and 841(b)(1)(D) and Count 3, possession of firearms in furtherance of a crime of violence and drug trafficking crime, 18 USC §924(c)(1)(A)(i) and aiding and abetting, 18 USC §2. (Dkt #257).

On September 27, 2017, a jury trial commenced on the charges contained in the redacted indictment and concluded on October 13, 2017. The Court provided the jury with a special verdict form containing "special factor" interrogatories, which required a cocaine quantity determination as to the racketeering conspiracy (Count 1) and divided the narcotics conspiracy (Count 2) into three separate conspiracies of cocaine, cocaine base and marijuana. The jury rendered its verdict as follows: a) Count 1- unable to render a unanimous verdict; b) Count 2- a unanimous guilty

10

verdict as to marijuana only, and c) Count 3- a unanimous not guilty verdict. (Dkt #258).

**Discussion:**

Hicks concedes that on October 6, 2011, after a state criminal trial, a jury found Hicks guilty of criminal possession of marijuana in the second degree, a class D felony, in violation of PL §221.25 and unlawful tinted windows, a traffic infraction offense, in violation of VTL §375(12-a)(b)(2). Hicks was sentenced to an imprisonment term of eighteen (18) months with one-year post release supervision and an unconditional discharge with a fee of $375. Immediately following, Hicks filed for, and was granted, bail pending appeal and was released in November of 2011. On November 9, 2012, the Appellate Division of the Supreme Court of New York, Fourth Department, reversed the judgment of conviction and granted a new trial. People v Hicks, 100 AD 3d 1379, 953 NYS 2d 770 (4th Dept 2012). On June 5, 2013, upon his plea of guilty to criminal possession of marijuana in the second degree and unlawful tinted windows, the trial court sentenced Hicks to concurrent terms of imprisonment of one year and 30 days, to be served at the Erie County Correctional Facility, of which Hicks actually served an eight (8) month term of imprisonment.

Hicks concedes that on May 7, 2014, he pled guilty in the New York State, Erie County Court to criminal possession of marijuana in the second degree, a class D felony, in violation of PL §221.25, and criminal possession of a controlled substance in the fifth degree, a class D felony, in violation of PL §220.06(5), upon which he was sentenced to a probation term of 5 years on each count. People v Hicks, SCI 00451-2014.

Hicks' conviction under Count 2 was based on a narcotics conspiracy that involved more than 100 kilograms of marihuana under 21 USC §841(b)(1)(B)(vii); thus, an §851 enhancement is invalid under the Sentencing and Corrections Reform Act 2017.

21 USC § 841(a) sets forth the prohibited act and states, "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 USC § 841(b) sets forth the sentencing penalties for a violation of 21 USC § 841(a), which is based upon the type and quantity of the controlled substance involved.

As it relates to the instant conviction under Count 2 in the first trial, Hicks maintains his objection and exception to his conviction under Count 2, on the grounds that the verdict was against the weight of the evidence to sustain a marijuana conspiracy conviction. Hicks challenges his conviction under Count 2 as the jury's determination was based upon Hicks' non- conspiratorial purchases of marijuana in Texas from an individual named "Coach" and his independent sales to others in Pennsylvania and New York, the conduct of which was independent of any criminal conduct of any other alleged codefendant or any other conspiracy in which other codefendants participated. A jury determination that Hicks was guilty of a narcotics conspiracy involving less than 50 kilograms of marihuana on Count 2 of the redacted indictment charging a violation of 21 USC § 841(b)(1)(D), supports Hicks' position.

The Government maintains that the jury's determination that Hicks was guilty under Count 2 was based upon the totality of the trial testimony supporting a narcotics conspiracy committed by defendant and other codefendants to traffic marijuana. However, under the Government's position, relying on the totality of the trial testimony, the jury necessarily convicted Hicks of a narcotics conspiracy involving 100 kilograms or more of a mixture or substance containing a detectable amount of marihuana under 21 USC §841(b)(1)(B)(vii).

