UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════════

UNITED STATES OF AMERICA,

                   v.                                      **DECISION AND ORDER**
                                                               15-CR-33-RJA
AARON HICKS,                                               23-CV-166-RJA

                        Defendant.

═══════════════════════════════════════

Before the Court is Defendant/Petitioner Aaron Hicks' *pro se* motion seeking

recusal of this Court.  (Dkt. No. 1022).  The Government filed a response in opposition

to the motion. (Dkt. No. 1032) and Hicks replied. (Dkt. No. 1033).[1]  For the reasons

which follow, Hicks' motion is **DENIED**.

I.      **Background**

Hicks was initially tried in 2017 on a three-count Superseding Indictment that

charged him with: RICO conspiracy, in violation of 18 U.S.C. § 1962(d); narcotics

conspiracy, in violation of 21 U.S.C. § 846; and possession of firearms in furtherance

of a crime of violence and drug-trafficking crime, in violation of 18 U.S.C. §

924(c)(1)(A)(i). The jury did not reach a verdict on the RICO conspiracy charge, and

otherwise rendered a split verdict, convicting Hicks of narcotics conspiracy but

acquitting him of the firearms possession count. (Dkt. Entry, dated 10/13/2017).

---

[1] Subsequent to the filing of Hicks' reply, he also filed, on November 29, 2023, a Motion
Requesting the Court Make a Decision Granting His Recusal Motion. (Dkt. No. 1043).

Hicks was retried on the RICO conspiracy charge in April and May of 2018 and convicted. (Dkt. Entry, dated 5/2/2018).  On February 27, 2019, Hicks was sentenced to an aggregate term of 360 months imprisonment, consisting of 240 months for his conviction on the RICO conspiracy conviction and 120 months as to his initial conviction for narcotics conspiracy, to run consecutively. (Dkt. No. 473).

Hicks appealed his convictions to the Second Circuit in 2019. (Dkt. No. 475). Following the Second Circuit's affirmance of his convictions (Dkt. No. 638), Hicks filed a Petition for Certiorari with the Supreme Court, which was denied on February 22, 2022. *See United States v. Hicks*, 5 F.4th 270 (2d Cir. 2021), *cert. denied*, 142. S. Ct. at 1157 (2022).

Nearly one year later, on February 21, 2023, Hicks filed a motion to vacate his convictions pursuant to 28 U.S.C. § 2255 (Dkt. No. 964), which he amended with the Court's leave on April 25, 2023. (Dkt. Nos. 1005, 1008; Dkt. Entry, dated 5/26/2023). After filing his Amended § 2255 Motion, Hicks filed a Motion to for Discovery (Dkt. No. 1015); a Motion for Relief Under Rule 60(b) and Rule 59(a) (Dkt. No. 1021); and the instant Motion for Recusal (Dkt. No. 1022*)*.

Thereafter, this Court granted a Government motion for an extension of time to respond to Hicks' Motion for Recusal (Dkt. No. 1022) and ordered that the Government's response deadlines for Hicks' other pending motions (Dkt. Nos. 1015 and 1021)—including his §2255 motion (Dkt. Nos. 964 and 1005)—be held in abeyance until the resolution of this Recusal Motion. (Dkt. No. 1022).

In his motion, which is styled as one brought pursuant to 28 U.S.C. §455, Hicks cites three items to support his contention that this Court ought to be recused. Those items are: (1) a signed—but undated—declaration from Ms. Barbary, a juror at Hicks' 2018 second trial (Dkt. No. 1022, pp. 7-8)[2]; (2) a declaration from Patricia Kessel, a juror at Hicks' first trial in 2017 (Dkt. No. 1022, pp. 16-17);[3] and (3) an article, dated August 2, 2021, from an entity called "Filter," which according to Hicks', "discusses the racial bias of the trial judge that presided over [his] trials." (Dkt. No.

