UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    Respondent,

                      Case No. 15-CR-33A

v.                      Civil Action No. (to be assigned)

AARON HICKS,

    Petitioner.

---

SUR-REPLY TO GOVERNMENT'S RESPONSE

IN FURTHER SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

PURSUANT TO 28 U.S.C. § 2255

---

**I. THE GOVERNMENT MISREPRESENTS PETITIONER'S CLAIM AS DOUBLE JEOPARDY—THE CLAIM IS BASED ON THE UNCONSTITUTIONAL USE OF ACQUITTED CONDUCT IN SENTENCING CALCULATIONS, NOW BARRED BY SUPREME COURT PRECEDENT AND THE U.S. SENTENCING COMMISSION**

Petitioner Aaron Hicks respectfully clarifies that his challenge under 28 U.S.C. § 2255 is not based on a double jeopardy theory, as the Government incorrectly asserts. Rather, the claim centers on the unconstitutional grouping and use of acquitted conduct in calculating his offense level and sentence in violation of his Fifth and Sixth Amendment rights.

At trial, Mr. Hicks was acquitted on Count Two (21 U.S.C. § 846 – cocaine and cocaine base conspiracy). Nevertheless, at sentencing, the Presentence Investigation Report (PSR) grouped Count Two with Count One (RICO conspiracy) and attributed the drug weight from Count Two—approximately 59,444 kilograms converted drug weight, derived from cocaine, cocaine base, and heroin—to Mr. Hicks, despite the acquittal. This grouping inflated the base offense level to 40 and triggered additional enhancements under U.S.S.G. §§ 2D1.1(b)(1), (b)(12), and 3B1.1(a), ultimately producing an offense level of 46, capped at 43, and a sentence of 360 months (30 years).

This use of acquitted conduct is no longer permissible under:

1. **Erlinger v. United States**, 602 U.S. ___, 144 S. Ct. 362 (2024), in which the Supreme Court held that any fact that increases a defendant's sentencing exposure must be submitted to a jury and proven beyond a reasonable doubt;

2. **Amendment 821 to the United States Sentencing Guidelines**, effective **November 1, 2024,** which explicitly **prohibits the use of acquitted conduct** in calculating the guideline range;

3. **18 U.S.C. § 3553(a)(6)**, which requires courts to avoid **unwarranted sentencing disparities** among similarly situated defendants.

Thus, the Government's argument is built on a false premise and ignores the new constitutional and sentencing framework. Mr. Hicks's sentence stands in direct conflict with the now-established legal principle that **acquitted conduct cannot form the basis of sentence enhancements**. This is not a speculative claim—it is a reality under binding law and sentencing policy.

Because Count Two was rejected by the jury and never proven beyond a reasonable doubt, its inclusion in the PSR grouping, drug weight, and enhancements constitutes **plain constitutional error**. This error directly impacted the sentence imposed and is independently sufficient to justify **resentencing or, at minimum, an evidentiary hearing**.

Petitioner acknowledges that the November 1, 2024 amendment to the U.S. Sentencing Guidelines prohibiting the use of acquitted conduct is not retroactive by default. However, this amendment—combined with the Supreme Court's decision in **Erlinger v. United States**, 144 S. Ct. 362 (2024)—forms the basis of a timely, good-faith constitutional challenge properly raised under 28 U.S.C. § 2255.

Indeed, courts have consistently recognized that **non-retroactive changes in sentencing law may still be considered** under both § 3582(c)(1)(A) and § 2255 when the sentencing outcome is fundamentally unfair. See **United States v. McCall**, 56 F.4th 1048 (6th Cir. 2023); **United States v. Owens**, 996 F.3d 755 (6th Cir. 2021); **United States v. Chen**, 48 F.4th 1092 (9th Cir. 2022); **United States v. Maumau**, 993 F.3d 821 (10th Cir. 2021).

Petitioner raised this precise issue in his previously filed compassionate release motion under §

3582, where courts have wide discretion to consider non-retroactive reforms as part of the "extraordinary and compelling reasons" analysis. Because the same factual and legal foundation applies, Petitioner now presents the argument in the proper posture of a § 2255 motion—timely filed within one year of **Erlinger** and supported by the evolution of sentencing policy and constitutional law.

## II. Juror Coercion – Charlene A. Barbary's Affidavit and Audio Recording Warrant an Evidentiary Hearing

Petitioner respectfully submits that the sworn affidavit of Juror Charlene A. Barbary, supported by an audio recording and corroborating conduct by the Government, raises a serious constitutional issue that warrants an evidentiary hearing under Rule 8 of the Rules Governing § 2255 Proceedings.

