UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                    **DECISION AND ORDER**
                                                       15-CR-33-RJA
AARON HICKS,                                           23-CV-166-RJA

                          Defendant.

        Before the Court are numerous *pro se* motion filed by Defendant/Petitioner Aaron

Hicks.[1]  For the reasons which follow, all of Hicks's motions are **DENIED**.

## I.    BACKGROUND

### A. Procedural History

        Hicks was initially tried in 2017 on a three-count Superseding Indictment that

charged him with: in Count 1, RICO conspiracy, in violation of 18 U.S.C. § 1962(d);

in Count 2, narcotics conspiracy, in violation of 21 U.S.C. § 846; and in Count 3,

possession of firearms in furtherance of a crime of violence and drug-trafficking

crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). The jury did not reach a verdict on

the RICO conspiracy charge, and otherwise rendered a split verdict, convicting

---

[1] Hicks's pending motions are as follows: (1) a motion to vacate his conviction under 28 U.S.C. §2255 (Dkt. 964); (2) a motion to allow discovery of jury selection transcripts (Dkt. 1015); (3) a motion for relief under Rule 60(b) and Rule 59(a) of the Fed. R. Cr. P. (Dkt. 1021); (4) a supplemental motion to vacate his conviction under 28 U.S.C. §2255 (Dkt. 1073); (5) a motion to correct judgment (Dkt. 1078): (6) a second supplemental motion to vacate his conviction under 28 U.S.C. § 2255 (Dkt. 1081); (7) a motion to reduce his sentence based upon a retroactive Guideline amendment (Dkt. 1086); and (8) a third supplemental motion to vacate his conviction under 28 U.S.C. § 2255 (Dkt. 1096).

Hicks of a marijuana conspiracy,[2] but acquitting him of the firearm possession count. Dkt. Entry, dated 10/13/2017; Dkt. 473.

Hicks was retried on the RICO conspiracy charge in April and May of 2018 and convicted. Dkt. Entry, dated 5/2/2018. On February 27, 2019, Hicks was sentenced to an aggregate term of 360 months' imprisonment, consisting of 240 months for his conviction on Count 1 (RICO conspiracy) and 120 months for his conviction on Count 2 (marijuana conspiracy), with the sentences imposed to run consecutively to one another. Dkt. 473.

Hicks appealed his convictions to the Second Circuit Court of Appeals in 2019. Dkt. 475. Following the Second Circuit's affirmance of his convictions, Dkt. 638, Hicks filed a Petition for Certiorari with the Supreme Court, which was denied on February 22, 2022. *See United States v. Hicks*, 5 F.4th 270 (2d Cir. 2021), *cert. denied*, 142. S. Ct. at 1157 (2022).

Nearly one year later, on February 21, 2023, Hicks timely filed a *pro se* motion to vacate his convictions pursuant to 28 U.S.C. § 2255. Dkt. No. 964.[3] Thereafter,

---

[2] In rendering its verdict, the jury completed a special verdict form with respect to the narcotics conspiracy count and on that form, "the jury checked 'marijuana' but wrote nothing next to 'cocaine' or 'cocaine base.'" *Hicks*, 5 F.4th at 274, n.3. Accordingly, this Court determined, for purposes of sentencing, that the type and quantity of controlled substance involved in the narcotics conspiracy of which Hicks was convicted in Count 2 was 50 kilograms or less of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(D).

[3] Hicks twice sought (Dkt. 965, 1005) and received (Dkt. 967, 1008; Dkt. Entries, dated 2/23/2023 and 5/26/2023) permission to amend his *pro se* § 2255 motion. Additionally, Hicks subsequently filed a document entitled "Supplemental Motion of Vacate under 28 U.S.C. § 2255. Dkt. 1096.

Hicks, again acting *pro se*, filed a Motion for Discovery, Dkt. 1015; a Motion for Relief Under Rule 60(b) and Rule 59(a) of the Federal Rules of Civil Procedure, Dkt. 1021; as well as a Motion for Recusal in which he requested that this Court recuse itself from his case, Dkt. No. 1022.[4]

Upon Hicks's filing of his *pro se* recusal motion, this Court instructed the Government to respond to such motion but directed that the filing of any responses to Hicks's other pending post-conviction motions—and this Court's determination of those other motions—be held in abeyance pending resolution of the recusal motion. Dkt. 1027, Dkt. Entry, dated 8/28/2023.

On January 16, 2024, this Court entered a Decision and Order denying Hicks's recusal request. Dkt. 1058.  Hicks appealed this Court's decision to the Second Circuit, *see*, Dkt. 1064, and in view of that appeal, this Court continued to hold Hicks's pending post-conviction motions in abeyance until after the issuance of any Second Circuit mandate.  Dkt. 1067, Dkt. Entry, dated 2/8/2024.  On May 28, 2025, the Second Circuit issued a mandate dismissing Hicks's appeal of this Court's denial of his recusal motion. Dkt. 1097.

Consistent with this Court's prior orders, upon the issuance of the Circuit Court's mandate, this Court directed the Government to respond not only to those post-conviction motions which were pending at the time that Hicks filed his recusal motion, *i.e.*, Dkt. 964, 1015, and 1021, but also to five additional *pro se* post-

---

[4] The Court notes that Hicks's Rule 60(b) and 59(a) motion (Dkt. 1021) was filed simultaneously with his recusal motion. Dkt. 1022.

conviction motions that Hicks filed on the Docket in this case while his recusal appeal was pending, *i.e.*, Dkt. 1073, 1078, 1081, 1086, and 1096. *See*, Dkt. 1098, Dkt. Entry, dated 5/29/2025. The Government filed a consolidated response in opposition to all of Hicks's pending *pro se* post-conviction motions, Dkt. 1101, and Hicks replied. Dkt. 1104.

**B. Facts**

At Hicks's trials, the Government presented evidence that Hicks was a member of a violent Buffalo-based drug-trafficking organization it called the "Schuele Boys." *Hicks*, 5 F.4th at 273. The Government introduced evidence that Hicks and other Schuele Boys members trafficked in marijuana, cocaine, and cocaine base. *Id*. In that regard, Julio Contreras, Hicks's primary source of supply for drugs, testified at the second trial that he started selling cocaine to Hicks, his main contact within the Schuele Boys, in late 2010, with an initial shipment of sixteen kilograms of cocaine from Texas to Buffalo. Contreras continued to transport cocaine routinely from Texas directly to Hicks until Contreras was arrested a year later, in November 2011. *Id.*, at 274. The Government also introduced evidence that Hicks and others plotted to murder Quincy Balance in retaliation for the murder of a Schuele Boys member, and different witnesses testified that Hicks and others discussed murdering Balance and placed Hicks at the scene of Balance's murder. *Id*.