In order to find Hicks guilty of a narcotics conspiracy involving marijuana, and not simply a buyer/seller relationship, any perceived trial testimony supporting the conviction necessarily involves, at the very least, more than 100 kilograms of marijuana. Therefore, although charged in the redacted indictment with a narcotics conspiracy involving less than 50 kilograms of marihuana in violation of 841(b)(1)(D), Hicks was convicted by the jury of a marihuana conspiracy involving more than 100 kilograms under 21 USC §841(b)(1)(B)(vii).

Accordingly, consistent with the Government's position, viewing the testimony in a light most favorable to the government, Hicks is otherwise not subject to an increased sentence as a matter of law and an enhancement under §851 in this particular case is inapplicable.

> III. Hicks' was denied due process of law and effective assistant of counsel when he was given a $10.6 million-dollar forfeiture for a cocaine conspiracy that he was acquitted of.

Hicks maintains that (his counsel) and the district court failed to consider the factors mandated by the statute authorizing forfeiture as part of a sentence. When Hicks was given a $10.6 million-dollar forfeiture for a cocaine conspiracy that he was acquitted of. See United States v. Thompson, 113 F.3d 13, 14 (2d Cir. 1997). An improperly ordered restitution or forfeiture, however, constitutes an illegal sentence amounting to plain error.

Here Hicks that the Forfeiture Order constitutes a restraint on his liberty in light of the Supreme Court's ruling in Honeycutt v. United States, 137 S. Ct. 1626, 198 L. Ed 2d 73 (2017). On June 5, 2017, the Supreme Court held that 21 U.S.C. § 853(a)(1), which mandates forfeiture of "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" certain drug crimes, does not permit the application of joint and several liability to forfeiture by co-conspirators who never possessed the tainted proceeds of their crimes. Honeycutt, 137 S. Ct. at 1635. Thus, Hicks believes that his forfeiture judgment is erroneous, because he was acquitted of the crime.

Hicks presents two grounds for vacating the Forfeiture Order: (1) the alleged violation of his Sixth Amendment right to effective assistance of counsel; and (2) the excessiveness of the Forfeiture Order allegedly in contravention of the Eighth Amendment.

Section 982(a)(2) permits courts to order the forfeiture of "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation." Its language "shares several features with 21 U.S.C. § 853," the statute at issue in Honeycutt, "such as a reach limited to property 'constituting' or 'derived from' proceeds obtained 'directly or indirectly' from the crime." United States v. Brown, 714 F. App'x 117, 118 (3d Cir. 2018). Section 982 also "expressly incorporates 21 U.S.C. § 853(p), among the other procedures in § 853." United States v. Chittenden, 896 F.3d at 638 (citing 18 U.S.C. § 982(b)(1)). Based on these similarities, Honeycutt seems directly applicable to Section 982(a)(2). See Sec. & Exch. Comm'n v. Amerindo Inv. Advisors Inc., No. 05-cr-621, 2019 WL 3526590, at *2 (S.D.N.Y. Aug. 2, 2019) ("[T]he Court concludes that Honeycutt is most likely applicable because the indictment relied in part on 18

13

U.S.C. § 982, which incorporates § 853 by reference."). United States v. Mirando, 14-CR-221 (ADS), at *7 (E.D.N.Y. May 20, 2020).

The Second Circuit cases cited by those courts relied on the specific meaning of the terms in the particular forfeiture statutes at issue. See United States v. Contorinis, 692 F.3d 136, 147 (2d Cir. 2012) (describing Section 981(a)(1)(C), providing for forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation"); United States v. Torres, 703 F.3d 194 (2d Cir. 2012) (describing Section 981(a)(2)(A), providing for forfeiture of "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense").

The Second Circuit has recognized that that the language of those provisions is "much broader" than the language of Section 982(a)(2). See United States v. Seabrook, 661 F. App'x 84, 86 (2d Cir. 2016) (describing the language in Section 853(a) requiring the forfeiting of "any proceeds the person obtained" or "any of the person's property"). Therefore, other courts' allowance of joint and several liability under other forfeiture provisions does not necessarily support joint and several liability here. Cf. United States v. Kenner, No. 3-cr-607, 2020 WL 1148671, at *10 (E.D.N.Y. Mar. 10, 2020) ("Whether Honeycutt precludes joint and several forfeiture liability under 18 U.S.C. § 982(a)(1), for a conviction of a money-laundering offense, is an issue of first impression in this Circuit.").