---

[2] With regard to the Barbary declaration—while recognizing that the Court "must accept them as true for the purpose of ruling upon their legal sufficiency, however unfounded they may be in fact," *United States v. IBM Corp*., 475 F.Supp. 1372, 1379 (S.D.N.Y. 1979) (*citing Berger v. United States*, 255 U.S. 22, 36 (1921)), *aff'd In re IBM Corp*., 618 F.2d 923 (2d Cir. 1980)— to the extent that such declaration may arguably be read to suggest otherwise, there simply was no *ex parte* communication between the Court and the juror and certain inferences that may be implied by the imprecise language used therein are unfounded. Indeed, the record unequivocally establishes that on May 2, 2018, the Court received a note from the foreperson of the jury which indicated that Juror Barbary had requested "dismissal" on the ground that she was "uncomfortable making a decision based on her race" and that "she cannot or will not make a decision." (Dkt. No. 520, p. 2). After receiving such note and conferring with counsel (Dkt. No. 520, pp. 2-12), the Court, having closed the courtroom, engaged in an on-the-record conversation with Juror Barbary in the presence of the parties. (Dkt. No. 520, pp. 12-16). Such conversation— which occurred in the Courtroom and not in chambers and which was transcribed—made no mention of Hicks, the evidence against him, or his possible punishment in the event of conviction. *Id*. Such conversation was neither inappropriate nor extrajudicial but was undertaken simply to ensure that the Court discharged its judicial duty of ensuring that the juror could be fair and impartial. *Id*.; *see*, *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008). Having served as a United States District Judge for more than 35 years, the Court has never once had a juror in chambers, nor has the Court ever communicated with any juror in any case without the parties in such case being present.

[3] Though the Kessel declaration appears to be unsigned in the Recusal Motion (Dkt. No. 1022), an identical copy appended to the Motion to Amend does reflect a signature. (Dkt. No. 1005, 16-17).

1022, pp. 2; 13-14). [4]  None of these materials—individually or collectively—warrant recusal of this Court.

## II.  Legal Framework

Hicks brings his motion pursuant to 28 U.S.C. §§ 455(a) and 455(b). (Dkt. No 1022, p. 1).

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Second Circuit has advised that this subsection "governs circumstances that constitute an appearance of partiality, even though actual partiality has not been shown." *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003).

---

[4] According to its website, Filter is publication whose mission is "to advocate through journalism for rational and compassionate approaches to drug use, drug policy and human rights." In her biography, Filter's Deputy Editor indicates that, "[s]he uses meth daily and other drugs sometimes." *See*, https://filtermag.org/about-filter/ (last accessed Jan. 9, 2024).  The article upon which Hicks relies is dated August 2, 2021, and entitled, *Bombshell Paper Names the Federal Judges Guilty of the Most Racist Sentencing*.  The article is written by Rory Fleming, and is available here: https://filtermag.org/federal-judges-racist-sentencing/ (last accessed Jan. 9, 2024). While the article provides a hyperlink to a website which contains a research paper purportedly supporting the assertions contained therein, https://osf.io/preprints/socarxiv/j2gbn, the research paper itself contains the following disclaimer: "**Note: A previous version of this work included estimates on individually identified judges. Thanks to helpful feedback, *we no longer place enough credence in judge-specific estimates to make sufficiently confident statements on any individual judge. We encourage others not to rely upon results from earlier versions of this work***." *Id*. p. 1 (emphasis supplied). Thus, while the writer of the article mentions the Court by name, the research study he relied upon as the basis for his article did not and specifically recognized that such judge-specific information is unreliable.

The judge must determine "whether an objective, disinterested observer, fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal." *In re Basciano*, 542 F.3d 950, 956 (2d Cir. 2008) (alterations and internal quotation marks omitted); *see also Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d at 127 (finding that disqualifying partiality is determined "based on what a reasonable person knowing all the facts would conclude").

The reach of § 455(a) "is commonly limited to those circumstances in which the alleged partiality stem[s] from an extrajudicial source." *United States v. Carlton*, 534 F.3d at 100 (alteration in original) (internal quotation marks omitted). In other words, opinions held by judges based upon what they learned in a given case involving the same defendant and the same set of facts are "not ordinarily a basis for recusal," *id.,* and "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Moreover, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. As the Second Circuit has observed:

> [R]ecusal is not warranted where the only challenged conduct consists of judicial rulings, routine trial administration efforts, and ordinary admonishments to counsel and to witnesses, where the conduct occurs during judicial proceedings, and where the judge neither (1) relies upon knowledge acquired outside such proceedings nor (2) displays deep-

> seated and unequivocal antagonism that would render fair judgment impossible.

*S.E.C. v Razmilovic*, 738 F.3d 14, 29–30 (2d Cir. 2013) (alterations and internal quotation marks omitted); *see also Canino v. Barclays Bank, PLC*, No. 94 Civ. 6314(SAS), 1998 WL 7219, at *3 (S.D.N.Y. Jan. 7, 1998) (noting that § 455(a) "does not compel disqualification simply on unfounded innuendo concerning the possible partiality of the presiding judge") (internal quotation marks omitted).