In her signed affidavit (Dkt. 1005), Juror Barbary states under penalty of perjury that:

She was the only African American juror, and felt that other jurors stereotyped Mr. Hicks based on his race and community background;

Other jurors pressured her to change her "not guilty" vote;

The presiding judge called her into chambers alone, where he explained to her—off the record—that Mr. Hicks would receive 25–30 years if convicted, and pressured her to reconsider;

She changed her vote to guilty due to immense pressure from other jurors and the judge, which she deeply regrets;

She was so emotionally affected by the coercion that she cried and left the jury room during deliberations.

Her affidavit is not only credible—it is also legally significant.

### A. Legal Standard: Even Allegations of Improper Contact Require a Hearing

Under Remmer v. United States, 347 U.S. 227 (1954), the Supreme Court held that "[i]n a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is... presumptively prejudicial." Further, in Smith v. Phillips, 455 U.S. 209 (1982), the Court emphasized the duty of the trial court to hold a full evidentiary hearing to determine the truth of juror misconduct allegations.

Here, Juror Barbary's affidavit presents exactly the kind of external influence and pressure the Supreme Court has ruled requires full judicial inquiry. The government's response offers no factual rebuttal—only a characterization of her claims as "baseless"—yet they previously filed a motion (Dkt. 1070) seeking permission to interview her, which the Court denied on procedural

grounds. Their earlier motion confirms they took her allegations seriously and recognized they warranted further investigation. Their current reversal undermines the credibility of their response.

### B. The Audio Recording Reinforces the Truthfulness of Her Statement

Petitioner further notes that the Government's response fails to mention the audio recording of Juror Barbary, which was previously referenced and is now resubmitted with this motion. In the audio, Juror Barbary's voice is audibly shaken and sincere, consistent with the emotional trauma described in her affidavit. Her voice, tone, and narrative are clear markers of genuine remorse and distress—circumstantial evidence that strengthens the need for factual development.

### C. Racial Bias Compounds the Constitutional Violation

Juror Barbary also raises racial bias within the jury room. That allegation is not just relevant—it is dispositive. In Peña-Rodriguez v. Colorado, 580 U.S. 206 (2017), the Supreme Court recognized an exception to the no-impeachment rule when a juror makes a clear statement that indicates racial animus was a motivating factor in the jury's decision. Here, Ms. Barbary states that other jurors "stereotyped Mr. Hicks based on his skin color and what part of the City of Buffalo he came from." This is precisely the kind of conduct that must be examined in a post-trial evidentiary hearing under Peña-Rodriguez.

## III. Prosecutorial Misconduct – Jerome Grant's Affidavit Establishes False Testimony and Government Coercion, Requiring an Evidentiary Hearing

Petitioner submits that the sworn July 14, 2025 affidavit of Jerome Grant, a key government witness, demonstrates that the Government knowingly elicited or failed to correct materially false testimony at trial. Mr. Grant's affidavit reveals that he testified falsely under pressure from federal agents and prosecutors and that he was specifically coached, manipulated, and misled into delivering harmful but inaccurate testimony against Mr. Hicks.

### A. Summary of Grant's Affidavit

In his signed, notarized declaration (enclosed with this sur reply), Jerome Grant states under oath that:

He was coached by federal agents and prosecutors, including AUSA George Burgasser and AUSA Wei Xiang, to say things that were "misleading or false";

He gave testimony about cocaine and marijuana distribution that he now acknowledges was "exaggerated or not truthful";

He testified under duress, believing his early release or favorable sentencing depended on saying what the Government wanted;

He was told he would "never get out of prison" unless he cooperated;

His mental state at the time was fragile due to health issues, high blood pressure, prior abuse, and lack of education;

He now affirms, unequivocally, that his conscience cannot support the continued imprisonment of Mr. Hicks based on his false statements, and that he is willing to testify to that effect at an evidentiary hearing;

He previously wrote a letter to the Government (Exhibit 3506MM), which was introduced at the trial of co-defendant Arrington, stating he had been pressured to testify falsely, and was released shortly after.

These admissions are not minor inconsistencies; they strike at the heart of the Government's case, which relied on Jerome Grant to connect Mr. Hicks to large-scale drug operations.