**II.    DISCUSSION**

Of Hicks's eight, pending, *pro se* post-conviction motions, four are generally styled as motions to vacate his conviction under 28 U.S.C. § 2255. *See*, Dkt. 964,

1073, 1081, 1086.  The remaining motions consist of a motion to allow discovery of jury selection transcripts, *see*, Dkt. 1015; a motion for a new trial brought pursuant to Federal Rules of Civil Procedure, Rules 59(a) and 60(b), *see*, Dkt. 1021; a motion to correct the judgment brought pursuant to Federal Rules of Criminal Procedure, Rules 32 and 36, *see*, Dkt. 1078; and a motion for recalculation of Hicks's Sentencing Guidelines. *See*, Dkt. 1086.

Although several of Hicks's pending motions raise similar—and in some instances identical—claims, this Court will, as it must, "liberally construe[]" his *pro se* submissions "in his favor," *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995), and "read [them] to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quotation mark omitted).

### A.    Legal Standards

As previously noted, four of Hicks's motions are brought pursuant to 28 U.S.C. § 2255. *See*, Dkt. 964, 1073, 1081, and 1096.

### 1.    Section 2255 Motions

Under 28 U.S.C. § 2255, a person convicted of a federal offense has the right to have his or her sentence vacated if "the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). In other words, collateral relief, such as that sought by Hicks, is available under Section 2255 "only for a constitutional error, a lack of jurisdiction in the

sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotations omitted). As the Second Circuit has explained, "[t]he reasons for narrowly limiting the relief permitted under § 2255 – a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place – are 'well known and basic to our adversary system of justice.'" *Bokun*, 73 F.3d at 12 (*quoting United States v. Addonizio*, 442 U.S. 178, 184 (1979)).

### a. Procedural Default

Generally, "a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) (citation omitted). An exception is made, however, for claims of ineffective assistance of counsel raised for the first time in the Section 2255 motion. *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007). "[A] defendant who raises on direct appeal ineffective assistance claims based on the strategies, actions, or inactions of counsel that can be, and are, adjudicated on the merits on the trial record, is precluded from raising new or repetitive claims based on the same strategies, actions, or inactions in a Section 2255 proceeding" but "is not precluded from raising new ineffective assistance claims based on different strategies, actions, or inactions of counsel." *Yick Man Mui v. United States*, 614 F.3d 50, 51 (2d Cir. 2010) (*emphasis added*).

For all claims other than ineffective assistance of counsel, if a movant has procedurally defaulted, "he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish [i] both cause for the procedural default and actual prejudice resulting therefrom or [ii] that he is actually innocent of the crime of which he was convicted." *De Jesus v. United States*, 161 F.3d 99, 102 (2d Cir. 1998) (internal quotations omitted).

### b. Mandate Rule/Law of the Case

Under the mandate rule, a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal. *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992) (quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986) (*per curiam*)); *see also Schlup v. Delo*, 513 U.S. 298, 318-19 (1995) ("[A] habeas court may not ordinarily reach the merits of successive claims ...absent a showing of cause and prejudice.") (citations and footnote omitted). "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Yick Man Mui*, 614 F.3d at 53 (citation omitted). Moreover, an ineffective assistance of counsel claim that "merely repackages the arguments the petitioner made on direct appeal…is… barred by the mandate rule." *Brown v. United States*, No. 16-CR-297-2 (AMD), 2023 WL 4551682, at *8 (E.D.N.Y. July 14, 2023).

### c. Ineffective Assistance of Counsel

A petitioner claiming ineffective assistance of counsel "must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 692–93 (1984)). The burden of showing ineffective assistance is a heavy one because, at the first step of analysis, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*, at 689.

The determinative question in assessing whether counsel's performance was deficient "is not whether counsel 'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'" *Harrington,* 689 F.3d at 129–30 (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). The standard for evaluating the adequacy of counsel's representation is "a most deferential one," *Harrington*, 562 U.S. at 105, because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *United States v. Thomas*, 608 F.App'x. 36, 38 (2d Cir. 2015)(summary order)(citing *Strickland*, 466 U.S. at 690).

To give appropriate deference to counsel's independent decision-making, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008)(quoting *Strickland*, 466 U.S. at 689). Courts are cautioned

8

against "look[ing] back and project[ing] ex post knowledge of consequences on the attorney's ex ante selection of one path among the many available to him[,]" *id.*, and must instead "consider the circumstances counsel faced at the time of the relevant conduct and ... evaluate the conduct from counsel's point of view." *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005).

Should a § 2255 petitioner clear this first hurdle by demonstrating ineffective performance by counsel, petitioner must next demonstrate actual prejudice from identified errors. *Harrington*, 689 F.3d at 129. That is, Hicks must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, not merely that an error "had some conceivable effect on the outcome." *Strickland*, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Finally, and as noted previously, "a claim presented in different terms and rejected on direct appeal may not thereafter be renamed or repackaged as an ineffective assistance claim and asserted in a habeas petition." *Rodriguez v. United States*, No. 14-cv-4628 (CSH), 2017 WL 6404900, at *4 (S.D.N.Y. Dec. 13, 2017), *aff'd*, 767 F. App'x. 160 (2d Cir. 2019) (summary order).

### d. Prosecutorial Misconduct

"To merit habeas relief on a claim of prosecutorial misconduct, petitioner must show that the alleged misconduct denied him a fair trial." *Mendez v. United States*,

379 F. Supp. 2d 589, 598 (S.D.N.Y. 2005) (*citing Greer v. Miller*, 483 U.S. 756, 765 (1987)). A movant must establish that the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

### 2. Motion Pursuant to Rule 59(a) and Rule 60(b) of the Federal Rules of Civil Procedure

On the same day that he filed his recusal motion, Dkt. 1022, Hicks also filed a motion styled as a motion pursuant to Rules 60(b) and 59(a), Dkt. 1021, in which he seeks relief from the judgment of conviction. *Id*.   In it, Hicks mirrors his claims regarding the jury and the Court that he raised in his recusal motion. Compare, Dkt. 1021 and Dkt. 1022. Such claims were previously considered—and rejected—by this Court in its Decision and Order denying his recusal motion. Dkt. 1058.  The only claims included in Hicks's Rule 60(b) and 59(a) motion that are distinct from those previously raised and rejected by this Court are those pertaining to a claim of newly discovered evidence involving his claim that certain evidence was withheld and that the government presented false testimony at his second trial.  Dkt. 1021, pp. 4-5.

Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted ... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." The Second Circuit has interpreted this standard to permit the granting of new trials when "in the opinion of the district court, the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice." *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124,

133 (2d Cir. 1998) (quotation marks and citation omitted). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." *Id*.