Indeed, multiple circuits ruled that Honeycutt precludes joint and several forfeiture liability under Section 982(a)(2) before the Court sentenced the Defendant. See Brown, 714 F. App'x at 118 ("[W]e conclude that Honeycutt applies with equal force to § 982(a)[.]"); Chittenden, 896 F.3d at 640 ("In light of the Supreme Court's decision in Honeycutt, we hold that 18 U.S.C. § 982(a)(2) precludes joint and several forfeiture liability.").

Here counsel failed to raise a potentially viable challenge to the forfeiture amount ordered by the Court due to the fact that he was unaware of Honeycutt. ECF 392-2 ¶ 7. "Errors caused by counsel's ignorance of the law are errors that run afoul of the objective standard of reasonableness." Noble v. Kelly, 89 F.Supp.2d 443, 463 (S.D.N.Y. 2000); see also Cornell v. Kirkpatrick, 665 F.3d 369, 379 (2d Cir. 2011) ("Cornell's counsel admits that his actions were a result of an omission and cannot be viewed objectively as sound trial strategy."); Cox v. Donnelly, 432 F.3d 388, 390 (2d Cir. 2005) (finding counsel's performance "fell below prevailing standards

of professional conduct" where "he did not challenge the trial court's intent instructions because he did not then know that they were illegal under state and federal law").

Accordingly, this Court should find that defense counsel's oversight of Honeycutt satisfies the first prong of the Strickland test. See Bloomer v. United States, 162 F.3d 187, 193 (2d Cir. 1998) ("Although an attorney is not usually faulted for lacking the foresight to realize that a higher court will subsequently identify a defect injury instructions similar to those used at his client's trial, an attorney nonetheless may be held responsible for failing to make such an objection when precedent supported a 'reasonable probability' that a higher court would rule in defendant's favor.").

Under the facts of this case Hicks should be given time to brief and research Honeycutt's applicability to Section 982(a)(2).

IV.  Hicks' was denied due process of law where LoTempio's representation of Arrington created a conflict of interest with Hicks that Hicks was unwilling to waive.

On appeal, Hicks continues to insist that the District Court erred when it severed his trial. He argues that Judge Arcara should have disqualified Arrington's conflicted counsel (LoTempio) and held a joint trial.

This Court has previously considered the potential conflict presented by LoTempio's representation of Arrington—after having represented Hicks in one of the charged overt acts—in United States v. Arrington, 941 F.3d 24 (2d Cir.)

Arrington asked to keep LoTempio as his counsel at a joint trial with Hicks, notwithstanding the potential conflict. Hicks asked to disqualify LoTempio rather than sever the trials. The District Court severed the trial because it was "[t]he only apparent way to protect" the rights of both Hicks and Arrington. Sp. App'x 19. In particular, the court said, "disqualification of LoTempio . . . would violate . . . Arrington's Sixth Amendment right to be represented by the counsel of his choice." Id.

This court held that Arrington's decision to waive the conflict and to retain LoTempio was not knowing and intelligent because he had never been properly apprised of "the main strategic disadvantages arising from LoTempio's conflict"— that Arrington's trial would be severed from his co-defendant's and that he would proceed to trial first. Id. at 42–43.

Hicks points to our prior holding to suggest that Arrington did not ever meaningfully choose LoTempio as his counsel. He argues that the District Court was thus compelled to disqualify LoTempio as a less drastic alternative to severance.

Hicks's argument that Arrington would have rejected LoTempio had he been properly informed of the pitfalls of not doing so. (Soon to submit a letter from Arrington explaining).

More importantly, Hicks's argument also that he had a "discernible right" to a joint trial with Arrington. Under the facts of this case Hicks should be given time to brief and research this matter; after being given a hearing.

Respectfully Yours,

2/21/23

Aaron Hicks, pro-se