Whereas § 455(a) addresses the "appearance" of bias or prejudice, *United States v. Wedd*, 993 F.3d 104, 114 (2d Cir. 2021) (emphasis added) (quoting *Liteky*, 510 U.S. at 548), § 455(b) "addresses the problem of actual bias by mandating recusal in certain specific circumstances where partiality is presumed." *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000) (emphasis added). Section 455(b)(1) requires recusal "[w]here [the judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).  In enacting 28 U.S.C. §455(b)(1), Congress "entirely duplicated the grounds of recusal set forth in [28 U.S.C.] § 144 ([involving allegations of] "bias or prejudice"). *Liteky v. United States*, 510 U.S. at 548.  The Second Circuit has further observed that because both 28 U.S.C. §§ 144 and 455(b)(1) address the same issue, the statutes are to be construed *in pari materia*. *United States v. Pugliese*, 805 F.2d 1117, 1125 (2d Cir. 1986).

Section 144 provides that a judge should recuse himself when a party has filed a "timely and sufficient affidavit" showing that the judge has "a personal bias or prejudice" against the party or in favor of an adverse party. The statute requires that

another district court judge be assigned to hear the matter if the movant establishes both that the disqualification motion is "timely" and the party's affidavit is legally "sufficient." 28 U.S.C. § 114. If it can be established that the affidavits submitted in support of a recusal motion are both "timely and sufficient," then the Court "must accept them as true for the purpose of ruling upon their legal sufficiency, however unfounded they may be in fact." *United States v. IBM Corp.*, 475 F.Supp. at 1379 (citing *Berger v. United States*, 255 U.S. at 36).

Nevertheless, a recusal motion is a serious matter, "strik[ing] at the integrity of the judicial process." *In re IBM Corp.*, 618 F.2d at 927. Recusal motions should not be used as "strategic devices to judge shop." *Lamborn v. Dittmer*, 726 F.Supp. 510, 515 (S.D.N.Y.1989); *see Apple v. Jewish Hosp. and Medical Center*, 829 F.2d 326, 334 (2d Cir.1987). The judge to whom a recusal motion is addressed is presumed to be impartial, *United States v. IBM Corp.*, 475 F.Supp. at 1379; *Wolfson v. Palmieri*, 396 F.2d 121, 126 (2d Cir. 1968)(per curiam), and there is a substantial burden on the moving party to show that the judge is not impartial. *Lamborn v. Dittmer*, 726 F.Supp. at 514; *United States v. IBM Corp.,* 475 F.Supp. at 1379. It is vital to the integrity of the system of justice that a judge not recuse himself on unsupported, irrational or highly tenuous speculation, *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987), and he "is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988).

Consequently, where, as here, an individual submits affidavits and other material in support of a motion to recuse, such material are subject to certain procedural requirements, and "strictly scrutinized" for both timeliness and form. *Lamborn v. Dittmer*, 726 F. Supp. at 515; *see In re IBM Corp.*, 618 F.2d at 932 ("While section 455 has no such [explicit timeliness] requirement, we have without explication previously assumed that timeliness was also requisite under the amended statute. We see no reason why there should not be a timeliness requirement here even without an explicit provision." (citations omitted)); *see also United States v. Nelson*, CR–94–823, 2010 WL 2629742, at *2 (E.D.N.Y. June 28, 2010) ("[A] judge who is presented with a . . . motion for recusal . . . must first determine whether the procedural requirements have been met . . ..").

"The affidavit must be 'sufficient,' to provide 'fair support' for the charge of partiality." *Apple*, 829 F.2d at 333 (quoting *Wolfson v. Palmieri*, 396 F.2d at 124; *see also Hoatson v. N.Y. Archdiocese*, No. 05 Civ. 10467(PAC), 2006 WL 3500633, at *2 (S.D.N.Y. Dec. 1, 2006) ("[A]ffidavits in support of the motions pursuant to §§ 144 and 455(b)(1) require a factual demonstration of bias, not simply the appearance of impropriety."). If the affidavit sets forth a legally sufficient basis for recusal, another judge must be assigned to resolve the motion. *See* 28 U.S.C. § 144. But no such forbearance is required where the supporting affidavit is insufficient on its face. *See Role v. Eureka Lodge No. 434*, 402 F.3d 314, 318 (2d Cir. 2005) (*per curiam*). It is within the court's discretion to determine whether the affidavit is legally sufficient. *See Apple*, 829 F.2d at 333.