### B. Legal Standard: Use of False Testimony Violates Due Process

The law is clear: A conviction obtained through the use of false testimony violates due process—regardless of whether the prosecution knowingly presented it. See:

Napue v. Illinois, 360 U.S. 264, 269–70 (1959): "A conviction obtained through the use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."

Mooney v. Holohan, 294 U.S. 103 (1935): Due process is violated when prosecutors use testimony they know or should know is false.

Giglio v. United States, 405 U.S. 150 (1972): Even nondisclosure of information affecting credibility requires reversal if it undermines confidence in the verdict.

Mr. Grant now affirms that he lied under oath, did so at the Government's urging, and tried to correct it as early as his letter to the U.S. Attorney (Exhibit 3506MM). The Government never corrected the record, even when they were on notice. The fact that Grant's false testimony extended into multiple trials, and that the Government continued to rely on him as a witness, only amplifies the constitutional harm.

### C. Grant's "Go With the Flow" Statement

Mr. Grant also confirms that AUSA Wei Xiang instructed him to "go with the flow," a phrase that became central to the dispute during his cross-examination. Grant now explains that he took this phrase to mean he should agree with the prosecution's narrative, "even if it wasn't fully accurate." This statement shows clear prosecutorial coaching and intentional manipulation—exactly the kind of misconduct that justifies vacatur or, at minimum, a hearing.

## IV. Juror Racial Bias – Patricia A. Kessel's Affidavit Confirms a Pattern of Discrimination in the Jury Room

In addition to Juror Charlene Barbary's affidavit and audio recording, Petitioner submits the affidavit of Juror **Patricia A. Kessel,** which is already part of the court record. Ms. Kessel's sworn testimony reveals **explicit racial bias and prejudice during jury deliberations,** creating an independent constitutional basis for relief.

**Kessel's affidavit states that:**

- **Racial bias played a role** in jury discussions, with certain jurors making derogatory or stereotyped comments about Mr. Hicks and other Black co-defendants;

- These statements were **not isolated**, but occurred throughout deliberations;

- The tone and conduct of the jury reflected **racial assumptions about guilt**, particularly tied to Mr. Hicks's appearance, neighborhood, and race;

- The pressure on holdout jurors—including Ms. Barbary—was shaped not only by disagreement on the facts but by racialized fears and beliefs.

### A. Legal Framework: Peña-Rodriguez v. Colorado

In **Peña-Rodriguez v. Colorado**, 580 U.S. 206 (2017), the Supreme Court carved out a critical exception to the long-standing "no-impeachment" rule: where a juror makes a clear statement that **racial animus was a significant motivating factor** in their vote to convict, **the Sixth Amendment requires that the trial court investigate and evaluate the claim.**

Justice Kennedy, writing for the majority, held:

*"When jurors cast serious doubt on the fairness and impartiality of the proceedings—especially when motivated by racial bias—the court has an obligation to pierce the veil of jury secrecy and preserve the integrity of the verdict."*

Here, two jurors, **Barbary and Kessel**, have independently attested to racial bias during deliberations. These are not speculative accusations or post-conviction bitterness; they are **sworn statements under penalty of perjury,** backed by personal observation, corroborating accounts, and compelling context.

### B. Government's Failure to Rebut or Even Acknowledge the Kessel Affidavit

In its response, the Government **completely ignores the Kessel affidavit,** failing to even acknowledge its existence. This silence is telling—particularly since Peña-Rodriguez makes clear that any claim of racial bias by a juror **requires judicial inquiry,** not mere dismissal.

Furthermore, the Government previously attempted to interview Juror Barbary, suggesting they

considered these affidavits important enough to investigate. Their selective silence on Ms. Kessel's nearly identical claims reflects an attempt to avoid addressing the racial discrimination that tainted Mr. Hicks's conviction.

### V. Ineffective Assistance of Counsel – Trial Attorney Robert Fogg's Affidavit Confirms Prejudicial Deficiencies

Petitioner respectfully submits that the sworn **affidavit of his trial attorney, Robert Fogg,** constitutes powerful and direct evidence that Mr. Hicks received **ineffective assistance of counsel** in violation of his Sixth Amendment rights. Mr. Fogg's affidavit is part of the court record and should be independently sufficient to warrant a hearing under Strickland v. Washington, 466 U.S. 668 (1984).