Under Rule 59(a), "[u]nlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." *Id*. In considering a motion for a new trial, the court is free to weigh the evidence independently and need not view it in the light most favorable to the prevailing party. *See Manley v. Ambase Corp*., 337 F.3d 237, 244-45 (2d Cir. 2003). The standard for granting such a motion is high and rulings on motions under Rule 59(a) "are committed to the sound discretion of the district court." *Severino v. Am. Airlines*, No. 07 CV 941, 2009 WL 1810014, *2 (S.D.N.Y. June 24, 2009) (quoting, *inter alia*, *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998)). "While a jury's credibility assessments are entitled to deference, these principles of deference to the jury do not override the trial judge's duty to see that there is no miscarriage of justice." *Livingston v. Escrow*, No. 08-CV-6576, 2014 WL 1466469, *2 (W.D.N.Y. Apr. 15, 2104) (citations omitted). "The Second Circuit has instructed district courts to 'abstain from interfering with [a jury] verdict unless it is quite clear that the jury has reached a seriously erroneous result' that would result in 'a miscarriage of justice.' " *Fioto v. Manhattan Woods Golf Enter., LLC.*, 304 F. Supp. 2d 541, 545-546 (S.D.N.Y. 2004) (quoting *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir. 1978)). "'Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite of the apple.'" *Carlson v. Parry*, No. 06-CV-

6621, 2013 WL 5354517, *5 (W.D.N.Y. Sept. 24, 2013) (quoting *Kogut v. Cnty. of Nassau*, 2013 WL 3820826, *2 (E.D.N.Y. July 22, 2013)).

With regard to Hicks's Rule 60(b) motion, the Second Circuit has recognized that "a Rule 60(b) motion that attacks the underlying conviction presents a district court with two procedural options: (i) the court may treat the Rule 60(b) motion as a second or successive habeas petition, in which case it should be transferred to this Court for possible certification, or (ii) the court may simply deny the portion of the motion attacking the underlying conviction as beyond the scope of Rule 60(b)." *Harris v. United States*, 367 F.3d 74, 82 (2d Cir. 2004) (quotations, italics, and citations omitted).

### 3. Motion Pursuant to Rule 36 of the Federal Rules of Criminal Procedure

Hicks has also filed a motion styled as one "to correct [a] clerical error pursuant to a Fed. R. Crim. P. 36 and Rule 32 violation." Dkt. 1078. In it, Hicks raises several challenges to the Sentencing Guideline calculations set forth in his PSR and the sentencing process in this case. *Id.*

As the Second Circuit has recognized:

> Rule 36 of the Federal Rules of Criminal Procedure provides that, after giving appropriate notice, "the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed.R.Crim.P. 36. We have described this rule as providing only "a limited avenue for correction of a judgment." *United States v. DeMartino*, 112 F.3d 75, 79 (2d Cir. 1997).
>
> Rule 36 "does not authorize the court to amend the oral sentence itself or to modify the written judgment to effectuate an intention that the

court did not express in its oral sentence." *Id*. (citing *United States v. Werber*, 51 F.3d 342, 343, 347 (2d Cir. 1995)).

*United States v. Diaz*, 522 F. App'x 97, 98 (2d Cir. 2013)(summary order).

## B.    Legal Analysis

At the outset, the Court notes that neither Rules 59(a) or 60(b) of the Federal Rules of Civil Procedure nor Rule 36 of the Federal Rules of Criminal Procedure provide appropriate means for Hicks to secure the relief he seeks in the motions he filed pursuant to those Rules.  Dkt. 1021; Dkt. 1078.  With regard to the claims made by Hicks in the context of his Rule 59(a) and Rule 60(b) motion, his arguments are largely an attempt to relitigate claims involving alleged improprieties committed by certain jurors and the Court—claims which this Court has already considered and rejected.  Dkt. 1058.  As noted previously, the only claims included in Hicks's Rule 60(b) and 59(a) motion that are distinct from those previously raised and rejected by this Court are those pertaining to a claim of newly discovered evidence involving his assertion that certain evidence was withheld and that the government presented false testimony at his second trial.  Dkt. 1021, pp. 4-5.   In this regard, Hicks refers to a letter from Jerome Grant, a cooperating coconspirator, written well-after such individual testified at Hicks's second trial, Hicks claims that such letter impeaches the testimony Grant gave at Hicks's trial.

Procedurally, the Court notes that with Hicks's judgment of conviction being entered in February of 2019, Dkt. 473, his motion pursuant to Rules 59(a) and 60(b), which was filed in August of 2023, is untimely. *See*, Rule 59(b),(c), and (e) (Rule 59

motions for new trial/amended judgment must be filed within 28 days after entry of judgment); Rule 60(c)(1) ("A motion under Rule 60(b) [for relief from a judgment or order] must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding").  Under these facts, the only even arguable basis under Rule 60(b) which might apply to the evidence at issue is the so-called "newly discovered evidence" provisions of Rule 60(b)(2), which permits relief on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). Here, however, the evidence cited by Hicks is, at best, impeachment evidence, and as such, it does not afford Hicks any relief under such Rule. *See United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (to secure relief under Rule 60(b)(2)… "the evidence must not be merely cumulative or impeaching.").

Beyond the procedural bar to Hicks's motion brought pursuant to Rules 59(a) or 60(b) of the Federal Rules of Civil Procedure, such motion, together with his motion to correct the judgment pursuant to Rule 36 of the Federal Rules of Criminal Procedure, lack merit.

With regard to the motion brought pursuant to Rules 59(a) or 60(b), the Court finds that Hicks's claim that Grant's letter was exculpatory and withheld by the Government are refuted by the record in this case.  Hicks's second trial occurred in 2018. The evidence that Hicks claims the Government withheld was a letter sent to the Government by Grant, a cooperating coconspirator who testified at Hicks's 2018

trial. That letter, which was marked as Exhibit 3506MM at a subsequent trial of codefendant Roderick Arrington and used to cross-examine Grant at that trial, *see*, Dkt. 972, p. 59, was received by the Government in early 2022—some four years after Grant's testimony in Hicks's second trial and long after Hicks had been tried, sentenced, and had his conviction affirmed on appeal. The letter, which was written by Grant because he was frustrated that he remained in custody despite testifying against Hicks and others, *see*, Dkt. 973, pp. 24-25, was never withheld from Hicks. Moreover, even if such letter did exist at the time that Grant testified at Hicks's second trial—which it did not—it is not exculpatory and its impeachment value is limited at best. This Court, having presided over both of Hicks's trials, rejects any suggestion that Grant's letter calls into question the validity of the guilty verdicts rendered by the juries in this case. *See*, *Calderon v. Thompson*, 523 U.S. 538, 563 (1998)(because impeachment evidence is a step removed from evidence pertaining to the crime itself, it "provides no basis for finding a miscarriage of justice").