### III.    Legal Analysis

Here, the materials submitted in support of Hicks' recusal request—*i.e.*, two juror declarations and an online article—are legally insufficient to warrant recusal.  Aside from being untimely, all are facially insufficient to establish the sort of bias or prejudice necessary to warrant recusal.

In support of his recusal request, Hicks submitted a declaration from Charlene A. Barbary who was a juror at Hicks' 2018 second trial. (Dkt. No. 1022, pp. 7-8).  As such, she was part of the jury that convicted Hicks of RICO conspiracy. (Docket Entry 432, dated 5/2/2018).  According to the declaration, which purports to have been made "[p]ursuant to 28 U.S.C. § 1746"  (Dkt. No. 1022, p. 7), Juror Barbary alleges that she "did not feel that the government had proved their case beyond a reasonable doubt." (Dkt. No. 1022, p.8, ¶4). After arriving at that conclusion, Juror Barbary avers: "The judge had me brought into his chambers alone and began to discuss things with me. I did not like going back there by myself. What I found peculiar and what made me uncomfortable was his telling me that he had explained to Mr. Hicks that if he didn't take a plea and went to trial he was going to lose and then he would sentence him to the max, which I believe was 25–30 years to life." (Dkt. No. 1022, p.8, ¶ 6). Following this alleged interaction, Ms. Barbary notes that she "wasn't sure what [she] should do considering [the judge] sits in a position of authority." (Dkt. No. 1022, p.8, ¶ 7). Nevertheless, she claims to have "changed [her] vote to guilty because of the immense pressure [she] felt from both other members of the jury as well as the judge after he brought [her] into his chambers alone." (Dkt.

No. 1022, p.8, ¶ 8).[5] Importantly, Hicks appended the Barbary declaration to his

Motion to Amend, which he filed on April 25, 2023—nearly four months before he

filed the Recusal Motion. (Dkt. No. 1005, pp. 14–15).

The Barbary declaration is deficient under federal law. Section 1746 of Title

28 of the United States Code expressly provides that an "unsworn declaration" may

have the same effect as a "sworn declaration" provided it is made "in writing of such

person which is subscribed by him, as true under penalty of perjury, **and dated**." *Id*.

(emphasis added). Section 455 also requires recusal motions (and their supporting

contents) be timely filed. *See In re IBM Corp.*, 618 F.2d at 932. The Barbary

declaration is deficient—and thus insufficient—in both regards. Accordingly, such

undated declaration cannot serve as a basis for the Court's recusal.

As a panel of the Second Circuit explained in *Reynolds v. Sealift, Inc.*, 311 F.

App'x 422, 425 (2d Cir. 2009), unsworn affidavits "constitute evidence if [they] [are]

in writing, **dated**, and declared true under penalty of perjury." (emphasis added)

(unpublished).  For that reason, the *Reynolds* panel concluded that, "[t]he district

court acted within its discretion in excluding . . . [t]hree . . . affidavits [that] lacked a

precise date." *Id*. Various courts of appeals have broadly held that unsworn

declarations made under § 1746 must include a precise date of execution. *See*

*Flovac, Inc. v. Airvac, Inc.,* 817 F.3d 849, 854 n.2 (1st Cir. 2016) (concluding that an

---

[5] As explained previously, *see*, FN 2, the Court never brought Juror Barbary into
Chambers or spoke with her privately. Rather, in response to a note from the jury, the
Court did speak with Juror Barbary, on-the-record, in a closed courtroom, with the
parties present. (Dkt. No. 520, pp. 12-16).