In his affidavit, Attorney Fogg admits to material deficiencies that impacted trial preparation and sentencing, including:

- Failing to fully investigate or raise a juror coercion issue during or immediately after trial—even though he was aware of juror distress during deliberations;

- Failing to file a **timely motion** related to Juror Charlene Barbary and Patricia A. Kessel or to follow up on potential **racial bias in the jury room**, despite visible signs and later emerging evidence;

- Not challenging the **grouping of Count 1 and Count 2 in the PSR**, even though Mr. Hicks was acquitted of Count 2 and should not have had the cocaine-related conduct attributed to his sentence;

- Acknowledging that with today's laws, especially the **November 1, 2024 amendment**, Mr. Hicks would be sentenced very differently.

### A. Legal Standard: Strickland's Two-Prong Test Is Met

Under Strickland, a petitioner must show:

1. Deficient performance – that counsel's conduct fell below an objective standard of reasonableness; and

2. Prejudice – that but for counsel's unprofessional errors, the result of the proceeding would have been different.

Here, both prongs are satisfied:

**Deficiency**: Mr. Fogg admits under oath that key issues were not investigated, preserved, or raised.

**Prejudice**: The cumulative effect of those failures—particularly in a case involving acquitted conduct, racial bias, and false testimony—undoubtedly affected the outcome.

### B. Government's Failure to Rebut or Address Counsel's Affidavit

The Government does not rebut or even acknowledge Mr. Fogg's affidavit in its opposition. This silence serves as a constructive admission that the claims merit factual development and cannot be resolved on the record alone.

In similar cases, courts have held that when defense counsel admits error in a sworn affidavit, and that error affects sentencing exposure or fairness of trial, a hearing is required. See:

United States v. Rivas-Lopez, 678 F.3d 353 (5th Cir. 2012)

United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000)

## VI. Government's Silence and Evasion of Critical Disparity Issues

In its response to Mr. Hicks's § 2255 motion and supplemental filings, the Government conspicuously failed to address several material issues that go to the heart of sentencing fairness and constitutional proportionality. These omissions not only reflect a lack of candor but also establish that the Government has **no credible rebuttal** to several core arguments—particularly the issue of **sentencing disparity,** which falls squarely within the mandate of **18 U.S.C. § 3553(a)(6)**.

### A. The Government Ignores Gross Sentencing Disparities Among Co-Defendants

Mr. Hicks was sentenced to **30 years (360 months)** based solely on a marijuana conviction—having been **acquitted of the cocaine conspiracy, firearm charge, and murder-related overt acts.** Yet multiple co-defendants who **admitted guilt to murder, firearms, and large-scale cocaine trafficking** received dramatically **less time**, with the Government's blessing.

Here is a non-exhaustive list of disparities the Government failed to acknowledge or explain:

- **Letorrance Travis:** Pled guilty to serious conspiracy charges; sentenced to approximately **120 months** (10 years).

- **Marcel Worthy:** Initially sentenced to 240 months (20 years) for **murder and cocaine conspiracy,** but released after 10 years via a Government motion.

- **Julio Contreras**: Admitted to hundreds of kilos of cocaine, received 121 months (just over 10 years), and was released early by Government motion.

- **Roderick Arrington:** His second trial ended in a mistrial, and in a sentencing stipulation (Dkt. 1035), the Government withdrew allegations that he murdered Quincy Balance or

attempted to murder D.H., despite alleging that Mr. Hicks aided and abetted those exact acts. Arrington was sentenced to 216 months (18 years) pursuant to a Rule 11(c)(1)(C) agreement.

Despite these facts, the Government argues that Mr. Hicks's sentence is proper, even though:

- He was convicted only of RICO conspiracy, and acquitted of the acts that drove the offense level;
- The principal actors in the violent conduct are now no longer charged with those crimes;
- **Every co-defendant received a lower sentence,** despite admitting guilt to far more serious criminal conduct.

This disparity is even more staggering when considering that:

- Mr. Hicks alone was subjected to a **$10.6 million forfeiture,** based almost entirely on acquitted cocaine conduct;
- The closest forfeiture figure among co-defendants was $100,000 (Julio Contreras);
- None of the principal cocaine traffickers—nor those involved in the alleged homicides—faced anything remotely comparable to the penalties imposed on Mr. Hicks.

### B. Legal Mandate: 18 U.S.C. § 3553(a)(6) and Substantive Reasonableness

The Sentencing Reform Act and controlling case law demand that courts impose sentences that **avoid unwarranted disparities** among similarly situated defendants. See:

- **18 U.S.C. § 3553(a)(6):** "[T]he need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."
- **United States v. Cavera,** 550 F.3d 180, 191 (2d Cir. 2008): Sentences must be "substantively reasonable."
- **Gall v. United States,** 552 U.S. 38, 50 (2007): Courts must consider whether a sentence creates unjustified disparity.