Finally, with respect to Hicks's challenge under Rule 36, the Court notes that the claims he raises are substantive challenges to the application of the Guidelines themselves. As such, the are not "merely the type of 'mechanical' errors within the purview of Rule 36." *United States v. Contrera*, No. 20-4083-CR, 2022 WL 301784, at *2 (2d Cir. Feb. 2, 2022) (wherein Court, in denying relief under Rule 36, noted that "correcting any putative errors concerning the inclusion of factual allegations related to obstruction of justice and an accompanying offense-level increase would involve more than the 'mechanical' correction of a clerical error.").

For these reasons, Hicks's motions pursuant to Rules 59(a) or 60(b) of the Federal Rules of Civil Procedure and Rule 36 of the Federal Rules of Criminal Procedure, *see*, Dkt. 1021; Dkt. 1078, are **DENIED**, as the Rules cited by Hicks do not, for the reasons set forth above, provide an appropriate vehicle for the relief he seeks. To the extent that such motions include claims which are duplicitous to those claims raised in his other post-conviction motions, the Court will nevertheless consider such claims "to raise the strongest arguments that they suggest." *Green*, 260 F.3d at 83.

1. **Hicks's claims that he was denied due process of law and effective assistance of counsel based upon his claim of juror misconduct and the improper handling of the same by both his attorney and this Court.**

In both his § 2255 motions as well as in the various other post-conviction motions he has filed, Hicks asserts that he was denied due process and/or he was denied effective assistance of counsel based upon his claim that there was juror bias, judicial misconduct with respect to jurors, and/or his attorney failed to investigate claims of juror misconduct. *See*, Dkt. 964, Point 1; Dkt. 1021.[5]

---

[5] Related to Hicks's pending motions regarding alleged juror misconduct (and his claim that both his attorney and the Court mishandled such issue) is his motion seeking "discovery of jury selection transcripts re: juror issue." Dkt. 1015. However, the juror issues raised by Hicks in his § 2255 motion have nothing to do with the jury selection process, and Hicks does not articulate any reason why such transcripts are required. To the extent that this Court has already fully explored —and rejected—Hicks's claims regarding purported juror/judicial misconduct in its prior recusal decision, *see*, Dkt. 1058, and because none of those claims involved the jury selection process itself, the Court denies his motion for discovery of the jury selection transcripts. Additionally, Hicks has not identified any reason why he failed to order the transcripts himself. Discovery from the Government in a Section 2255 proceeding requires leave of Court and must be based on a showing of good cause by the petitioner. *See* Rule 6, Rules Governing Section 2255 Proceedings for the United States District Courts ("(a) Leave of Court

Hicks alleges that a juror in his second trial, C.B., felt pressured to return a vote of guilty when she initially believed the Government did not prove their case against the petitioner beyond a reasonable doubt. Dkt. 1005. He also alleges that the Court had an improper *ex parte* communication with this juror, during which the Court brought the juror into the Court's Chambers and told the juror that "if the Defendant did not accept a plea, that the Defendant would lose at trial, and that upon losing at trial, the Court would sentence the Defendant to the maximum sentence." Dkt. 1021 at 3. Notably, Hicks's primary motion relating to these jury issues, *i.e.,* Dkt. 1021, was filed the same day as—and raises identical arguments to those contained in—the recusal motion he made, *i.e.,* Dkt. 1022, which was rejected by this Court. *See*, Dkt. 1058; *United States v. Hicks*, No. 15-CR-33-RJA, 2024 WL 162880, at *1 (W.D.N.Y. Jan. 16, 2024), *appeal dismissed*, No. 24-271, 2025 WL 1013556 (2d Cir. Apr. 2, 2025)(summary order).

As this Court's prior written Decision and Order on Hicks's recusal motion makes clear, his claims regarding alleged juror misconduct and his allegations regarding improper handling of such juror(s) by both his attorney and this Court were both untimely and meritless. Dkt. 1058. As this Court determined in its recusal decision, "all [of Hicks's submissions submitted in support of his recusal motion—submissions identical to those offered in support of this motion] are facially

---

Required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."). Here, Hicks, by failing even to articulate any claim of error with regard to the jury selection process, has not even alleged—much less established—good cause why such transcripts should be provided. Accordingly, his motion for discovery of jury selection transcripts, Dkt. 1015, is **DENIED** as frivolous.

insufficient to establish the sort of bias or prejudice necessary to warrant recusal." Dkt. 1058, p.9.  Just as those submissions were determined to be insufficient to support a finding of prejudice to warrant recusal, they are also insufficient to support any finding of prejudice to sustain a claim of ineffective assistance of counsel or a due process violation in this post-conviction motion.  Indeed, "failure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice."  *Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992).

Moreover, to the extent that Hick offers an affidavit containing some vague and conclusory allegations regarding possible juror bias exhibited by one or more jurors at his first trial, *see*, Dkt. 1021, pp. 20-21, such nebulous allegations are insufficient to warrant even a hearing on his request. Rule 606(b) of the Federal Rules of Evidence generally proscribes inquiries into jury deliberations.  Rule 606(b) is grounded in the common-law rule against admission of juror testimony to impeach a verdict and the exception for juror testimony relating to jury tampering. *Tanner v. United States*, 483 U.S. 107, 121 (1987). The rule provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

Fed.R.Evid. 606(b); *see also Manley v. AmBase Corp.*, 337 F.3d at 251 ("Rule

606(b) precludes such an inquiry into the 'mind or emotions' of deliberating jurors.");

*United States v. Thomas*, 116 F.3d 606, 620 (2d Cir. 1997) ("The mental processes

of a deliberating juror with respect to the merits of the case at hand must remain

largely beyond examination and second-guessing, shielded from scrutiny by the

court as much as from the eyes and ears of the parties and the public."). A petitioner

may meet an exception to this rule "only if he can make a showing of significant new

objective facts which strongly tend to prove that [those facts] tainted one or more of

the other jurors." *United States v. Moten*, 582 F.2d 654, 660 (2d Cir.1978).

Here, Hicks has not provided any facts which suggest that further inquiry into

the jury deliberation process is warranted here, especially in view of the fact that

such jury did not reach a verdict on the RICO conspiracy charge, and otherwise

rendered a split verdict, convicting Hicks of narcotics conspiracy but acquitting him

of the firearms possession count. In the end, this Court, in deciding Hicks's recusal

motion, has already considered—and rejected as meritless—all of Hicks's claims

regarding purported improprieties committed by jurors and the Court, *see*, Dkt. 1058,

and any criticism of Hicks's attorney for failing to pursue a meritless claim is

unfounded. *See United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) ("[f]ailure

to make a meritless argument does not amount to ineffective assistance."].