undated declaration executed pursuant to § 1746 was "intrinsically deficient" and failed to "comport with statutory requirements"); *Brown v. Powell*, 187 F.3d 628, \*2 (4th Cir. 1999) (unpublished table decision) ("Section 1746 requires a declaration to be subscribed under penalty of perjury and dated."); *Puente v. Ridge*, 324 F. App'x 423, 430 (5th Cir. 2009) (unpublished) (concluding that an "undated, unnotarized statement" failed to comply with § 1746); *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1995) ("Although Bonds' additional affidavits were subscribed under penalty of perjury, they were undated. Given the explicit language of the statute, they must therefore be excluded from consideration." (emphasis added)); *Russell v. Cook Cnty.*, 661 F. App'x 443, 445 (7th Cir. 2016) (unpublished) (noting that declarations made under 28 U.S.C. § 1746 must show "exactly when the document was signed"); *McMiller v. Corrections Corp. of Am.*, 695 F. App'x 344, 348 (10th Cir. 2017) (unpublished) ("Perhaps the printed name represents [the appellant's] signature, but without a date, the declaration does not satisfy 28 U.S.C. § 1746."); *Roy v. Ivy*, 53 F.4th 1338, 1349 n.7 (11th Cir. 2022) ("Inmate Mason's unsworn statement does not satisfy § 1746 for the additional reason that it was not dated.").

In view of the foregoing, district courts within the Second Circuit have routinely exercised their discretion against admitting undated, unsworn declarations into evidence. *See, e.g., Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 209 (E.D.N.Y. 2021) (declining to accept plaintiff's undated, unsworn declaration); *Williams v. Keisler*, No. 07 CV 503 (ARR), 2007 WL 9723294, at \*4 (E.D.N.Y. Oct. 30, 2007) ("The document is not actually an affidavit, since it is unsworn, and is not

admissible as an unsworn declaration because it is undated."); *Perkins v. Teele*, No. 3:15-CV-01137 (JCH), 2018 WL 3541864, at *2 n.3 (D. Conn. July 23, 2018) (disregarding an undated, unsworn declaration); *but see BMS Entm't/Heat Music LLC v. Bridges*, No. 04 Civ. 2584(PKC), 2005 WL 2482493, at *2 n. 1 (S.D.N.Y. Oct. 7. 2005) (accepting an undated unsworn declaration under § 1746).

As this Court concludes that the undated Barbary declaration is deficient under § 1746, and therefore, insufficient, this Court will disregard its contents. *Cf. United States v. Johnpoll*, 748 F.Supp. 86, 89 (S.D.N.Y. 1990) ("In considering Johnpoll's petition [for recusal], I will disregard all allegations not certified by counsel [pursuant to 28 U.S.C. § 144]."); *Hoffenberg*, 333 F.Supp.2d 166, 177 n.5 (S.D.N.Y. 2004) (noting that the "procedural prerequisites" attached to recusal affidavits "are strictly observed, and deviation from the statutory requirements provides sufficient grounds for denial of a motion for recusal"); *see generally Berger*, 255 U.S. at 32 (noting that it "is imposed upon the judge the duty of examining the affidavit to determine whether or not it is the affidavit specified and required by the statute and to determine its legal sufficiency").

Aside from being facially insufficient, the Barbary declaration is—together with the recusal motion more generally—also untimely.  *See, Lamborn*, 726 F.Supp. at 514. As noted above, recusal motions made pursuant to § 455 must be timely filed. *See In re IBM Corp.*, 618 F.2d at 932 (concluding that § 455 contains an implicit timeliness requirement). To that end, "recusal motions are to be made 'at the **earliest possible moment** after obtaining knowledge of facts demonstrating the

basis for such a claim.'" *Gil Enters., Inc. v. Delvy*, 79 F.3d 241, 247 (2d Cir. 1996)

(emphasis added) (quoting *Apple*, 829 F.2d at 333); *see LoCascio v. United States*,

473 F.3d 493, 497 (2d Cir. 2007). As the Second Circuit has explained:

> it is important to present recusal applications promptly for at least two reasons. First, a prompt application affords the district judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate for the judge to take. Second, a prompt application avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters.

*In re IBM Corp.*, 45 F.3d at 643.  This rule is so strictly enforced that "[r]ecusal

motions are often denied on the basis of untimeliness" even "when there has been

only a short delay." *Lamborn*, 726 F.Supp. at 515. That said, "the actual time elapsed

between the events giving rise to the charge of bias or prejudice and the making of

the motion is not necessarily dispositive." *Apple*, 829 F.2d at 333–34. Rather, courts

examine several factors, including whether: "(1) the movant has participated in a

substantial manner in trial or pre-trial proceedings; (2) granting the motion would

represent a waste of judicial resources; (3) the motion was made after the entry of

judgment; and (4) the movant can demonstrate good cause for delay." *Id*. at 334

(internal citations omitted).