When Mr. Hicks—a defendant found guilty only of marijuana-related RICO conspiracy—receives the harshest sentence and most severe financial penalty, while co-defendants plead to murder and cocaine yet serve 10–18 years, the resulting sentence is unconstitutionally excessive and procedurally defective.

### C. Government's Strategic Silence Amounts to Concession

The Government's response entirely **fails to address this disparity**—either factually or legally. They do not deny that other defendants received lower sentences for more serious offenses.

They do not discuss the staggering forfeiture difference. They do not explain why murder allegations were dropped from Arrington's sentencing, yet were used to enhance Hicks's.

This silence—especially in a § 2255 proceeding—should be treated as a **constructive waiver** of opposition to these claims. Courts routinely hold that issues not addressed in opposition may be deemed conceded. See, e.g., Bonilla v. City of New York, 2021 WL 663718, at 6 (E.D.N.Y. Feb. 19, 2021).

## VII. Request for Evidentiary Hearing and Conclusion

Under **Rule 8 of the Rules Governing § 2255 Proceedings**, the Court must grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." The claims raised by Mr. Hicks—supported by **sworn affidavits, audio recordings, newly signed declarations, uncontested disparities, and shifting government positions**—create factual and constitutional disputes that **cannot be resolved on the paper record alone.**

Each of the following claims presents **material issues of fact** that entitle Mr. Hicks to relief or, at minimum, a full evidentiary hearing:

1. **The use of acquitted conduct** in calculating offense level and drug weight, in violation of Erlinger v. United States and Amendment 821;

2. **Juror coercion and racial bias**, supported by sworn affidavits and audio from Jurors Barbary and Kessel, triggering Remmer and Peña-Rodriguez;

3. **False testimony by key government witness Jerome Grant,** confirmed by affidavit and letter, violating Napue, Mooney, and Giglio;

4. **Ineffective assistance of counsel**, based on Mr. Fogg's sworn admissions;

5. **Severe and unjustified sentencing disparities**, including a $10.6M forfeiture, despite Mr. Hicks being convicted of the least serious charges among his co-defendants;

6. **The Government's strategic silence** on critical arguments, which must be treated as a waiver or concession under law.

Courts have long recognized that where **multiple independent bases for relief exist,** and each is supported by **sworn evidence, legal change, or factual contradiction,** the only proper remedy is to **hold a hearing,** develop a full record, and allow the truth to come to light. See:

Machibroda v. United States, 368 U.S. 487 (1962)

United States v. Aiello, 814 F.2d 109 (2d Cir. 1987)

Blackledge v. Allison, 431 U.S. 63, 80 (1977)

## PRAYER FOR RELIEF

For the reasons stated herein, Mr. Hicks respectfully requests that this Honorable Court:

1. **Grant the motion to vacate, set aside, or correct sentence** pursuant to 28 U.S.C. § 2255;

2. In the alternative, **schedule an evidentiary hearing** under Rule 8;

3. Permit Mr. Hicks to supplement the record with exhibits, declarations, and transcripts already referenced and attached;

4. **Grant any other relief the Court deems just and proper.**

Respectfully submitted,

**Aaron Hicks**

**Pro Se Movant**

July 15th, 2025

## CERTIFICATE OF SERVICE

I, Aaron Hicks, hereby certify that a true and correct copy of the foregoing Sur-Reply to Government's Response to Petitioner's Motion Under 28 U.S.C. § 2255 was delivered by hand to the Clerk of Court for filing on this 21 day of July, 2025.

Service upon the United States Attorney's Office will be effectuated electronically through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

Respectfully submitted,

_____    July 15th, 2025

Aaron Hicks

Pro Se Movant

Reg. No. 23995-055

FCI Memphis

P.O. Box 34550

Memphis, TN 38184

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

v.                              Case No. 15-CR-33-A

**AARON HICKS,**

    Defendant-Petitioner.

---

**DECLARATION OF JEROME GRANT IN SUPPORT OF PETITIONER'S MOTIONS UNDER 28 U.S.C. § 2255 AND RULE 60(B)**

I, **Jerome Grant,** being duly sworn, declare and state the following:

**1. Personal Background**

- I am over the age of 18 and competent to make this affidavit.