Accordingly, Hicks's claims of juror bias and errors in the way this Court and his

attorney dealt with jurors in this case are, once again, rejected by this Court and

afford him no basis for relief.

2.  **Hicks's claims that he was denied due process of law and effective assistance of counsel when trial counsel refused to request dismissal of the RICO count due to decriminalization of marijuana in his State prior felony convictions and that such convictions were used improperly to enhance his sentence**.

In several of his §2255 motions, *see*, Dkt. 964, Point 2; Dkt. 1073, Point 2; Dkt. 1081, Point 1; and Dkt. 1096, Point 3, Hicks broadly claims that his prior New York State felony marijuana convictions were improperly used to enhance his sentence.  Specifically, he argues that such convictions may not properly serve as predicate offenses under 21 U.S.C. § 851 to justify the enhanced sentence he received under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).  Hicks maintains that since New York State has largely decriminalized marijuana and enacted the New York State Clean Slate Act, *see*, N.Y. Crim. Proc. Law § 160.57, which became effective on November 26, 2024, and provides for the automatic sealing of certain misdemeanor and felony marijuana convictions, his prior marijuana convictions were improperly used to increase his punishment and his criminal history category.

Notwithstanding Hicks's contention, the Court of Appeals has instructed that "a state's reclassification that occurs after a conviction has become final does not apply retroactively." *United States v. Mazza*, 503 F. App'x 9, 11 (2d Cir. 2012)(summary order); *see also United States v. Hoskins*, 905 F.3d 97, 103 (2d Cir. 2018) (holding that change in criminal history category "does not mean that the continued imposition of [the imposed sentence] was a miscarriage of justice"); *United States v. Dunnigan*, 605 F. Supp. 3d 487, 497 (W.D.N.Y. 2022) (citing *Hoskins* and denying Section 2255 petition); *United States v. Harris*, No. 12 Cr. 65

(WKS), 2020 WL 9218959, at *6 (D. Vt. Nov. 3, 2020) (denying petition brought under Section 2255 and holding, in part, that "[t]he vacatur of an underlying state conviction, by itself, does not automatically render the continued imposition of his current sentence unlawful").

Relatedly, Hicks also argues that his sentence was improperly enhanced in view of the provisions of the First Step Act. The First Step Act, which became effective in December of 2018, shortly before Hicks was sentenced, changed the requirements for an enhanced sentence under the penalty provisions set forth in §§ 841(b)(1)(A) and 841(b)(1)(B). Specifically, for those penalty provisions, the definition of a qualifying offense under § 851 was changed from "a felony drug offense" to one for "a serious drug felony." According to Hicks, since his New York State marijuana convictions did not constitute a "serious drug felony," the maximum sentence for his drug conspiracy conviction should not have been doubled from five to ten years. While this Court agrees that Hicks's marijuana convictions do not constitute "serious drug felony" offenses, the simple fact is that the penalty provision applicable to Hicks's conviction under Count 2, *i.e.*, 21 U.S.C. § 841(b)(1)(D), was not altered by the First Step Act. That statute continues to provide, as it did at the time that Hicks was sentenced, for an increase in the statutory maximum penalty from 5 to 10 years where defendant has a final "prior conviction for a felony drug offense." *See generally*, *Reid v. United States*, No. 12-CR-200-A, 2024 WL 3904569, at *11 (W.D.N.Y. Aug. 22, 2024). As explained previously, since Hicks's New York marijuana convictions remained prior convictions for a felony drug offense

at the time of his sentencing, this Court's reliance on them in imposing sentence was not improper.

Finally, Hicks claims that the Supreme Court's decision in *Erlinger v. United States*, 144 S. Ct. 362 (2024), also affords him sentencing relief. *See*, Dkt. 1096, Point 1. However, *Erlinger* held that, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in applying the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), the matter of whether predicate offenses occurred on separate occasions in applying the ACCA is a question of fact that must be determined by a unanimous jury beyond a reasonable doubt. *Erlinger*, 602 U.S. at 834–35.  Thus, *Erlinger*'s holding is not directly applicable to Hicks's convictions and sentence in this case.  To the extent Hicks seeks to challenge the use of his prior drug felony conviction(s) to enhance the statutory maximum on his drug trafficking sentence from 5 years to 10 years based upon the filing of an § 851 information, *see*, 21 U.S.C. § 841(b)(1)(D), such challenge is rejected on the grounds that *Erlinger* announced a new procedural rule that does not apply retroactively to Hicks's case.

New rules announced by the Supreme Court apply "only in limited circumstances" to "convictions that are already final." *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004). While substantive rules generally apply retroactively, *see*, *id*., such rules typically "include 'rules forbidding criminal punishment of certain primary conduct,' as well as 'rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Montgomery v. Louisiana*, 577 U.S. 190, 198 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)). For example, in

*Montgomery*, the Supreme Court concluded that the new rule announced in *Miller v. Alabama*—prohibition on imposing mandatory life without parole for juvenile offenders—was a new substantive rule that applied retroactively to cases on collateral review. *Id*. at 206. New procedural rules, on the other hand, "generally do not apply retroactively." *Schriro*, 542 U.S. at 352. New procedural rules include those rules "that regulate *only* the manner of determining the defendant's culpability." *Id*. at 353 (emphasis in original). The Supreme Court has noted that it "give[s] retroactive effect to only a small set of 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Id*. (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990); *see also Teague v. Lane*, 489 U.S. 288, 311 (1989)).

Under these facts, the Court concludes that the rule announced in *Erlinger* does not amount to a new substantive rule, as the *Erlinger* decision did not "set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Montgomery*, 577 U.S. at 201. Instead, the rule announced in *Erlinger* only alters "the manner of determining the defendant's culpability." *Edwards v. Vannoy*, 593 U.S. 255, 276 (2021); *see also Erlinger*, 602 U.S. at 859 n.3 (Kavanaugh, J., dissenting) ("For any case that is already final, the *Teague* rule will presumably bar the defendant from raising [*Erlinger*'s] new rule in collateral proceedings."); *Forrest v. McGuinness*, No. 21-CV-5853 (HG), 2025 WL 1677350, at *2 (E.D.N.Y. June 13, 2025) ("While the Second Circuit and courts in this district have not yet considered whether *Erlinger*

created a new right or applies retroactively, the Court agrees with the well-reasoned analysis in *People v. Taylor*, 224 N.Y.S. 3d 345, 351–52 (N.Y. Sup. Ct. 2024), that *Erlinger* does not do either. *Erlinger* simply reiterates the rule announced in *Apprendi. See Erlinger*, 602 U.S. at 833–35.").