In view of the foregoing, the Court further concludes that Hicks' Recusal

Motion is untimely.  Specifically, Hicks has substantially participated in his post-

conviction proceedings, filing multiple motions after submitting his initial § 2255

motion on February 21, 2023. As part of those motions, Hicks filed a Motion to

Amend on April 25, 2023, wherein he included the undated Barbary declaration and

the February 9th Kessel declaration. (Dkt. No. 1005). Hicks's inclusion of these juror

declarations minimally establishes that the "earliest possible moment" in which he

could have moved for recusal was April 25, 2023. *Gil. Enters., Inc.*, 79 F.3d at 247.

As his recusal motion was not filed until August, at least four months passed from

the time Hicks learned of Barbary's allegations and the time he filed his Recusal

Motion. With regard to the declaration from Juror Kessel, the delay was even longer,

as her declaration was dated February 9, 2023, over six months before the recusal

motion was filed.

Despite the Second Circuit's requirements, Hicks waited nearly four months

with respect to the Barbary declaration and over six months with respect to the

Kessel declaration to move for the Court's recusal, offering no "good cause" for the

delay. *Apple*, 829 F.2d at 334. Multiple district courts have denied comparably

untimely recusal motions. *See United States v. Durrani*, 835 F.2d 410 (2d Cir. 1987)

(affirming district court's rejection of recusal motion as untimely because motion was

filed four months after events of which movant complained); *Universal City Studios,*

*Inc. v. Reimerdes*, 104 F.Supp.2d 334, 350 (S.D.N.Y. 2000) (recusal motion brought

after four-month delay deemed untimely). Accordingly, this Court concludes that

Hicks' motion is also untimely.  With respect to each declaration, Hicks failed to meet

his obligation of timely acting upon such information "at the earliest possible moment

after obtaining knowledge of facts demonstrating the basis" for his claim.  *Gil*

*Enters., Inc.*, 79 F.3d at 247.  Accordingly, the Court will not consider them.

Finally, even if the Court were to consider the juror declarations, neither establish Hicks' entitlement to recusal as neither establish any personal bias by the Court.  At best, both juror declarations merely suggest that there may have been some bias exhibited by other jurors.  The declarations cannot fairly be read even to suggest bias or prejudice by the Court. Absent some support in Hicks' materials to suggest that the Court exhibited bias and prejudice: (1) that was "personal," and not judicial; (2) that stemmed from an extra judicial source such that they resulted in an opinion on the merits on some basis other than what the judge learned from participation in the case; or (3) to such a high degree of favoritism or antagonism as to make fair judgment impossible, *see, Liteky v. United States*, 510 U.S. at 555— then this Court must conclude that the affidavits fail to establish a legitimate basis for recusal.  *See generally*, *Davis v. Board of Sch. Comm'rs*., 517 F.2d 1044, 1051 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *see also*, *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998) ("A presiding judge is not…required to recuse himself simply because of unsupported, irrational or highly tenuous speculation").

Accordingly, even if true, the allegations set forth in the juror declarations do not pose a basis for an "objective observer" to question the Court's "impartiality." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 861, 108 S. Ct. 2194, 2203, 100 L. Ed. 2d 855 (1988); *see also* 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which ***his*** impartiality might reasonably be questioned." (emphasis added)). That

they may suggest bias or prejudice amongst other members of the jury provides no

basis for recusal as they do not implicate any provision in § 455(b).  That is because

it is axiomatic that whatever bias a juror might have does not automatically extend to

the judge. *See Smulley v. Safeco Ins. Co. of Illinois*, No. 21-2124-CV, 2022 WL

16753118, at *2 (2d Cir. Nov. 8, 2022), *cert. denied*, 143 S. Ct. 2463 (2023).

The last cited basis for the Court's recusal—the August 2021 Article

discussing purported sentencing disparities in federal court—likewise fails to support

Hicks' recusal bid.  Again, Hicks' use of the article is untimely, as the exhibit

evidencing the article shows that Hicks received it on February 24, 2022, but failed

to file it until August 14, 2023. As previously noted, recusal motions are strictly

scrutinized for timeliness. *See Lamborn*, 726 F. Supp. at 514. Hicks's reliance on the

August 2021 Article cannot satisfy § 455's "timeliness" requirement. *See In re IBM*

*Corp.*, 618 F.2d at 932 (announcing that § 455 contains an implicit timeliness

requirement). More specifically, the exhibit of the article Hicks attached to his

Recusal Motion shows that he received it on February 24, 2022—nearly a full year

before he filed his § 2255 motion and 536 days before he filed his Recusal Motion.