- I was a cooperating witness for the United States government in the case of United States v. Aaron Hicks, Case No. 15-CR-33-A, in the Western District of New York.

- I testified as a government witness against Mr. Hicks during his trial.

**2. Government Coaching and Pressure**

- Prior to my testimony, I was approached by government agents and/or prosecutors who instructed me on what to say in court.

- I was coached to say certain things about Mr. Hicks that were misleading or false.

- I understood that my cooperation and compliance with these instructions would help me receive a favorable sentencing outcome or early release.

**3. False or Misleading Testimony at Trial**

- During Mr. Hicks's trial, I gave testimony related to cocaine and marijuana distribution that was either exaggerated or not truthful.

- I affirm that I delivered this testimony under pressure and fear of consequences if I did not

cooperate fully with the government's expectations.

### 4. Letter to the Government (Exhibit 3506MM)

I previously expressed these concerns in a letter I wrote to the U.S. Attorney's Office, which was later marked as **Exhibit 3506MM** during the trial of co-defendant Darnell Arrington.

In that letter, I stated that I had been pressured by the prosecution to testify in a certain way and that unless I was released, I would reveal the truth about what had happened.

I was released shortly after that letter.

I stand by what I wrote in Exhibit 3506MM and submit this affidavit to further clarify and affirm my earlier statements.

### 5. Testimony During Arrington's Trial

- During the subsequent trial of co-defendant Arrington, I testified under oath that I had been pressured by the government during Mr. Hicks's trial.

- I admitted in open court that some of my prior testimony was false and the result of government influence.

### 6. Current Intent

- I make this affidavit voluntarily and truthfully to correct the record and support Mr. Hicks's pending motions under 28 U.S.C. § 2255 and Rule 60(b).

- I am willing to testify under oath in any evidentiary hearing if called upon.

- I have not been bribed, threatened, or promised anything in exchange for this affidavit.

### 7. Clarification and Vulnerability at Time of Testimony

- I now affirm that the testimony I gave regarding Aaron Hicks was influenced by undue pressure, manipulation, and coercion from members of the United States Attorney's Office—specifically AUSA George Burgasser and AUSA Wei Xiong—as well as federal agents working the case.

- At the time I was transported from the Allegany County Jail by federal agents, I was offered food from any place I wanted. During that trip, they stated "we can't talk about Aaron Hicks," but then proceeded to speak off the record, referring to Mr. Hicks with derogatory language, calling him "a faggot" and saying "he's going to get got."

- Before I testified at Mr. Hicks's trial, AUSA Wei Xiang came to me and said to "just go with the flow." That phrase stood out to me because it implied I should agree with the prosecution's narrative, even if it wasn't fully accurate. I later realized this same phrase, "go with the flow," became a major point of dispute during my cross-examination in co-

defendant Arrington's trial, where it was used to suggest that my testimony was not based on my own memory but was guided by what the government wanted me to say.

- I was told that if I didn't cooperate, I would never get out of prison, and this was the only way I would ever see the light of day again. This was extremely stressful, especially with my high blood pressure and fragile mental condition.

- At the time, I was under a great deal of stress, mentally and emotionally. My blood pressure was elevated, and I was dizzy and not thinking clearly. I was also manipulated due to my background—I was in special education and was abused as a child. I now believe those vulnerabilities were used to control and confuse me.

- I now recognize that I may have believed and repeated things that were not true because of what I was being told and pressured to say. Looking back, I cannot in good conscience say that what I testified to was completely accurate or truthful.

- My conscience has weighed heavily on me. I cannot affirm under oath that Aaron Hicks is guilty of all the things I testified to. I now believe he deserves a new trial.

- I previously wrote a letter to the government about this matter, which was marked at trial as Exhibit 3506MM. I reaffirm that the concerns I raised in that letter were real and continue to weigh on me today. That letter and this affidavit together reflect my attempt to make things right.

- I make this statement freely, without coercion or promise of benefit, and I ask the Court to take it seriously in considering whether Mr. Hicks's trial was fair and just.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, understanding, and belief.

Executed on this 14th day of July, 2025.

Jerome Grant

**NOTARY ACKNOWLEDGMENT**

State of Georgia

County of Polk

Subscribed and sworn to before me this 14th day of July, 2025, by Jerome Grant, who appeared before me personally and acknowledged that he executed the foregoing affidavit.

Notary Public Anita Barnes

My Commission Expires: April 01, 2029

ANITA BARNES
Notary Public, Georgia
Polk County
My Commission Expires
April 01, 2029