While this Court concludes that *Erlinger* is not directly applicable here, even if it were, it is merely a procedural rule that does not apply retroactively to Hicks's convictions and sentence. "The Second Circuit has held that *Apprendi* and case law deriving from that decision do not apply retroactively to cases on collateral review...." *Garcia v. United States*, Nos. 97 Civ. 2962(PKL), S2 90 Cr. 890(PKL), 2009 WL 484435, at *4 n.3 (S.D.N.Y. Feb. 24, 2009) (collecting cases); *see*, *Forbes v. United States*, 262 F.3d 143, 146 (2d Cir. 2001) (per curiam) (holding that *Apprendi* does not apply retroactively).

### 3. Hicks's claims that he was denied due process of law and effective assistance of counsel through the use of acquitted conduct and the application of the Sentencing Guidelines in this case.

Hicks also raises a number of sentencing-related claims—most of which derive from his assertion that he was improperly convicted and sentenced based upon drug trafficking activities for which he was acquitted under Count 2 of the Superseding Indictment. Specifically, Hicks argues that the Court improperly calculated his sentencing offense level and sentencing enhancements related to acquitted conduct by: including cocaine and cocaine base in the Presentence Investigation Report ("PSR"), *see*, Dkt. 1073, Point 1; Dkt. 1078; Dkt. 1086; imposing a forfeiture order based in part on Hicks's involvement in cocaine

trafficking, *see*, Dkt 964, Point 3; Dkt. 1073, Point 5; Dkt. 1086; calculating his base offense level based on converted drug weight, *see*, Dkt. 1078, Dkt. 1086; applying an enhancement for leadership role, *see*, Dkt. 1073, Point 7; and applying an "aiding and abetting" enhancement, *see*, Dkt. 1073, Point 4.[6]  Relatedly, Hicks also claims that he is entitled to sentencing relief pursuant to the application of both: Guideline Amendment 821 (which relates to the calculation of his criminal history category, and the assessment of two criminal history points to Hicks for committing his offenses while under a criminal justice sentence), *see*,  Dkt. 1073, Point 6; Dkt. 1081, Point 2, as well as the more recent Guideline Amendment 826, which changed § 1B1.3 of the United States Sentencing Guidelines to provide that "[r]elevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." U.S.S.G. § 1B1.2 (U.S. Sent'g. Comm'n 2024).  *See*, Dkt. 1096, Point 2.

Hicks's claims are rejected as they are either subject to the mandate rule, procedurally defaulted, and/or without merit.

First, Hicks argues that the Court erred in imposing sentence by improperly considering Hicks's involvement in cocaine and cocaine base trafficking for

---

[6] Hicks's argument that the Court improperly applied an "aiding and abetting" enhancement to his Sentencing Guideline calculations is frivolous. A review of the PSR demonstrates that no such "enhancement" was ever applied with respect to any conduct in this case, and therefore, such claim is rejected.  While Hicks states that the jury received an aiding and abetting instruction viz-a-vis Count 3 of the Superseding Indictment, *see*, Dkt. 1073, p.5, Hicks was acquitted of Count 3, and thus, aiding and abetting had nothing to do with his sentencing.

sentencing or forfeiture purposes.  Specifically, he alleges that the Court erred in determining drug weight, applying the leadership role enhancement, and imposing a $10.6 million-dollar forfeiture judgment.  According to Hicks, because he was only convicted of a drug conspiracy involving marijuana (and not cocaine or cocaine base) under Count 2 of the Superseding Indictment, it was improper for the Court, following the jury verdict convicting him under Count 1 of the Superseding Indictment charging RICO Conspiracy to include cocaine and cocaine base—and Hicks's role in distributing them—as part of the Guidelines calculations in this case. The Court notes, however, that the RICO Conspiracy count with which Hicks was charged (and convicted) alleged not only Hicks's involvement in "multiple acts involving murder"— but also his involvement in acts "involving the trafficking of controlled substances, including cocaine, cocaine base, heroin, and marijuana, in violation of Title 21, United States Code, Sections 841(a)(1), 846, and 856(a)." Dkt. 17, p. 5.

On direct appeal, Hicks argued that the RICO conviction from his second trial was a violation of his Double Jeopardy rights because he had been acquitted of a cocaine conspiracy in his first trial. The Second Circuit disagreed, reasoning that the acquittal on the conspiracy charge did not preclude the Government from introducing evidence of Hicks's cocaine trafficking activities at his second trial on the RICO Conspiracy count:

> As an initial matter, Hicks's argument that the Government was barred from reusing any evidence of cocaine or cocaine base trafficking is unavailing. Hicks was not charged with a substantive drug crime at

his original trial. The Government therefore was not required to show that he bought or sold drugs for the jury to convict him of conspiring to do the same. The jury's verdict of acquittal as to the cocaine and cocaine base conspiracy charge reflects only that it found either that the conspiracy never existed or that Hicks never joined it.  In other words, Hicks's involvement in any particular cocaine or cocaine base transaction was not a fact "necessarily decided in his favor by the prior verdict."  Nor (as we explain further below) does the Government appear to have introduced the challenged evidence of Hicks's prior cocaine trafficking with the "specific purpose" of proving that he had joined a cocaine conspiracy. The District Court was thus free to admit that evidence as proof of Hicks's participation in the RICO conspiracy.

Relying on *United States v. Mespoulede*, Hicks argues that he was retried in part on the acquitted conduct "just as if [the first] trial had never taken place." 597 F.2d 329, 335 (2d Cir. 1979). Because his argument ignores the important difference for a double jeopardy claim between a substantive crime and a crime of conspiracy, Hicks's reliance on *Mespoulede* is misplaced. In that case, the defendant was first acquitted of a substantive charge of narcotics possession arising from the sale of drugs on a specific date and then retried for conspiring to do the same. *Id*. at 330–31. This Court held that it was error to admit evidence that the defendant possessed cocaine on the same date. See *id*. at 335–36. We explained that "the Government was free to introduce new evidence of various illicit deals and to persuade the jury that it should infer the existence of a conspiracy from these transactions," but that the defendant could not be forced again "to confront an assertion that he possessed cocaine" on the relevant date. *Id*. at 335. Here, by contrast, the first jury was not required to find that Hicks was involved in specific drug transactions on specific dates.

*Hicks*, 5 F.4th at 276–77 (some citations omitted).