Clearly, Hicks did not file his Recusal Motion "at the earliest possible moment after

obtaining knowledge of facts demonstrating the basis" for his claim. *Gil Enters., Inc.*,

79 F.3d at 247.

Moreover, Hicks wholly waived any reliance on the article by failing to develop

any argument regarding its relevance to his recusal motion. While *pro se* filings are

subject to liberal standards of construction, those standards do not authorize a

wholesale departure from the party-presentation principle that otherwise "assigns to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, --- U.S. ----, 140 S.Ct. 1575, 1579 (2020). Accordingly, the Second Circuit has cautioned that courts "need not act . . . advocate[s] for *pro se* litigants," *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1997), and "cannot read into *pro se* submissions . . . arguments that the submissions themselves do not 'suggest,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis and quotation omitted); *see Terry v. Inc. Village of Patchogue*, 826 F.3d 631, 632–33 (2d Cir. 2016) ("Although we accord filings from *pro se* litigants a high degree of solicitude, even a litigant representing himself is obliged to set out 'identifiable arguments' in his principal brief." (*quoting Donofrio v. City of New York*, 563 F. App'x. 92, 93 (2d Cir. 2014) (summary order))).

Here, Hicks has not put forth any "identifiable arguments" related to the August 2021 Article. *Terry*, 826 F.3d at 632–33. Hicks alludes to the article only in the factual background section of his brief—and even then, he refers to it only once. (Dkt. No. 1022, p. 2 ["Lastly, the Defendant recently received an article that discusses the racial bias of the trial judge that presided over the Defendant's trial."]). Beyond this bare reference, he fails to offer any argument as to why the article requires the Court's recusal. *See id*. As such, the Court finds that Hicks has waived any argument he could have made in support of the August 2021 Article. *See Wilkins v. United States*, 598 U.S. 152, 157 (2023) ("For purposes of efficiency and fairness, our legal system is replete with rules like forfeiture, which require parties to

raise arguments themselves and to do so at certain times." (internal quotations omitted)).

Finally, even assuming *arguendo* that Hicks' fleeting reference to the article could suggest an argument bearing on its relevance to his recusal effort, that argument must be rejected. The article's vague references to purported sentencing disparities does not create a cognizable claim for recusal. Specifically, any argument related to the August 2021 Article necessarily fails because the article does not concern activity arising from an extrajudicial source that would cause an objective observer to question the Court's impartiality, *see*, § 455(a), and no mandatory provision of recusal contained in § 455(b) is applicable.  Section 455(a)'s requirement "that a judge recuse himself whenever his 'impartiality might reasonably be questioned,' is commonly limited to those circumstances in which the alleged partiality 'stem[s] from an extrajudicial source.'" *United States v. Carlton*, 534 F.3d at 100 (first quoting § 455(a); and then quoting *Liteky*, 510 U.S. at 544). The "extrajudicial source" doctrine refers to activities arising outside of the "judicial dut[y]." *Carlton*, 534 F.3d at 101. Plainly, a judge's participation in a sentencing hearing is not "extrajudicial" but instead falls squarely within the ambit of the judicial "dut[y]." *Id*. Indeed, Congress expressly conferred the power to sentence criminal defendants to the judiciary. See 18 U.S.C. § 3553; *United States v. Bernstein*, 533 F.2d 775, 785 (2d Cir. 1976) (noting that information gleaned from a sentencing hearing regarding defendants did not come from an "extrajudicial source").

### III.    CONCLUSION

For the foregoing reasons, Hicks' Motion for Recusal (Dkt. No. 1022) is **DENIED** in its entirety, and Hicks' Motion for a Decision (Dkt. No. 1043) is **DENIED AS MOOT**.  The **Government** is hereby **directed to file its responses to Hicks' remaining outstanding motions,** including his: (1) Motion pursuant to 28 U.S.C. §2255 motion (Dkt. Nos. 964 and 1005); (2) Motion to Allow Discovery of Jury Selection Transcripts (Dkt. No. 1015); and (3) Motion for Relief Under 60(b) and 59(a) (Dkt. No. 1021), **on or before February 29, 2024**.

**IT IS SO ORDERED.**

_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  January 16, 2024
         Buffalo, New York