Here, Hicks repackages the same arguments he raised—and lost—on appeal concerning the validity of the RICO conviction as part of his effort to attack the sentencing calculations applicable to that RICO conviction.  The mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001); *see also*, *United*

*States v. Pitcher*, 559 F.3d 120, 124 (2d Cir. 2009) (habeas petitioner may not avoid the mandate rule by offering "a slightly altered rearticulation of a claim that was rejected on his direct appeal") (citation omitted). Here, the Second Circuit's holding establishes that it was appropriate for the jury to consider the evidence of Hicks's cocaine trafficking activities in the course of rendering their guilty verdict on the RICO count. In this Court's view, if evidence is properly admitted and accepted by the jury to establish defendant's guilt, then that same evidence may also properly be considered by the sentencing court in imposing sentence on defendant. *See*, *United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015) ("The district court was entitled to rely upon the trial evidence in finding the facts on which it sentenced [defendant].").

Moreover, to the extent Hicks seeks to separate his attacks on his sentence from his prior attack on his conviction, his sentencing challenges are procedurally defaulted. "Insofar as claims regarding a sentencing court's error in failing properly to apply the Sentencing Guidelines are neither constitutional nor jurisdictional, we join several other circuits in holding that, absent a complete miscarriage of justice, such claims will not be considered on a § 2255 motion where the defendant failed to raise them on direct appeal." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996). This Court has recently applied this principle and held that "[a]bsent a complete miscarriage of justice, claims alleging non-constitutional sentencing errors that have not been raised on direct appeal may not be reviewed on a § 2255 motion." *Lopez v. United States*, 2024 WL 2268703, at *7 (W.D.N.Y. May 20, 2024); *see also Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant

has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.' " (citations omitted)).

Here, Hicks neither alleges any cause for his failure to raise these defaulted claims nor does he allege that he is innocent. Moreover, Hicks cannot show any prejudice. Regardless of his drug trafficking activities under the RICO conviction, Hicks was also determined to be liable for racketeering activity, which included, as an overt act, the murder of Quincy Balance.  *See*, Dkt. 470 (Revised PSR, ¶¶30-32, 46-51). Hicks has never contested such determination, either on direct appeal or in any of his post-conviction motions.  Under the Sentencing Guidelines, such conduct, standing alone, results in an adjusted offense level of 43, such that, regardless of his criminal history, Hicks's Guidelines range of imprisonment was (and is) life.  Since the combined 30-year sentence imposed (which represented the statutory maximum term he could receive for his convictions under Counts 1 and 2) was below the otherwise applicable Guidelines range he faced, he cannot establish prejudice. *See United States v. Gali*, 708 F. Supp. 3d 271, 280 (E.D.N.Y. 2023) (finding no prejudice when the Court imposed a sentence substantially below the Guidelines range and highlighted the "serious" nature of the offense).

Similarly, regarding his restitution claim, Hicks failed to challenge the order on his direct appeal, and this Court finds, as have other courts throughout this Circuit, that Section 2255 does not provide an appropriate vehicle to challenge a forfeiture order. *See, e.g.*, *United States v. Peterson*, No. 18-CR-609-HG-8, 2025 WL

1713122, at *4 (E.D.N.Y. June 19, 2025) ("Petitioner's challenge to the forfeiture order is not cognizable under Section 2255".); *United States v. Munson*, No. 06-cr-143, 2019 WL 188493, at *2 (S.D.N.Y. Jan. 14, 2019) (finding that a habeas petition could not be used to challenge a $46,200,000 forfeiture order); *see also*, *United States v. Rutigliano*, 887 F.3d 98, 107 (2d Cir. 2018); *Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003).  Even if the Court were to consider the forfeiture order in the context of an ineffective assistance claim, Hicks has not shown that his attorney was deficient. Accordingly, his challenges to the restitution order in this case are rejected.

Hicks's remaining sentencing claims all fail on their merits. As previously noted, this Court was entitled to consider evidence of Hicks's cocaine trafficking with respect to his RICO conspiracy conviction for the same reasons articulated by the Second Circuit in its prior decision in this prosecution. *Hicks*, 5 F.4th at 276 ("The District Court was … free to admit that evidence [of Hicks's cocaine trafficking] as proof of Hicks's participation in the RICO conspiracy.").  Indeed, regardless of any finding by the jury at his first trial that Hicks's involvement in a drug trafficking conspiracy involved only marijuana, there was, as reflected in the PSR, *see*, Dkt. 470, ¶¶22, 24-28, and noted by the Second Circuit in its decision, *see*, *Hicks*, 5 F.4th at 274, ample evidence presented at Hicks's second trial of his significant involvement in substantive multi-kilogram cocaine trafficking offenses.  That conduct was properly charged as part of the underlying racketeering activity involved in the RICO conspiracy charged in Count 1.  Consequently, notwithstanding the fact that

the special verdict sheet which resulted in the first jury not making any finding regarding cocaine under Count 2 is properly construed as "an acquittal or 'acquitted conduct' [viz-a-vis Hicks's involvement in any cocaine trafficking conspiracy] for purposes of § 1B1.3," *see*, *United States v. Fordham*, No. CR 21-20354, 2024 WL 6841302, at *3 (E.D. Mich. Nov. 12, 2024); *see also*, *United States v. Hicks*, 5 F.4th at 274 n.3, such acquittal provides no impediment to this Court's consideration of the cocaine quantities involved in Hicks's substantive drug trafficking offenses encompassed in the racketeering activities charged in Count 1.

Further, Hicks's reliance on the 2024 Amendments to the Sentencing Guidelines which exclude acquitted conduct from consideration in calculating a defendant's Guidelines range is misplaced. *See* U.S.S.G. § 1B1.3(c). Since this Court "may not, in the first instance, apply post-sentence amendments that embody a substantive change to the Guidelines," this Court must consider only the Guidelines as they existed at the time of Hicks's sentencing. *See*, *United States v. Jesurum*, 819 F.3d 667, 672 (2d Cir. 2016) (quotation marks omitted); *see also* *United States v. Kirk Tang Yuk*, 885 F.3d 57, 88 n.16 (2d Cir. 2018). Since the Sentencing Commission did not give this amendment retroactive effect, *see United States v. Allick*, 2025 WL 1452254, at *3 n.1 (2d Cir. May 21, 2025)(summary order), even assuming *arguendo* it might somehow be applicable to Hicks's situation, it cannot be applied here.

With respect to Hicks's arguments concerning Amendment 821—which went into effect on November 1, 2023, and which does apply retroactively—such

Amendment affords him no relief.  Amendment 821 amended the Guidelines in two respects: Part A amended Guidelines § 4A1.1, by (1) reducing from two points to one point the upward adjustment for offenders who commit an offense while under any criminal sentence, and by (2) limiting this adjustment to defendants who received seven (7) or more criminal history points.  Here, Hicks received two additional points to his criminal history score based upon his commission of the offense while under a criminal justice sentence. Dkt. 470, ¶86. As a result, his criminal history score was determined to be 8 such that his criminal history category was IV.  *Id*., ¶87.  By virtue of Amendment 821, if sentenced today, Hicks would not receive the additional two-point increase to his criminal history score, and as a result, with a criminal history score of 6, his criminal history category would be III rather than IV.  Yet even with this one-level reduction in his criminal history category, his Guideline range for imprisonment, with a total offense level of (at least) 43, would remain the same—life.[7]  Consequently, because Amendment 821 does not have the effect of reducing his applicable Guidelines range, Hicks is not entitled to any sentence reduction. *See United States v. King*, 813 F. App'x 690, 692 (2d Cir. 2020) (summary order) (observing that a "sentencing court cannot reduce defendant's sentence if retroactive amendment 'does not have the effect of lowering the

---

[7] In noting that Hicks's total offense level is at least 43, the Court does so without even considering any drug quantity attributable to him.  Indeed, under the RICO conspiracy conviction, Hicks's total offense level—even discounting any involvement in drug trafficking—is at least 43 based exclusively on that relevant conduct included under Group 2 of such count, *i.e.,* the murder of Quincy Balance. *See*, Dkt. 471, ¶¶46-51. Hicks has never contested the inclusion of such relevant conduct either in his direct appeal or in any of his post-conviction motions.

defendant's applicable guideline range' " (*quoting* U.S.S.G. § 1B1.10(a)(2)(B)); *see also*, *United States v. Barret*, 777 F. Supp. 3d 174, 178 (E.D.N.Y. 2025)(denying sentencing reduction in case in which Amendment 821, while lowering defendant's criminal history category, did not change his Guidelines range).

### 4. Hicks's claim that he was denied due process of law by the fact that his codefendant's attorney previously represented Hicks.

In his § 2255 motion, Hicks asserts, as he did on his direct appeal, that attorney Andrew LoTempio's representation of his co-defendant, Roderick Arrington, created a conflict-of-interest since attorney LoTempio had previously represented Hicks in a related state court matter. Dkt. 964. Hicks claims that the Court erred when it severed his trial from his co-defendants' trial, rather than disqualifying attorney LoTempio. Notwithstanding Hicks's claim, however, the Second Circuit, both on Arrington's direct appeal, *see*, *United States v. Arrington*, 941 F.3d 24, 41-43 (2d Cir. 2019), as well as on Hicks's direct appeal, *see*, *Hicks*, 5 F.4th at 278, has already twice considered and rejected the very complaints regarding this Court's handling of the conflict issue that Hicks seeks to resurrect in his § 2255 motion. Because Hicks's arguments were previously decided by the Second Circuit, this Court declines to reconsider them here. *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) ("Section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal.").

5. **Hicks's claim that his sentence was improper as it created sentencing disparities among co-defendants.**

As already noted, Hicks failed to challenge his sentence on direct appeal, and thus, as with all the alleged sentencing errors he seeks to assert in his post-conviction motions, his claim of sentencing error is procedurally barred. A defendant is barred from raising claims for the first time in a § 2255 petition, unless he can show cause for his failure to raise the issue on direct appeal and "actual prejudice resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1981); *see also Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992). Once again, Hicks cannot demonstrate any prejudice.

The Second Circuit has held that 18 U.S.C. § 3553(a)(6) "requires a district court to consider nationwide sentence disparities but does not require a district court to consider disparities between co-defendants." *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008). Here, Hicks's codefendants each received sentences ranging from 10 years' to 20 years' imprisonment. At Hicks's sentencing, the Court provided a detailed explanation of its calculation of Hicks's sentencing range, of Hicks's offense conduct and criminal history, including both his role as a leader of the racketeering enterprise which committed murders and distributed vast quantities of drugs as well as his refusal to accept responsibility for his crimes, and imposed a sentence which, although at the statutory maximum for the offenses of conviction (30 years), was less than the life sentence called for under the Sentencing Guidelines. Dkt. 495, pp. 7-14; 29-36. "By carefully calculating and reviewing

[Hicks's] Guidelines range," this Court "necessarily gave significant weight and consideration to the need to avoid unwarranted disparities." *Gall v. United States*, 552 U.S. 38, 54 (2007); *see United States v. Irving*, 554 F.3d 64, 76 (2d Cir. 2009) ("[A] reviewing court's concern about unwarranted disparities is at a minimum when a sentence is within the Guidelines range." (quotation marks omitted)).  Accordingly, this Court rejects this—and all—of Hicks's defaulted sentencing challenges.

6. **Hicks's claim of a due process violation based upon the Government's withholding of exculpatory evidence.**

Finally, regarding Hicks's claim that the Government committed prosecutorial misconduct by withholding certain evidence, *to wit*, the letter written by Grant, the Court notes that Hicks has failed to demonstrate that the government withheld anything.  As noted above in this Court's analysis of his Rule 59 and 60 motions, *see*, Section II(B), pp. 13-15, *supra*, the record demonstrates that such letter was not received by the Government until 2022, years after Hicks's conviction became final.  Thus, Hicks has failed to establish that there was any evidence—much less exculpatory evidence—withheld by the Government.  As such, it may not be said that Hicks was deprived of a fair trial.  *Ventura v. United States*, No. 09-CR-1015 (JGK), 2024 WL 1929183, at *11 (S.D.N.Y. May 1, 2024) ("There can be no prosecutorial misconduct when the Government never possessed documents that the Government was alleged to have withheld.").

III.    **CONCLUSION**

For the foregoing reasons, Hicks's motion to vacate his conviction under 28 U.S.C. § 2255 (Dkt. 964); Hicks's motion to allow discovery of jury selection transcripts (Dkt. 1015); Hicks's motion for relief under Rule 60(b) and Rule 59(a) of the Fed. R. Cr. P. (Dkt. 1021); Hicks's supplemental motion to vacate his conviction under 28 U.S.C. § 2255 (Dkt. 1073); Hicks's motion to correct judgment (Dkt. 1078): Hicks's second supplemental motion to vacate his conviction under 28 U.S.C. § 2255 (Dkt. 1081); Hicks's motion to reduce his sentence based upon a retroactive Guideline amendment (Dkt. 1086); and Hicks's third supplemental motion to vacate his conviction under 28 U.S.C. § 2255 (Dkt. 1096), are all **DENIED** in their entirety. Further, the Court determines that no certificate of appealability shall issue because Hicks has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right.").

**IT IS SO ORDERED.**

_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  December 16, 2025
        Buffalo, New York